1 | WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
2 | JANELLE J. SAHOURIA (CA SBN 253699)
JSahouria@mofo.com
3 | MORRISON & FOERSTER LLP
425 Market Street
4 | San Francisco, California 94105-2482
Telephone: 415.268.7000
5 | Facsimile: 415.268.7522

6 | Attorneys for Defendants
UNILEVER UNITED STATES, INC. and
7 | UNILEVER PLC

8 |

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | WESTERN DIVISION

12 |

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNILEVER UNITED STATES, INC. and UNILEVER PLC, <br><br> Defendants. | Case No. CV09 07855 MMM (AGRx) <br><br> **NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNILEVER UNITED STATES INC.'S MOTION TO DISMISS** <br><br> [Declaration of D. Palmet, Declaration of J. Sahouria, [Proposed] Order, and Request for Judicial Notice Concurrently Filed] <br><br> Hearing Date: February 8, 2010 <br> Time: 10:00 a.m. <br> Courtroom: 780 <br> Judge: Hon. Margaret M. Morrow <br> Action Filed: October 28, 2009 |

Notice of Motion and Motion and MPA ISO Motion to Dismiss
case no. CV09 07855 MMM (AGRx)
sf-2771703

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

NOTICE OF MOTION AND MOTION TO DISMISS ....................................... vii

MEMORANDUM OF POINTS & AUTHORITIES ............................................ 1

I.     INTRODUCTION ............................................................ 1

II.    FACTS ALLEGED BY PLAINTIFFS ............................................. 3

III.   THE LEGAL STANDARD ...................................................... 4

IV.    ARGUMENT – FAILURE TO STATE A CLAIM ..................................... 4

       A.     Plaintiffs' TFA-Based Claims Are Expressly Preempted ............. 4

       B.     The Court Should Abstain in Deference to the FDA. ............... 8

       C.     *Cel-Tech* Bars Plaintiffs' Sections 17200 and 17500
              Claims ......................................................... 10

       D.     Defendant's Product Claims—"Nutritious Oils,"
              "Cholesterol Free," and "70% Less Saturated Fat Than
              Butter"—Are True ............................................... 10

       E.     Plaintiff's Affirmative Misrepresentation Claims—
              "Made With A Blend of Nutritious Oils" and
              Comparisons to Butter—Refer to Non-Actionable
              Puffery ........................................................ 14

       F.     Plaintiffs Have Not Pled Their Claims with the Requisite
              Particularity. ................................................. 15

       G.     Plaintiffs Are Not Entitled to Injunctive Relief. .............. 18

       H.     The Court Should Strike Plaintiffs' CLRA Damage
              Claim. ......................................................... 19

V.     CONCLUSION ............................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n,*
    171 Cal. App. 4th 1356, 89 Cal. Rptr. 3d 659 (2009) ........................................17

*Animal Legal Def. Fund v. Mendes,*
    160 Cal. App. 4th 136, 72 Cal. Rptr. 3d 553 (2008) .........................................18

*Ashcroft v. Iqbal,*
    __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................4, 13, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................4, 16

*Bourgi v. West Covina Motors, Inc.,*
    166 Cal. App. 4th 1649, 83 Cal. Rptr. 3d 758 (2008) ........................................17

*Caro v. Procter & Gamble Co.,*
    18 Cal. App. 4th 644, 22 Cal. Rptr. 2d 419 (1993) ...........................................19

*Cattie v. Wal-Mart Stores, Inc.,*
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ...............................................................20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ..................................................10

*Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,*
    911 F.2d 242 (9th Cir. 1990) ............................................................................14

*Daugherty v. Am. Honda Motor Co.,*
    144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006) .........................................17

*Davis v. Chase Bank U.S.A., N.A.,*
    No. CV 06-04804 DDP (PJWx),
    2009 WL 2868817 (C.D. Cal. Sept. 3, 2009)...................................................20

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.,*
    94 Cal. App. 4th 781, 114 Cal. Rptr. 2d 623 (2001) .........................................8

*Farm Raised Salmon Cases*,
   42 Cal. 4th 1077, 1086, 72 Cal. Rptr. 3d 112 (2008),
   *cert. denied sub nom. Albertson's, Inc. v. Kanter*,
   129 S. Ct. 896, 173 L. Ed. 2d 106 (2009).....................................5, 6, 7

*Feitelberg v. Credit Suisse First Boston, LLC*,
   134 Cal. App. 4th 997, 36 Cal. Rptr. 3d 592 (2005) ...........................19

*Fraker v. KFC Corp.*,
   No. 06-CV-01284-JM (WMC),
   2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ......................................7, 15 n.13

*High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers (Am.), Inc.*,
   No. 1:07-cv-4590, 2008 WL 450470 (N.D. Ill. Feb. 15, 2008) .........14

*Hoey v. Sony Elecs.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007)...............................................18

*In re Paxil Litig.*,
   218 F.R.D. 242 (C.D. Cal. 2003).........................................................9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) .......................................................16 n.14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................15, 16

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..........................................6 n.6, 18 n.16

*Korens v. R.W. Zukin Corp.*,
   212 Cal. App. 3d 1054, 261 Cal. Rptr. 137 (1989) .............................9

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..............................................20

*Lockwood v. Conagra Foods, Inc.*,
   597 F. Supp. 2d 1028, 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. 2009) ............6

*Long v. Hewlett-Packard Co.*,
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007).................17

*Lyons v. Coxcomb Inc.*,
   No. 08-CV-02047-H (CAB), 2009 WL 347285 (S.D. Cal. Feb. 6, 2009) .........17

*Mills v. Giant of Md., LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006),
    *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007) ........................................5

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1988) ....................................................18 n.16

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) ...............................................15

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
    160 Cal. App. 4th 638, 72 Cal. Rptr. 3d 903 (2008) ...........................10

*Rubio v. Capital One Bank (USA), N.A.*,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008) ...........................................10

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009)...........................20

*Tylka v. Gerber Prods. Co.*,
    No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999)...........................14, 15

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ...........................................20

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ....................................4, 11, 14, 18 n.15

*Wolfe v. State Farm Fire & Cas. Ins. Co.*,
    46 Cal. App. 4th 554, 53 Cal. Rptr. 2d 878 (1996) ...............................9

*Wright v. Gen. Mills, Inc.*,
    No. 08cv1532 L(NLS), 2009 WL 3247148
    (S.D. Cal. Sept. 30, 2009)...........................................*passim*

*Wyeth v. Levine*,
    __ U.S. __, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) ................................7 n.7

# STATUTES, REGULATIONS AND RULES

15 U.S.C.
   § 1125........................................................................................................2

21 U.S.C.
   § 301.................................................................................................4, 5, 8
   § 341........................................................................................................4
   § 343..........................................................................................4, 5 & n.5, 7
   § 343-1......................................................................................5 & n.5, 7, 8

21 C.F.R.
   § 100........................................................................................................5
   § 101..................................................................................................*passim*
   § 161.......................................................................................................13
   § 164.......................................................................................................13
   § 184.......................................................................................................13

Fed. R. Civ. P.
   9...........................................................................................................15
   11..........................................................................................................10
   12..................................................................................................2, 4, 16

64 Fed. Reg. 62746 (Nov. 17, 1999) ...............................................................9

68 Fed. Reg. 41434 (July 11, 2003)..............................................................8, 9

68 Fed. Reg. 41507 (July 11, 2003)................................................................9

72 Fed. Reg. 66103 (Nov. 27, 2007) .............................................................12

Cal. Bus. & Prof. Code
   § 17208.................................................................................................16 n.14

Cal. Civ. Code
   § 1782.....................................................................................................19
   § 1783.................................................................................................16 n.14

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Margaret M. Morrow, United States District Judge, Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012, Defendant Unilever United States, Inc. will move, and hereby does move, to dismiss the Complaint of Plaintiffs Evangeline Red, Jennifer Red, and Rachel Whitt pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted.[1]

This Motion is based on this Notice of Motion and Motion, Defendant's supporting Memorandum of Points and Authorities (attached), the declarations of Darren Palmet and Janelle J. Sahouria, Defendant's Request for Judicial Notice, and the court records and files in this Action.

This motion is made following conferences of counsel pursuant to Local Rule 7-3 which took place by telephone and by e-mail on November 17, November 18, November 24, November 25, and November 27, 2009.

Dated:  November 30, 2009   WILLIAM L. STERN
                 JANELLE J. SAHOURIA
                MORRISON & FOERSTER LLP

                By: /s/ William L. Stern
                  William L. Stern

                Attorneys for Defendants
                UNILEVER UNITED STATES, INC.
                and UNILEVER PLC

---

[1] Unilever PLC has not yet been served, so this motion is brought by Unilever United States, Inc. only.

This is a copycat case, similar to a case called *Rosen v. Unilever United States, Inc.*, No. CV 09-02563 JW (N.D. Cal.) (Ware, J.).  But *Rosen* was filed on June 9, 2009, four months earlier.  Defendant Unilever United States, Inc. has filed a motion to stay/dismiss this action under the "first-to-file" rule.  The Court should decide that motion first, which, if granted, would moot this motion.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

This is a "Private Surgeon General" action.  Plaintiffs Evangeline Red *et al.* ("Red") allege that every American who bought one of seven vegetable oil spreads manufactured by Unilever[2] in the last ten years—from Imperial Margarine® to "I Can't Believe It's Not Butter!"®—should get his or her money back.  Plaintiffs' claims do not withstand scrutiny and  should be dismissed with prejudice.

Plaintiffs assert several recurring claims.  The first is an omissions claim targeting five of the seven brands.  Those five products, they say, are made with partially hydrogenated vegetable oil, which contains trace amounts of trans fatty acids ("TFAs"), yet the product label states "0g Trans Fat."

Plaintiffs also bring four affirmative misrepresentation claims leveled against the seven brands' product labels or related advertisements:

- Implying that the product is healthy;
- Including the statement "Made With A Blend of Nutritious Oils";
- Making "misleading comparisons to butter"; and
- Claiming the product is "cholesterol-free."[3]

---

[2] Plaintiffs named the wrong entities.  The correct entity is Conopco, Inc. dba Unilever.  Unilever PLC has not yet been served, and is not a proper party in any event.  Furthermore, Unilever United States, Inc. is not the proper party because it does not produce or advertise the products at issue in this case.  The parties will seek to correct this by stipulation.  In the meantime, we refer to defendant Unilever United States, Inc. as "Unilever."

[3] For a chart of Plaintiffs' claims by brand, *see* Appendix A.

Unifying these allegations is Plaintiffs' central averment that Unilever states (or implies) that each product is healthful when, it fact, it contains TFAs, which are allegedly harmful or even "toxic." From this foundation, Plaintiffs have asserted one single federal claim for false advertising under the Lanham Act, 15 U.S.C. § 1125, and three California statutory claims. They seek to certify a nationwide class of persons "who purchased, on or after January 1, 2000, one or more Unilever margarine products containing artificial trans fat . . . ."

The Court should dismiss all of Plaintiffs' claims with prejudice. First, the U.S. Food and Drug Administration ("FDA") has prescribed exactly how a manufacturer "*shall*" disclose TFAs on its products. All of Plaintiffs' claims are therefore expressly preempted. Second, the phrases "nutritious oils," "0 mg cholesterol," "naturally cholesterol free," and "70% less saturated fat than butter" are true on their face. These oils are common food ingredients that are generally recognized as safe and contribute nutritive value to the diet. Third, those terms are non-actionable puffery. In short, what Plaintiffs complain about is perfectly lawful, or true.

Therein lies the problem. Plaintiffs seek massive damages and an injunction mandating a special warning label for food products that contain trace amounts of TFAs, amounts that lie below the FDA's mandatory disclosure threshold. But a "Red" warning—named after this case—would be different from what the FDA has imposed through its rule-making authority and beyond what Congress or any regulator has required. Plaintiffs are asking to become self-appointed "Private Surgeons General" and are saying, in effect, "We get to do the mandating."

Plaintiffs' claims are tardy besides. Three months before they sued, Unilever began reducing the levels of TFAs in all of its vegetable oil spreads.

The Court should dismiss the Complaint under Rule 12(b)(6), with prejudice.

## II.   FACTS ALLEGED BY PLAINTIFFS

Unilever is the manufacturer of seven brands of vegetable oil spreads:  (i) "I Can't Believe It's Not Butter!" ("ICBINB!") Light®, (ii) ICBINB! Original®, (iii) ICBINB! Cooking and Baking Sticks®, (iv) Shedd's Spread Country Crock®, (v) Shedd's Spread Country Crock Spreadable Sticks®, (vi) Brummel & Brown®, and (vii) Imperial Margarine®.  (Class Action Complaint ("Compl.") ¶ 9.) [4]  The three named plaintiffs bought "margarines made by Unilever" during the class period.  (*Id*. ¶ 1.)

Plaintiffs allege that Unilever made various affirmative misrepresentations and omissions concerning these seven products, either on the product label or in advertisements and other promotions.  (Compl. ¶¶ 62-97.)  Defendant attaches as Appendix A to this Memorandum a table that correlates each brand with the so-called false statements and/or omissions attributed to it.

As noted in Defendant's accompanying motion to stay, many of these allegations parrot the allegations in the first-filed *Rosen* action.

Plaintiffs pray for wide-ranging relief, including a nationwide class as to their federal and three state-law claims.  They seek damages and "an order that compels Unilever to (1) cease marketing its margarines using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Unilever was unjustly enriched, (4) destroy all misleading and deceptive materials and products, and (5) compensate Plaintiffs and the Plaintiff Class for purchasing and consuming these products."  (Compl. ¶ 8.)  Among other things, they seek an injunction asking the Court to rewrite Unilever's product labels.  (*Id*. at p. 37 [prayer].)

---

[4] The paragraph numbering is confusing.  The Complaint starts with numbered paragraphs 11-13, then restarts with paragraph 1.  (*See* Compl. at p. 1.) After paragraph 100, it starts back again at paragraph 82.  (*Id*. at pp. 33-34.)

# III. THE LEGAL STANDARD

Under Rule 12(b)(6), dismissal of a case is warranted if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court does not have to accept as true any legal conclusions. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

# IV. ARGUMENT – FAILURE TO STATE A CLAIM

## A. Plaintiffs' TFA-Based Claims Are Expressly Preempted.

This case challenges the way in which Unilever discloses trace amounts of TFAs in its vegetable oil sticks and spreads. Those claims are preempted.

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 ("FFDCA") establishes a comprehensive federal scheme of food regulation to ensure that food is safe and is labeled in a manner that does not mislead consumers. 21 U.S.C. §§ 341 *et seq.* The Nutrition Labeling and Education Act of 1990 ("NLEA") amended the FFDCA to require uniform food labeling and require the now-familiar "Nutrition Facts" box that appears on food product labels. *See* 21 U.S.C. § 343(q)(1)(A)-(D).

In 2003, the FDA issued a regulation governing the proper disclosure of TFA levels in foods. So long as a product contains less than 0.5 gram per serving, under certain circumstances, a manufacturer need not set forth the TFA content. Moreover, below 0.5 gram per serving the manufacturer "shall"—not may, "shall"— state in the "Nutrition Facts" box that the product contains "zero" grams of TFAs:

> A statement of the number of grams of trans fat in a serving . . . is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are

> made about fat, fatty acid or cholesterol content. . . .
> *Trans* fat content shall be indented and expressed as
> grams per serving to the nearest 0.5 (1/2)-gram increment
> below 5 grams and to the nearest gram increment above 5
> grams. *If the serving contains less than 0.5 gram, the
> content, when declared, shall be expressed as zero*.

21 C.F.R. § 101.9(c)(2)(ii) (emphasis added).

The NLEA Amendments to the FFDCA include a broad express preemption provision that governs product labeling. 21 U.S.C. § 343-1(a)(3); *see Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the breadth of NLEA preemption clause), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007). The NLEA provides that no state may "directly or indirectly establish . . . any requirement for the labeling of food that is *not identical to* the requirement of section 403(q) [21 U.S.C. § 343(q)]" (emphasis added).[5] A similar provision applies to section 403(r), 21 U.S.C. § 343(r).

"Not identical to" is Plaintiffs' undoing. It forecloses any "State requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision" or "differ from those specifically imposed by or contained in the applicable provision." 21 C.F.R. § 100.1(c)(4). Thus, a court may impose labeling requirements *only if* "identical to" the FDA's requirements. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086, 72 Cal. Rptr. 3d 112 (2008), *cert. denied sub nom. Albertson's, Inc. v. Kanter*, 129 S. Ct. 896, 173 L. Ed. 2d 106 (2009).

Here, the brand labels that Plaintiffs challenge (*see* App. A) state "0 g Trans Fat per serving." (Compl. ¶¶ 62, 69, 82, 87.) The "Nutrition Facts" box also states

---

[5] The statute then goes on to recite an exception not relevant here. 21 U.S.C. § 343-1(a)(4). The exemption from NLEA express preemption applies to nutrition labeling of food that is exempt under sub-clause (i) or (ii) of section 403(q)(5)(A), codified at 21 U.S.C. § 343(q)(5)(A)(i), (ii).

"0 g Trans Fat."[6] Plaintiffs do not allege that the products contain TFAs in amounts that *exceed* the FDA's "half a gram" threshold, nor do they allege that the labels violate the FDA labeling rules. By not so alleging, Plaintiffs are necessarily attacking Unilever's product labels that comply with—or, at least, Plaintiffs do not allege violate—the FDA's regulation.

Plaintiffs' claims of "misleading comparisons to butter" illustrate this. For each of the seven brands, the Complaint includes the rote phrase that in making misleading comparisons to butter, Unilever's labels "omit the products' content of trans fat." (*See* Compl. ¶¶ 65, 72, 78, 83, 87, 91, 95.) But that is precisely why there is preemption. The FDA has determined that a manufacturer "shall" disclose such trace amounts of TFAs as "0 grams." Thus, these TFA-based claims seek to impose disclosure requirements that are different from and clearly "not identical to" the disclosures the FDA has mandated. These claims are "expressly" preempted.

This is not a case of "implied" preemption. Unilever does not contend that Congress has "occupied the field" as to every claim of product labeling. For example, there is no implied preemption of a claim attacking artificial coloring in food products (*Farm Raised Salmon*, 42 Cal. 4th at 1091) or statements that a product is "all natural" (*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031-32, 2009 U.S. Dist. LEXIS 10064, at *7-8 (N.D. Cal. 2009)), or "100% natural." *Wright v. Gen. Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148, at *2-3 (S.D. Cal. Sept. 30, 2009) (Lorenz, J.).

TFA disclosures are different. Congress has acted to regulate TFA disclosures through two separate statutory provisions. The first is the FDA's "half a

---

[6] Plaintiffs include photographs of the packaging (Compl. at pp. 16, 17, 19-21, 23, 25, 27-29, 31), but they are incomplete and illegible. Unilever attaches legible copies to its accompanying Request for Judicial Notice ("RJN"), Exhibits B through I, which the Court may properly consider. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

gram" regulation quoted at pages 5-6, above. It is set forth in 21 C.F.R.
§ 101.9(c)(2)(ii) and is promulgated pursuant to 21 U.S.C. § 343(q)(ii), which
governs the declaration of trans fat in the "Nutrition Facts" box. The second is the
FDA regulation that governs the declaration of nutrients elsewhere on the food
label, outside the "Nutrition Facts" box. This is set forth in 21 C.F.R.
§ 101.13(i)(3), promulgated pursuant to 21 U.S.C. § 343(r).[7] Both FDA regulations
are subject to preemption under 21 U.S.C. § 343-1(a)(4) and (5).

Unlike "artificial food coloring" on which Congress has not spoken,
Congress *has* spoken on TFA labeling. Thus, claims seeking to impose
requirements that are "not identical to" the FDA's requirements are expressly
preempted. *Farm Raised Salmon*, 42 Cal. 4th at 1097-98.

The California Supreme Court has implicitly recognized that TFA labeling
claims are expressly preempted. In *Farm Raised Salmon* it distinguished non-
preempted "artificial food coloring" claims from the TFA claims alleged in
*Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL 1296571 (S.D. Cal.
Apr. 30, 2007). *Fraker* involved TFA-based claims against Kentucky Fried
Chicken that mirror Plaintiffs' claims in this case. The plaintiff "alleg[ed] that the
defendant misrepresented its product as healthy when it was in fact high in 'trans'
fat content." *Farm Raised Salmon*, 42 Cal. 4th at 1097. But according to the
California Supreme Court, *Fraker* properly dismissed those claims because they
"were impermissibly founded on violations of the FDCA and were thus preempted
by section 337." *Id.* (citing *Fraker*, 2007 WL 1296571, at *3-4). Plaintiffs' TFA
claims in this case are indistinguishable from the TFA claims alleged in *Fraker*.

---

[7] "[A]gency regulations with the force of law can preempt conflicting state
requirements." *Wyeth v. Levine*, __ U.S. __, 129 S. Ct. 1187, 1200, 173 L. Ed. 2d
51 (2009).

That TFA claims are expressly preempted spells doom for both Plaintiffs' affirmative misrepresentation and non-disclosure claims. (*See* App. A.) For a court to require a label denoting any number *other than zero* as the level of TFAs would be "not identical to" 21 C.F.R. §§ 101.9(c)(2)(ii) and 101.13(i)(3) if, as here, the actual level is already below the FDA's "half a gram" threshold. Yet, that is exactly what Plaintiffs demand. (*See* Compl. at p. 37.) And for a court to require that Unilever make some *other* type of disclosure informing consumers that its product contains ingredients associated with increased blood cholesterol levels would be redundant, as the labels do this already—by the accurate disclosure of saturated fat levels. Such a requirement, too, would be "not identical to" what the FDA has decreed. In short, there are no claims Plaintiffs have pled that are not preempted.[8]

The Court should dismiss with prejudice all of Plaintiffs' TFA-based claims as expressly preempted by the FFDCA. For a list of those expressly preempted claims and the specific paragraphs of the Complaint that are affected, *see* Appendix A, column #2 (Omission Claims—Not listing TFAs that are below the FDA's 0.5 g threshold), column #3 (Affirmative Misrep. #1: Product is heart-healthy), and column #5 (Affirmative Misrep. #3: Misleading comparison to butter).

**B.     The Court Should Abstain in Deference to the FDA.**

In the alternative, the Court should abstain. Courts typically decline equitable relief if it would entangle them in a complex area that is already subject to oversight by an agency having day-to-day supervision responsibilities. *See Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 794-96, 114 Cal.

---

[8] *See* 68 Fed. Reg. 41434, 41498 (July 11, 2003) (explaining the FDA's stance that "Section 403A(a)(4) of the act (21 U.S.C. 343-1(a)(4)) displaces both state legislative requirements and state common-law duties" (citing *Medtronic v. Lohr*, 518 U.S. 470, 503, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996))). (*See* RJN, Ex. J.)

Rptr. 2d 623 (2001); *see also Korens v. R.W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1059, 261 Cal. Rptr. 137 (1989); *Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 568, 53 Cal. Rptr. 2d 878 (1996).

Here, the FDA is still investigating and evaluating whether, and how, it might further regulate label declaration of TFAs.  68 Fed. Reg. 41507 (July 11, 2003) (advance notice of proposed rulemaking to solicit information that could be used to establish new nutrient content claims about trans fatty acids, and to establish qualifying criteria for trans fat in current nutrient content claims for saturated fatty acids and cholesterol) (RJN, Ex. K); 64 Fed. Reg. 62746 (Nov. 17, 1999) (proposed rule governing, among other things, trans fat limits for nutrient content claims, health claims, or disclosure and disqualifying levels; and the proposed definition for the nutrient content claim "trans fat free") (RJN, Ex. L).

In a class action case arising on similar facts, Judge Pfaelzer declined to certify state-law claims under the UCL in which plaintiffs sought an injunction against a defendant drug manufacturer's allegedly false advertising of its drug Paxil.  *In re Paxil Litig.*, 218 F.R.D. 242 (C.D. Cal. 2003).  Said the court:  "Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety."  *Id.* at 248.  Transpose "safety and efficacy" to TFA food labeling and the *Paxil* court could have been speaking of Plaintiffs' Complaint.

The debate over the relative benefits of butter versus other fats is ongoing and raises numerous complexities.  The FDA, in its final rule report, referenced the 1995 Dietary Guidelines for Americans, a joint publication from the U.S. Department of Health and Human Services and the U.S. Department of Agriculture, which noted that TFAs "may raise blood cholesterol levels, *although not as much as saturated fat*."  68 Fed. Reg. 41434, 41442 (July 11, 2003) (emphasis added). "Butter" is a "saturated fat."  (*See* RJN, Ex. M.)

1    There are no simple answers.  Rather, the choice is highly dependent on each

2    individual's age, weight, overall health, and other coronary risk factors.

3        Even if these claims are not preempted, the Court should abstain.

4    **C.    *Cel-Tech* Bars Plaintiffs' Sections 17200 and 17500 Claims.**

5        The California Supreme Court has instructed that if a legislative or regulatory

6    body has affirmatively permitted certain conduct, courts may not override that

7    determination.  A court should not make illegal that which the legislature or a

8    regulatory agency has expressly allowed.  *Cel-Tech Commc'ns, Inc. v. Los Angeles*

9    *Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548 (1999).

10       Examples abound.  A mortgage lender's use of an "equal months" interest

11   calculation did not violate the UCL where the Federal Reserve Board's Regulation

12   Z required it.  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638,

13   644-46, 72 Cal. Rptr. 3d 903 (2008); *see also Rubio v. Capital One Bank (USA),*

14   *N.A.*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (bank's credit card disclosures

15   that comply with Truth in Lending Act cannot violate UCL).

16       Unless Plaintiffs are prepared to allege that Unilever's labels *violate* FDA

17   regulations—which they cannot do without trespassing Fed. R. Civ. Proc. 11—the

18   Court must presume that the product labels proclaiming "0 g Trans Fat" comply

19   with the NLEA.  In *complying* with federal law, they cannot *violate* state law.

20   **D.    Defendant's Product Claims—"Nutritious Oils," "Cholesterol
21        Free," and "70% Less Saturated Fat Than Butter"—Are True.**

22       Plaintiffs next assail a host of product claims that are truthful on their face.

23   For example, Plaintiffs attack as false the claim that Unilever's products are "Made

24   With A Blend of Nutritious Oils,"[9] contain "0 mg cholesterol" or are "naturally

25

26   _____

27       [9] (Compl. ¶¶ 64, 71, 77.)  These averments relate to the three ICBINB!
     brands.

28

cholesterol free,"[10] and are heart-healthy,[11] and that Unilever makes "misleading comparisons" to butter" such as "70% less saturated fat than butter."[12]

Defendant has already discussed why these claims are preempted. These claims presume the statements' falsity because of a claimed *omission*, namely, Unilever's alleged failure to specify the exact per-serving quantum of TFAs. (Compl. ¶¶ 65, 72, 78, 83, 87, 91, 95.) Notably, Plaintiffs do not contend that the trace levels of TFAs in Unilever's products are *above* the FDA's "half a gram" disclosure threshold, so they are necessarily suing over Unilever's failure to disclose TFA amounts *below* 0.5 gram. A TFA disclosure that complies with the FDA is not actionable.

These claims also happen to be true. The Ninth Circuit has instructed that "the primary evidence in a false advertising case is the advertising itself." *Williams*, 552 F.3d at 938 (citing *Brockey v. Moore*, 107 Cal. App. 4th 86, 100, 131 Cal. Rptr. 2d 746 (2003)).

The statement on the ICBINB! labels "Made With A Blend of Nutritious Oils*" is followed by an asterisk that directs the reader to this nearby disclosure – "*Excellent Source of Omega 3 ALA." (*See* RJN, Ex. C.) Clearly, "nutritious oils" is not some abstract statement untethered to anything else but, rather, a specific reference to the adjacent representation about "Omega 3 ALA." That reference to "Omega 3 ALA" highlights the truth of the "nutritious" claim.

"Omega 3" refers to a family of unsaturated fatty acids, and "ALA" stands for "a-linolenic acid," part of the "Omega 3" family. ALA is a nutrient that is

---

[10] (Compl. ¶¶ 67, 74, 80-81 [ICBINB!], ¶¶ 85-86, 88-89 [Shedd's Spread Country Crock], ¶¶ 93-94 [Brummel & Brown], ¶¶ 96-97 [Imperial Margarine].)

[11] (Compl. ¶¶ 63, 70.) These averments relate to two of the ICBINB! brands.

[12] (Compl. ¶¶ 65, 66, 72, 73, 78, 79 [ICBINB!], ¶¶ 83, 84, 87 [Shedd's Spread Country Crock], ¶ 91 [Brummel & Brown], ¶ 95 [Imperial Margarine].)

essential in the human diet in the sense that absence of the nutrient will result in symptoms of nutrient deficiency disease. 72 Fed. Reg. 66103, 66105 n.3 (Nov. 27, 2007). (*See* RJN, Ex. N.) Thus, oils that provide an "excellent source of omega 3 ALA" are, by definition, "nutritious." These statements on the product label are true on their face.

The cholesterol claims are also true. (*Cf.* App. A.) First, cholesterol occurs only in animal products (e.g., butter), whereas all seven brands under siege here are *vegetable*-based products. They necessarily contain "zero" grams of cholesterol. Plaintiffs do not allege that statement to be *un*true. Nor can they. Hence, the labels proclaiming "0 mg cholesterol" and "100% less cholesterol than butter" are true and cannot be actionable as "false" advertising.

Second, to the extent Plaintiffs contend that dietary cholesterol is not relevant to heart disease (Compl. ¶¶ 68, 75, 81, 86, 89, 94, 97), the FDA begs to differ:

> The scientific evidence establishes that diets high in saturated fat and cholesterol are associated with increased levels of blood total- and LDL-cholesterol and, thus, with increased risk of coronary heart disease. Diets low in saturated fat and cholesterol are associated with decreased levels of blood total- and LDL-cholesterol, and thus, with decreased risk of developing coronary heart disease.
>
> * * * * *
>
> The scientific evidence indicates that reducing saturated fat and cholesterol intakes lowers blood LDL-cholesterol and risk of heart disease in most individuals. There is also evidence that reducing saturated fat and cholesterol intakes in persons with blood cholesterol levels in the normal range also reduces risk of heart disease.

21 C.F.R. § 101.75(a), (b).

Plaintiffs' hunt for false statements on Unilever's labels has caused them to make regrettable misstatements of their own. For example, they say the reference on the ICBINB! label to the website "WebMD" implies that "this product is

recommended by MDs." (Compl. ¶¶ 63, 70.) Really? The Court might want to consider the actual words used. They start with the phrase "Confused about fat & nutrition?" and are then followed by a reference to the "WebMD" website. (Compl. at p. 19.) Far from being false, the reference reads like a public service announcement. A court need not accept as true a plaintiff's characterization (*Iqbal*, 129 S. Ct. at 1949-50), especially where it is belied by the actual words.

Plaintiffs also characterize partially hydrogenated vegetable oils ("PHVOs") as "toxic" (Compl. ¶¶ 20, 64, 71, 77), another overstatement. The FDA has promulgated regulations for specific source oils. For example, there are "generally recognized as safe" regulations governing partially hydrogenated canola oil (21 C.F.R. § 184.1555(c)) and partially hydrogenated menhaden oil (*id.*, § 184.1472). FDA regulations permit PHVOs in certain foods such as canned tuna (*id.*, § 161.190) and peanut butter (*id.*, § 164.150). FDA regulations also contemplate that PHVO will be used in many foods and permits such use so long as the ingredient is properly described on the label. (*Id.*, § 101.4(b)(14).) Thus, at this time, PHVO has the legal status of "generally recognized as safe," which would not be the case if it were "toxic."

A variation on this claim is Plaintiffs' assertion that the adjective "natural" on the Brummel & Brown® label is false. (Compl. ¶ 92.) The phrase "Made With Natural Yogurt," they say, "impl[ies] that this product is healthful ('natural') when it is not." (*Id.*) But it is false, say Plaintiffs, only because of Unilever's omission to state that partially hydrogenated soybean oil is "a toxic product." (*Id.*) Unilever has shown in the preceding paragraph that PHVO cannot properly be characterized as "toxic."

The Court does not have to affirmatively decide that "Omega 3 ALA" *is* "nutritious" or that the comparisons to butter or statements about cholesterol being "zero" are true in order to rule on this motion. From the Complaint and product labels alone, the Court can see that the statement about "nutritious oils" refers

specifically to "plant oils like soybean and canola" and to "Omega 3 ALA," and can observe—by their omission—that Plaintiffs never allege that "Omega 3 ALA" is *not* a "nutritious" substance or that the TFAs in Unilever's brands exceed the "half a gram" threshold.  These statements are true, as even Plaintiffs do not allege them to be false except in relation to their claim that Unilever fails to list the exact level of trace TFAs where the total is less than .5 gram per serving.  But that is the very circumstance where the FDA mandates that the disclosure "shall" be "zero" grams.

The burden is on Plaintiffs to allege wrongful conduct.  Here, the Complaint alleges either lawful conduct or perfectly truthful statements.  The Court should dismiss Plaintiffs' claims on the ground that they attack statements that are true.

**E.  Plaintiff's Affirmative Misrepresentation Claims—"Made With A Blend of Nutritious Oils" and Comparisons to Butter—Refer to Non-Actionable Puffery.**

In addition to being true, the label statement about "nutritious oils," the advertisements comparing ICBINB! to butter, and the adjective "natural," in this context, are non-actionable puffery.

"Puffery" is "sales talk," statements that no one could reasonably rely upon or mistake for claims of fact.  *Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).  The term "nutritious" (and similar adjectives) has been repeatedly held to be non-actionable puffery.  The following are similar product statements and adjectives that courts have held to be puffery:

- "[J]ust one of a variety of **nutritious** Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy."  *Williams*, 552 F.3d at 939 n.3 (emphasis added).

- "*[O]ptimum nutrition*."  *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *2-3 (N.D. Ill. July 1, 1999) (emphasis added).

- "*[N]utritionally*, you can't buy a better food than Gerber."  *Id.* (emphasis added).

- "[M]ost wholesome **nutritious safe foods** you can buy anywhere in the world."  *Id.*; *High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers*

*(Am.), Inc.*, No. 1:07-cv-4590, 2008 WL 450470, at *4 (N.D. Ill. Feb. 15, 2008) (emphasis added).

- "[M]odified food starch and sugar are FDA approved ingredients. The use of these ingredients in select baby food items provides better product taste and texture *without sacrificing nutrition*!" *Tylka*, 1999 WL 495126, at *2-3 (emphasis added).

- "McDonalds can be part of *any balanced diet and lifestyle*." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 527-29 (S.D.N.Y. 2003) (emphasis added).

- "McChicken *Everyday*!" *Id*. (emphasis added).[13]

Plaintiffs' attack on Unilever's comparison to butter is also non-actionable. (*See* Compl. ¶¶ 65, 72, 78, 83, 87, 91, 95.) According to the FDA, this is considered a "relative" claim. It is a perfectly permissible comparison between similar products. 21 C.F.R. § 101.13(j) ("A food may bear a statement that compares the level of a nutrient in the food with the level of a nutrient in a reference food. These statements shall be known as 'relative claims' and include 'light,' 'reduced,' 'less' (or 'fewer'), and 'more' claims.").

Plaintiffs' allegations refer to non-actionable puffery.

### F. Plaintiffs Have Not Pled Their Claims with the Requisite Particularity.

In *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), the Ninth Circuit held that claims brought under the "fraudulent" prong of the UCL and claims sounding in fraud under the UCL and CLRA must be pled with particularity under Rule 9(b). This applies also to omissions. *Id*. at 1126. Thus, a claimant who

---

[13] In a "TFA" class action case against KFC Corporation, the district court in San Diego determined that the following claims were puffery: fast food "provides the 'best food,'" "can fit into a balanced eating plan," "[y]ou can enjoy 'fast food' as part of a sensible balanced diet," and "[w]e still take pride in doing things the Colonel's way, utilizing only the highest quality ingredients, innovative recipes, and time-tested cooking methods." *Fraker*, 2007 WL 1296571, at *3.

sues over advertising must "articulate the who, what, when, where, and how of the misconduct alleged." *Id.* Moreover, a complaint must meet the minimum standards of Rule 12(b)(6) by going beyond just recitation of elements and legal conclusions. *See Twombly*, 550 U.S. at 555.

Plaintiffs have not come close to meeting this standard. Instead of alleging which of the seven brands of vegetable oil spread each Plaintiff bought, or when, or which product labels or advertisements they saw or relied on in making their purchases, they simply say they "repeatedly purchased margarines made by Unilever . . . ." (Compl. ¶ 1.) From there, they simply catalog the advertisements they say Unilever made *generally* to the public. (Compl. ¶¶ 62-97.) They have not stated the "who, what, when, where, and how of the misconduct alleged"—which advertisements, which product label, and in what way *they* each relied.

Moreover, Plaintiffs seek a class back to January 1, 2000. On its face, that date presumptively includes time-barred claims, since the operative statutes of limitations go back either three or four years.[14] Yet, Plaintiffs never allege, as they must, why those ten-year old claims would not be time-barred, let alone when Plaintiffs discovered the alleged true facts.

These bare allegations are indistinguishable from those in *Wright v. General Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) (Lorenz, J.), another "Private Surgeon General" case in which the district court in San Diego found that the plaintiff failed to meet the *Twombly* and *Iqbal* pleading standards. There, the plaintiff sued General Mills for advertising "Nature Valley" products as "100% Natural" even though the products contained high-fructose corn syrup. But like Plaintiffs here, all the plaintiff in *Wright* alleged was that "[a]s a

---

[14] The statute of limitations is three years for the first claim under the Lanham Act (*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)), three years for the fourth claim (Cal. Civ. Code § 1783), and four years for the second and third claims (Cal. Bus. & Prof. Code § 17208).

direct result of its misleading, deceptive, untrue advertising . . . Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." 2009 WL 3247148, at *5 (citation omitted). The *Wright* court said that was not enough: "Factual allegations must provide more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do' in order to 'raise a right to relief above the speculative level.'" *Id.*, at *4 (citing *Twombly*, 550 U.S. at 555).

*Wright* is particularly apt in this case, because Plaintiffs here make similar allegations about the same adjective "natural" with respect to the Brummel & Brown® brand. (Compl. ¶ 92.) They have provided nothing more than "labels and conclusions." *Cf. Lyons v. Coxcomb Inc.*, No. 08-CV-02047-H (CAB), 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009) (dismissing CLRA claim where plaintiff did not allege reliance on any particular advertisement).

Plaintiffs' omission claim is just as bad. To be actionable, a fraudulent omission must be either "contrary to a representation actually made by the defendant," or an omission of fact that the defendant had a duty to disclose. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d 118 (2006); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (Ware, J.) (where manufacturer made no affirmative representation, no duty to disclose). Under California law, a duty to disclose only arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but suppresses some material fact. *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, 171 Cal. App. 4th 1356, 1382, 89 Cal. Rptr. 3d 659 (2009); *see also Bourgi v. West Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 1662, 83 Cal.

Rptr. 3d 758 (2008) (absent a duty to disclose, there is no breach by omission of the CLRA). Plaintiffs have alleged none of these.

Duty to disclose also must be pled with particularity. *Hoey v. Sony Elecs.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007). But Plaintiffs have pled no statement by Unilever from which an affirmative duty to disclose could arise. *Cf. Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 145-48, 72 Cal. Rptr. 3d 553 (2008) (in the absence of affirmative statements, no UCL claim could be stated on the theory that milk-purchasing consumers were being deprived of the "benefit of the bargain").[15]

The Court should dismiss for failure to plead with the requisite particularity.

## G. Plaintiffs Are Not Entitled to Injunctive Relief.

Before Plaintiffs filed their Complaint, Unilever reformulated its soft spread brands to reduce their already low levels of TFAs.[16] Plaintiffs have failed to plead facts showing why injunctive relief is necessary.

This case is factually indistinguishable from *Wright v. General Mills.* There, the district court dismissed the plaintiff's claims for injunctive relief attacking

---

[15] The product labels Plaintiffs challenge here are very different from the label at issue in *Williams*, 552 F.3d at 936-37. The product in *Williams*, called "fruit juice snacks," bore pictures of fruits on the label even though the product contained no juice from fruits. Thus, the message conveyed by the pictures in that case was directly contrary to the ingredient list, hence the label "appears to be false." *Id.* at 939.

[16] In a publicly issued press release, Unilever explained to its consumers that after years of research and study, it was undertaking the challenge of converting its products away from partially hydrogenated oils. (RJN, Ex. A.) In fact, before this lawsuit was filed, Unilever had already reformulated ICBINB! Original to reduce the amount of trans fat and had removed the phrase "Made With A Blend of Nutritious Oils" from the product label. (RJN, Ex. D.) This Court may properly consider the press release and new label because the issue has been incorporated into the Complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1988) (If the complaint incorporates by reference extrinsic facts or exhibits, the court may examine these materials so long as no party questions their authenticity.); *Knievel*, 393 F.3d at 1076 (same).

1  General Mills' "Nature Valley" products, where it was "undisputed that at the time

2  plaintiff filed her complaint defendant's products no longer contained [high-

3  fructose corn syrup]." 2009 WL 3247148, at *5.

4  Here, as in *Wright*, Unilever announced it was phasing out TFAs in all of its

5  soft spreads.  On July 27, 2009, Unilever announced:  "Unilever to Remove

6  Hydrogenated Oils Across Entire Soft Spreads Portfolio in U.S. by Early 2010."

7  (*See* RJN, Ex. A.)  The announcement goes on to say:  "After an extensive three-

8  year research and development effort, Unilever has begun removing the partially

9  hydrogenated vegetable oil from I Can't Believe It's Not Butter!®, Brummel &

10  Brown®, Shedd's Spread Country Crock® and Imperial® soft spread products sold

11  in tub formats, thereby eliminating the artificial trans fats in these products." (*Id.* at

12  7.)  This was fully three months before Plaintiffs filed suit.

13  In *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 660-61, 22 Cal.

14  Rptr. 2d 419 (1993), a class action was brought alleging that the defendant misled

15  customers into thinking its Citrus Hill® orange juice product was freshly squeezed

16  when in fact it was made from concentrate.  But the defendant had already changed

17  the product label.  The trial court dismissed, and the appellate court affirmed.  *See*

18  *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1022, 36 Cal.

19  Rptr. 3d 592 (2005) (no UCL injunction allowed where the offending conduct was

20  the subject of a consent judgment).

21  Plaintiffs have failed to plead facts showing the conduct is likely to recur, as

22  required by *Iqbal.*  129 S. Ct. at 1949-50.

23  **H.  The Court Should Strike Plaintiffs' CLRA Damage Claim.**

24  The CLRA requires that written notice be provided to the defendant at least

25  thirty days *prior to* commencement of an action seeking damages.  Cal. Civ. Code

26  § 1782(a).  Plaintiffs did not send their "30-day letter" *before* commencing suit as

27  the statute requires.  In fact, Plaintiffs have alleged an untruthful statement.  They

28  say they "*have given* written notice to Unilever of their claims."  (Compl. ¶ 112

(emphasis added).)  The use of the present perfect tense "have given" denotes action that has been completed.  That averment is false.

The Complaint was filed October 28, 2009.  But counsel did not serve his "30-day letter" until two days later, October 30, 2009.  (Declaration of Janelle J. Sahouria in Support of Defendant Unilever United States Inc.'s Motion to Dismiss, ¶ 2; RJN, Ex. O.)

That is not good enough.  A district court in San Jose recently struck "without leave to amend" a CLRA damage claim hobbled by the same late filing of the "30-day letter." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009) (Fogel, J.); *accord Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804 DDP (PJWx), 2009 WL 2868817, at *13 (C.D. Cal. Sept. 3, 2009) (the CLRA's "procedural requirements are strictly adhered to," and the sanction for non-compliance is "dismissing a claim with prejudice"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003).

The Court should strike the CLRA damage claim without leave to amend.

## V.    CONCLUSION

The Court should dismiss the Complaint with prejudice.  In the alternative, it should dismiss the CLRA damage claim and should require Plaintiffs to plead their claims with particularity.

Dated:        November 30, 2009        WILLIAM L. STERN
                                       JANELLE J. SAHOURIA
                                       MORRISON & FOERSTER LLP

                                       By:  /s/ William L. Stern
                                            William L. Stern

                                       Attorneys for Defendants
                                       UNILEVER UNITED STATES, INC.
                                       and UNILEVER PLC