THE WESTON FIRM
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA  92109
Telephone: (858) 488-1672
Fax: (480) 247-4553
greg@westonfirm.com

JACK FITZGERALD (257370)
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305
jack@westonfirm.com

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
28 West Flagler St., Ste 555
Miami, FL 33130
Telephone: (305) 789-0072
Fax: (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

**Counsel for Plaintiffs**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNILEVER UNITED STATES, INC., UNILEVER N.V., and UNILEVER PLC., <br><br> Defendants. | Case No: 3:10-cv-00387 JW (HRLx) <br><br> Pleading Type: Class Action <br><br> **NOTICE OF MOTION AND MOTION UNDER FED. R. CIV. P. 37 TO COMPEL UNILEVER UNITED STATES, INC. TO: (1) MAKE ITS INITIAL DISCLOSURES; (2) PRODUCE DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS; AND (3) PROVIDE FULL SUBSTANTIVE RESPONSES TO INTERROGATORIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge: The Hon. Howard R. Lloyd <br> Date: April 27, 2010 <br> Time: 10:00 am <br> Location: Courtroom 2 |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 37, on April 27, 2010 at 10:00 a.m. in Courtroom 2 of the above-captioned Court, before the Honorable Howard R. Lloyd, Plaintiffs will, and hereby do, respectfully move to compel Defendant Unilever United States, Inc. to:

1.  Make its required Initial Disclosures pursuant to Rule 26(a)(1);

2.  Produce all documents responsive to PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS ADDRESSED TO UNILEVER UNITED STATES, INC.;

3.  Provide full substantive responses to PLAINTIFFS' FIRST SET OF INTERROGATORIES ADDRESSED TO UNILEVER UNITED STATES, INC.; and

4.  Provide full substantive responses to PLAINTIFFS' SECOND SET OF INTERROGATORIES ADDRESSED TO UNILEVER UNITED STATES, INC.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration submitted herewith, the pleadings on file in this action, and on such other and further matters, evidence and arguments as may be presented in Plaintiffs' Reply brief or at the hearing on the motion.

## RULE 37(a)(1) & 37-1(a) CERTIFICATION

Pursuant to Fed. R. Civ. P. 37(a)(1), and L.R. 37-1(a), counsel for Plaintiffs hereby certifies that Plaintiffs have in good faith conferred or attempted to confer with Unilever in an effort to obtain the relief sought herein without court action, and that such attempts have been unsuccessful and have required the filing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Unilever refuses to engage in *any* discovery, purporting to rely on a reading of this Court's February 17, 2010 Related Case Order that is plainly improper. This case was initially filed in the Central District, but on January 25, 2010 was transferred to this Court. Ten days before the transfer, the parties held a Rule 26(f) conference. As they are entitled to do following the 26(f) conference, on February 2, Plaintiffs propounded discovery requests, which required Unilever's response by March 4.

While the requests were pending, Judge Ware issued the Related Case Order, relating this matter to *Rosen v. Unilever*, No. C 09-02563. The transfer of this case to Judge Ware meant rescheduling the initial case management conference. Thus the Order provided that, in accordance with the rescheduled CMC, the parties should "adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 . . ." (*See* Related Case Order, Dkt. No. 38.) But unbeknownst to the Court, the parties had *already* held a Rule 26(f) conference a month earlier, Unilever's initial disclosures had *already been due almost three weeks before the Order*, and Plaintiffs had *already begun propounding discovery*, as they are entitled to do following a 26(f) conference. Thus an adjustment of the dates for the Rule 26 conference and disclosures was *not necessary*. Notably, the Order does *not* instruct the parties to engage in a *new*, *redundant* 26(f) conference—it would be wasteful to do so.

Nor did Unilever sincerely read the Order this way. Even though Unilever *now* pretends the Order somehow restarted discovery or negated what had already occurred, Unilever never sought to hold a new Rule 26(f) conference prior to the scheduled March 8 CMC.[1] Thus Unilever is in the untenable—and telling—position of arguing that the January 15 Rule 26(f) conference was ineffective to begin discovery, but that Unilever was never required to engage in a second conference to "officially begin" discovery. That cannot be so, and because Unilever did not apprise Plaintiffs of its position until it served discovery responses in March, respectfully, the Court should not permit Unilever's improper reading of the Related Case Order to excuse its dilatory discovery conduct.

---

[1] The conference was later adjourned to April 26 (Dkt. No. 39), but by the time of the adjournment, a "new" Rule 26(f) conference would have been untimely by more than a week.

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

## II.   BACKGROUND FACTS

Unilever's margarines contain a substance that causes coronary heart disease, type-2 diabetes and cancer.

Artificial trans fat raises the risk of coronary heart disease more than any other known nutritive product.[2] Consuming even miniscule amounts of artificial trans fat nearly doubles the risk of type-2 diabetes—replacing only 2% of energy intake from artificial trans fat with natural cis fat reduces type-2 diabetes in women by 40%.[3] Consumption of artificial trans fat is further linked to some of the most common and deadly forms of cancer, increasing the risk of prostate cancer by 100%,[4] colorectal cancer by 86%,[5] and breast cancer by 75%.[6] Each year, artificial trans fat kills at least 30,000 Americans.[7]

Despite containing this toxic substance, the labels on several Unilever margarines prominently display the *false* message, "0g Trans Fat," or "Trans Fat Free." Other Unilever margarine labels read, "Cholesterol Free," a claim that, while possibly true, is highly misleading

---

[2] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, THE NEW ENGLAND JOURNAL OF MEDICINE 354.15, April 13, 2006, at 1601-13. (Cited in Compl. at ¶13.) Artificial trans fat damages the heart by "rais[ing] the concentration of the most dangerous form of serum cholesterol (LDL-cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL-cholesterol)." DIETARY GUIDELINES ADVISORY COMMI., U.S. DEP'T OF AG. (2000), *Report of the Dietary Guidelines Advisory Committee on the Dietary Guidelines for Americans to the Secretary of Health and Human Services and the Secretary of Agriculture*, at 37.

[3] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. of Clinical Nutrition 1019, 1023 (2001). (Cited in Compl. at ¶35.)

[4] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006). (Cited in Compl. at ¶38.)

[5] L.C. Vinkoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008). (Cited in Compl. at ¶40.)

[6] Veronique Chaques et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3n-EPIC Study*, 167 Am. J. of Epidemiology 1312, 1316 (2008). (Cited in Compl. at ¶37.)

[7] W.C. Willett et al., *Trans Fatty Acids: Are the Effects only Marginal?*, 84 Am. J. Pub. Health 722, 723 (1994). (Cited in Compl. at ¶27.)

3

1  because consumption of dietary cholesterol—unlike consumption of artificial trans fat—is *not*
2  linked to disease.[8]

3      Unilever also promotes its margarines by comparing their nutritional value to butter using
4  non-standard "nutritional comparison" labels that deceptively compare the fat and calorie content
5  of margarine diluted with water to undiluted butter. These labels, like the front-side marketing
6  messages, conceal the significant and dangerous amount of artificial trans fat in Unilever's
7  margarines.

8      Plaintiffs assert claims in the October 29, 2009 Complaint for Unilever's Violations of
9  the Lanham Act, 15 U.S.C. § 1125 *et seq.*; California's Unfair Competition Law, Cal. Bus. &
10  Prof. Code § 17200 *et seq.*; the Common Law of Unfair Competition; California's False
11  Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and California's Consumer Legal
12  Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "Complaint").

13  III.  <u>FACTS LEADING TO THIS MOTION</u>

14      The *Red* Plaintiffs filed a Complaint against Unilever in the Central District of California
15  on October 29, 2009 (Dkt. No. 1), and Unilever moved to stay and dismiss the case on
16  November 30, 2009 (Dkt. Nos. 8 & 11). A hearing on Unilever's motion to dismiss was
17  scheduled for February 8, 2010. On January 25, 2010, however, Judge Margaret M. Morrow
18  denied Defendant's motions and ordered, over Plaintiffs' objection, that the case be transferred
19  to the Northern District of California, where a related case is pending, styled *Rosen v. Unilever*,
20  No. 09-cv-02563 (JW).

21      Before the transfer, Plaintiffs and Unilever held a Rule 26(f) conference on January 15,
22  2010. Accordingly, ***Unilever was obligated to make its initial disclosures by January 29, 2010***,
23  Fed. R. Civ. P. 26(a)(1)(C), ***but has not done so***. Although on February 17, 2010, Judge Ware
24  issued the Related Case Order, providing that the parties should adjust the dates for the
25  conference, disclosures and report required by Federal Rules 16 and 26, that order issued 19 days
26  after Unilever's disclosures were already due.

27

28  _____
    [8] Katja L. Esrey et al., *Relationship Between Dietary Intake and Coronary Heart Disease*
29  *Mortality: Lipid Research Clinics Prevalence Follow-up Study*, 49 J. Clin. Epidemiology 2:211,
    212-216 (1996). *See also* Barbara Millen Posner et al., *Dietary Lipid Predictors of Coronary*
30  *Heart Disease in Men: The Framingham Study*, 151 Arch Intern Med 1181, 1184-86 (June
    1991).
31

32
                                            4

On January 29, Plaintiffs sent to Unilever for its review a proposed stipulation concerning electronic discovery. The stipulation would simplify the parties' discovery obligations and decrease the burden associated with electronic discovery. Despite Plaintiffs' follow-up, Unilever has never responded, either accepting the proposal or suggesting an alternative.

Plaintiffs then served, on February 2, 2010, (1) Requests for the Production of Documents (annexed to the Declaration of Gregory S. Weston in Support of Motion to Compel ("Weston Decl.") as Exhibit A); (2) a First Set of Interrogatories (annexed to the Weston Decl. as Exhibit B); and (3) a Second Set of Interrogatories (annexed to the Weston Decl. as Exhibit C). Accordingly, Unilever was obligated to makes its responses and any objections by March 4, 2010. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Instead of responding to Plaintiffs discovery requests in a good-faith manner consistent with the Federal Rules, Unilever lodged boilerplate objections and asserted—without basis—that discovery now is inappropriate. (*See* Unilever's Responses to Requests for Production, First Set of Interrogatories, and Second Set of Interrogatories, annexed to the Weston Decl. as, respectively, Exhibits D, E and F.)

On March 15, 2010, counsel sent Unilever a letter concerning its failure to make initial disclosures and its deficient responses, hoping to avoid the necessity of motion practice on these basic issues, and asking Unilever to serve bona fide responses by March 22, 2010 (annexed to the Weston Decl. as Exhibit G). Unilever has not done so. Instead, by email on March 22, Unilever said "[w]e do intend to serve Initial Disclosures, but are still in the process of investigating" and that it "hope[s] to serve the disclosures this week" (annexed to the Weston Decl. as Exhibit H). Thus Unilever has not actually committed to serving its disclosures as it is obligated to do. Finally, the letter requested, again, that Unilever review and comment on Plaintiff's proposed e-discovery stipulation, but Unilever has not done so.

IV.   ARGUMENT & DISCOVERY REQUESTED

Unilever's motion to dismiss this action is pending before the Court and is scheduled for a hearing in *June*. On March 23, counsel for Unilever sent a letter claiming that Unilever "is under no obligation to respond to plaintiffs' discovery requests pending resolution of Unilever's motion to dismiss," because—according to Unilever—the contested motion "will either fully resolve the case or narrow the issues . . . ." (annexed to the Weston Decl. as Exhibit I). A party cannot avoid discovery by purporting to be confident in the success of a pending motion to

dismiss. Moreover, with a hearing on the motion in June, and the likelihood that Judge Ware will not issue a decision for at least several weeks, if Unilever's position prevails, the defendant will have succeeded in delaying discovery for nearly a year since this action was filed. This is a case that alleges that Unilever is *poisoning* people, and lying to them about it. It is inappropriate to delay discovery for so long when there is so much at stake.

To the extent that Unilever is relying on any concessions or stipulations made by *Rosen* to delay discovery, the *Red* Plaintiffs are not party to any such agreements and are not bound by them. Indeed, the *Red* and *Rosen* cases, while related by Judge Ware, have not been consolidated, and they are separate, independent actions. The *Red* Plaintiffs have diligently pursued discovery and continue to do so, including by holding the Rule 26(f) conference several months ago.

Plaintiffs have issued a very reasonable twelve discovery requests—seven requests for the production of documents and five interrogatories—to Unilever. The requests are narrowly tailored to obtain highly relevant information bearing directly on the claims and defenses in this case. Instead of responding to the requests, Unilever lodged boilerplate, repetitive objections. Following its objections, Unilever failed to say, one way or another, whether it would produce documents, and provided no substantive responses to interrogatories. Instead of responding, Unilever told Plaintiffs that it "might" respond at some future time. The conduct is contrary to Unilever's obligations under the Federal Rules.

Unilever's behavior is disappointing and frustrating. For example, throughout its "responses," Unilever:

- Objects to the definition of "Margarine," even though the definition identifies the <u>exact products by name</u>, and which are at issue in the action;

- Objects to the definition of "documents," even though the definition comes straight from the Federal Rules;

- Pretends that precise phrases like "address of employment," and "nearest one hundred milligrams" are vague and ambiguous;

- Refuses to response to interrogatories concerning the presence of "partially hydrogenated vegetable oils" in its products on the illogical basis that the

interrogatories do not specify whether the interrogatory is limited to a specific type of oil (on their face, they are not);

- Objects to all requests as "overly broad" and "unduly burdensome," even while refusing to review and comment on Plaintiffs' proposed e-discovery stipulation, which is designed to ease the parties' burdens; and

- Draws its own legal conclusion about the "relevant time period" for this action, and objects to every request on that basis, even though no court has held in Unilever's favor on this issue.

A.     <u>Unilever Has Refused to Make Initial Disclosures; The Court Should Compel Disclosures</u>

By the time this Motion is heard on, the parties will have held a Rule 26(f) discovery conference more than three months ago, yet Unilever has consistently refused to meet even its most basic discovery obligations under the Federal Rules by providing its Initial Disclosures. Frankly, Plaintiffs are a little mystified that securing Unilever's compliance with such a basic rule would require motion practice.

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(A), if a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Before making such a motion, the moving party must "in good faith" confer or attempt to confer with the party failing to make the disclosure. L.R. 37-1(a). Plaintiffs have done so. (*See, e.g.*, Letter from Beck to Sahouria, Weston Decl., Ex. G.)

Unilever has no justification here for refusing to make its initial disclosures three months after the parties' Rule 26(f) discovery conference. Those disclosures were due just four days after the action was transferred to the Northern District, but there is no "reason why [parties] cannot proceed with discovery, notwithstanding the pendency of [a] motion to transfer." *Williams v. Granite Constr. Co.*, No. C08-04202, 2009 U.S. Dist. LEXIS 10756, at *5 n.4 (N.D. Cal. Feb. 3, 2009).

Importantly, Unilever's initial disclosures were due on January 29, ***almost three weeks before Judge Ware ordered, on February 17, that dates for Rule 26 disclosures otherwise be "adjusted."*** Thus, having already failed its Rule 26 obligations by the time Judge Ware's order issued, Unilever cannot rely on the order as justification for its failure to comply with Rule 26(a).

7

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

1   Even if Unilever could have anticipated Judge Ware's order, it would be nonsensical to read the

2   order as requiring a new Rule 26(f) conference after the parties had already spent substantial

3   time, resources and effort conducting the conference in January. Even if, somehow, Unilever was

4   justified in waiting for Judge Ware's order, at a minimum it should have made its disclosures

5   within the time period required by Rule 26 (14 days), following the Order. That would have

6   made Unilever's disclosures due March 3—but it is now nearly April, and Unilever has yet to

7   meet its obligation.[9]

8       Because Unilever has failed to meet its Rule 26(a) obligations, and has no justification

9   for that failure, the Court should compel Unilever to make the disclosures. *See, e.g.*, *Lopez v.*

10  *BNSF Ry. Co.*, No. 1:07-cv-1417, 2009 U.S. Dist. LEXIS 69770 (E.D. Cal. July 31, 2009)

11  (ordering party to serve initial disclosures).

12      **B.      Unilever's Responses to Plaintiffs' Requests for Production Are Improper;**

13              **the Court Should Order Unilever to Produce All Responsive Documents**

14      Plaintiffs propounded seven reasonable document requests on Unilever. Rather than

15  respond to the requests in good faith, Unilever, in a "Preliminary Statement," asserted for the

16  first time that "Discovery has not officially commenced in this case." (*See* Weston Decl., Ex. D,

17  at 1.) That is nonsense.

18      A party may begin seeking discovery at any time after a Rule 26(f) conference. Fed. R.

19  Civ. P. 26(d); *see, e.g.*, *Am. LegalNet, Inc. v. Davis*, No. CV 09-7957, 2009 U.S. Dist. LEXIS

20  120408, at *6 (C.D. Cal. Nov. 25, 2009). Thus discovery "officially commenced" in this case on

21  January 15, 2010.

22      Unilever's purported reliance on Judge Ware's February 17 Order is improper. The Order

23  merely provides that, along with a rescheduled case management conference date, the dates for

24  the Rule 26 conference and disclosure should be adjusted accordingly. Since the conference had

25  already occurred, and Unilever's initial disclosures were due several weeks before the Order,

26  there was no way to "adjust" those dates retroactively—they had come and gone and Unilever

27  had failed its obligations.

28

29

---

30  [9] Plaintiffs gave Unilever a further opportunity to comply by its March 15 letter, requesting the

31  disclosures be made within 7 days. (*See* Weston Decl., Ex. G.)

32

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

Had Unilever sincerely believed in the position it now takes, it would have advised Plaintiffs well before its discovery responses were due. For example, if Unilever sincerely believed the Related Case Order somehow voided the January 15 Rule 26(f) conference, and required the parties to engage in a new, redundant conference, it would have contacted Plaintiffs to schedule a new 26(f) conference. But Unilever never contacted Plaintiffs, and its attempt to wield the Related Case Order now as a shield to discovery is transparently improper. Similarly, if Unilever sincerely believed the Related Case Order excused its obligation to respond properly to discovery requests, it should have moved for a protective order pursuant to Rule 26(c), rather than wait 30 days to merely stonewall Plaintiffs with its responses.

Instead, Unilever lodged the same rote boilerplate objections to *every* discovery request, using cut-and-paste, which is obvious because of the repetition of the same typographical errors in *every* discovery request. Such objections are insufficient to meet the objecting party's burden of explaining why discovery requests are objectionable, *see, e.g.*, *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990), and when faced with them, the Court should "not individually analyze each of defendant's boilerplate objections," *Lal v. Felker*, No. CIV S-07-2060, 2010 U.S. Dist. LEXIS 21046, at *7 (E.D. Cal. Feb. 10, 2010).

Moreover, Unilever took the clever approach of, while lodging boilerplate objections to every Request, refusing to actually *respond* to the Request (for example, saying whether it will or will not produce responsive documents). Instead, Unilever purports to delay a response until whenever Unilever "believes" discovery is "appropriate." This strategy is telling because the failure to object to discovery requests waives the right to future objections. *See, e.g.*, *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 364, 368 (D. Conn. 2005) (a party which fails to object to a discovery request waives any objections it otherwise might have made). Knowing that discovery was proper, Unilever was careful to avoid waiving objections, while strategically avoiding providing responses.

## 1.    Unilever's Reliance on Its General Objections is Improper

Unilever's discovery responses lodge several boilerplate general objections, and Unilever is seemingly withholding discovery responses based on a recitation of those objections rather than showing "specifically how each interrogatory or document request is not relevant or how each question is overly broad, burdensome or oppressive." *Sunnen Prods. Co. v. Travelers Cas.*

9

*& Sur. Co. of Am.*, No. 4:09CV00889, 2010 U.S. Dist. LEXIS 16953, at *3 (E.D. Mo. Feb. 25, 2010). Withholding documents based upon non-specific, introductory objections is improper, and any such objections should be overruled. *Id.*

### 2. Unilever's General Objection No. 7 is Improper

Unilever objects to the Requests to the extent they seek information that is relevant to the substantive claims and defenses in the case, rather than relevant only to the question of class certification. Unilever lodges this objection "on the ground that initial discovery *may* be limited to class issues." (Weston Decl. Ex. D, at 2.) But discovery has not been so limited and Unilever has no basis on which to deny substantive discovery. This objection should be overruled.

### 3. Unilever's Objections to Definitions and Instructions Are Improper

Unilever's boilerplate objections to definitions—including definitions consistent with the *Federal Rules*—evidences Unilever's cursory treatment of Plaintiffs' discovery requests. The objections are baseless and should be overruled. *See, e.g.*, *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (general or boilerplate objections such as "overly burdensome" are improper).

#### A. "You" and "Your"

Unilever objects to Plaintiffs definition of "You" and "Your," asserting that it will limit its responses to Unilever United States, Inc., but that it will not produce documents relating to Unilever's predecessors, successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives, and all other persons acting under their control or on their behalf. Unilever claims, without basis, that this definition is "not likely to lead to the discovery of admissible evidence." (*See* Weston Decl., Ex. D. at 5.)

The language used in this definition is routine and proper. Many companies operate through separate but related entities, divisions, parents, subsidiaries, employees, agents, etc. By purporting to limit its responses to a single business entity, Unilever may be attempting to shield itself from the discovery of relevant, highly-probative information that is technically in the possession, custody or control of a related entity. This objection should be overruled. *See, e.g.*, *Goodrich Corp. v. Emhart Indus.*, No. EDCV 04-00759, 2005 U.S. Dist LEXIS 17190 (C.D. Cal.

10

June 10, 2005) (overruling and instructing party with withdraw objection to similar definition of "you" and "your").

### B.   "Person"

Unilever objects to the definition of "person" as overbroad and not likely to lead to the discovery of admissible evidence. But Plaintiffs' definition of person is consistent with the legal definition—that is, including both natural humans and corporate entities. *See, e.g.*, BLACK'S LAW DICTIONARY 1162 (7th ed. 1999). Unilever's objection is baseless and should be overruled.

### C.   "Document"

While Plaintiffs define "document" as "synonymous and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure," Unilever nevertheless objects to it as "overly broad and unduly burdensome and vague and ambiguous" and "not likely to lead to the discovery of admissible evidence." The objection is so patently improper, little need be said. It should be overruled. *See generally, e.g.*, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 26.3 (Uniform Definitions in Discovery Requests, defining "document" in the exact same manner).[10]

### D.   "Communication"; "Meeting," "meet," or "met"; "Marketing" or "market"; "Relating to"

Again, Unilever states boilerplate objections to standard, well-accepted definitions, but provides no basis for believing the objections are sincere. Again, the objections should be overruled.

### E.   "Class period"

Unilever objects to the definition of "class period," which is the same definition used in Plaintiffs' Complaint, based on Unilever's legal conclusion that the period is not limited to the statute of limitations. But there has been no such ruling. Even if Unilever was correct, though, Plaintiffs may reasonably discover pre-class material. *See, e.g.*, *In re Seagate Tech II Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P97,633, 1993 U.S. Dist LEXIS, at *4 (N.D. Cal. 1993) (the class period "does not determine the period of relevancy for discovery purposes . . . there is no rule

---

[10] *Available at* http://www1.nysd.uscourts.gov/rules/rules.pdf. This district has no corresponding local rule, but because the definitions used by the SDNY and EDNY are court-sanctioned and consistent with well-accepted understandings of commonly used discovery terms, they are instructive in determining the validity of a definition used by Plaintiffs.

1  fixing discovery in class action litigation to the class period.") The objection should be

2  overruled.

3                          F.      "Margarine"

4        Although the definition of Margarine specifically identifies the products at issue in this

5  case by name, Unilever objects to the definition as, among other things, "vague" and

6  "ambiguous." The objection is nonsensical and should be overruled.

7                  **3.      The Court Should Compel Unilever to Produce All Documents That
                          Relate to the Trans Fat Content of Its Margarines (<u>Request No. 1</u>)**
8

9  *REQUEST FOR PRODUCTION NO. 1:*

10       *All Documents that Relate to the trans fat content of Your Margarines.*

11 *RESPONSE TO REQUEST FOR PRODUCTION NO. 1:*

12       *Unilever incorporates by reference its General Objections and Objections to Definitions*

13 *and Instructions as though fully set forth herein. Unilever further objects that this request is*

14 *overly broad and unduly burdensome as to, but not limited to, the terms "all," "documents,"*

15 *"relate to," "Your," and" Margarines." The request is not reasonably calculated to lead to the*

16 *discovery of admissible evidence. Moreover, this request is vague and ambiguous as to, but not*

17 *limited to, the terms "relate to," "trans fat," "content," and "Margarines." Unilever also objects*

18 *to the time limit as being defined as "January 1, 2000 to the present, which is not limited to the*

19 *relevant time period and is overly broad, unduly burdensome and not likely to lead to the*

20 *discovery of admissible evidence.*

21       *Unilever objects to this request to the extent that it seeks information protected by the*

22 *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.*

23 *Additionally, the Unilever [sic] objects to this request to the extent it seeks a trade secret or*

24 *confidential, proprietary, and/or commercially sensitive information. Unilever also objects to the*

25 *request to the extent it seeks information not in its custody, possession or control or that is*

26 *publicly available.*

27       *Subject to these objections and all General Objections and Objections to Definitions, the*

28 *Unilever [sic] will respond to the extent necessary once discovery is appropriate.*

29 ------------------

30

31                                          12

32

1    This case is about Unilever misleading the public by falsely suggesting its margarines are

2    healthy, when in fact their trans fat content makes them deadly. While this request is broad, the

3    trans fat content of Unilever's margarines is a key issue in the case, and thus Plaintiffs are

4    entitled to wide discovery on this issue. Indeed, by reviewing Unilever's documents related to

5    the trans fat content of its margarines, Plaintiffs may discover much information relevant to the

6    claims and defenses in this action including, for example, (1) the extent to which Unilever's

7    margarine marketing is misleading; (2) the extent to which Unilever is or was aware of the harm

8    caused by its margarines; (3) the extent to which the amount of trans fats in its margarine

9    changed over time, if at all, and how Unilever's marketing changed, if at all; and (4) the extent to

10   which Unilever had or has reasonable alternatives. Besides these issues, the review of these

11   documents may lead to the discovery of other relevant, highly-probative information to which

12   Plaintiffs are entitled, and to the discovery of knowledgeable witnesses.

13   Nor does this Request run afoul of Rule 26(b)(2)'s limitations. It should not be

14   particularly difficult for Unilever to search its electronic records for the term "trans fat," in order

15   to locate responsive documents. Even if the proposed search involved some burden, the

16   importance of these documents to this case—which asserts class-wide damages in the *billions*—

17   outweighs any such burden.

18          **4.     The Court Should Compel Unilever to Produce All Documents That
19                   Relate to the Labels and Packages of Its Margarines, Including
                     Images of the Labels and Packaging and Drafts of Such Documents
20                   (Request No. 2)**

21   *REQUEST FOR PRODUCTION NO. 2:*

22   *All Documents that Relate to the labels and packages of Your Margarines, including*

23   *images of the labels and packaging and drafts of such documents.*

24   *RESPONSE TO REQUEST FOR PRODUCTION NO. 2:*

25   *Unilever incorporates by reference its General Objections and Objections to Definitions*

26   *and Instructions as though fully set forth herein. Unilever further objects that this request is*

27   *overly broad and unduly burdensome as to, but not limited to, the terms "all," "documents,"*

28   *"relate to," labels," "packages" "Your," "Margarines," "images" and "drafts." The request is*

29   *not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request*

30   *is vague and ambiguous as to, but not limited to, the terms "relate to," "labels," "packages,"*

31

32

1   *"Margarines," and "images." Unilever also objects to the time limit as being defined as "January*
2   *1, 2000" to the present, which is not limited to the relevant time period and is overly broad,*
3   *unduly burdensome and not likely to lead to the discovery of admissible evidence.*

4          *Unilever objects to this request to the extent that it seeks information protected by the*
5   *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.*
6   *Additionally, the Unilever [sic] objects to this request to the extent it seeks a trade secret or*
7   *confidential, proprietary, and/or commercially sensitive information. Unilever also objects to the*
8   *request to the extent it seeks information not in its custody, possession, or control or that is*
9   *publicly available.*

10         *Subject to these objections and all General Objections and Objections to Definitions, the*
11  *Unilever [sic] will respond to the extent necessary once discovery is appropriate.*

12  -----------------

13         On the flip side of what's *in* Unilever's margarines is what's *on* them, that is, how they
14  are labeled and marketed. This Request is reasonably calculated to discover highly-relevant
15  information about the challenged products. Responsive documents, in addition to establishing
16  some basic facts, such as the exact labels used on every challenged product over time, are likely
17  to show, for example: (1) Unilever's marketing strategy and any changes thereto; (2) the extent
18  to which Unilever knew its marketing was misleading; (3) any cost-benefit analysis Unilever
19  conducted in choosing its marketing campaign; (4) any alternatives Unilever considered. Besides
20  these issues, the review of these documents may lead to the discovery of other relevant, highly-
21  probative information to which Plaintiffs are entitled, and to the discovery of knowledgeable
22  witnesses.

23         Like the first Request, under Rule 26(b)(2), the burden imposed by this request does not
24  outweigh its importance to the issues in this case. It is likely that all or most of the relevant
25  documents are stored in a single division, such as in Unilever's marketing department, and/or
26  with a small number of marketing people. It should be relatively simple for Unilever to collect
27  responsive documents but running searches, for example, of the words "label," "package," or
28  "packaging," next to the specific challenged products.

29

30

31

32

---

14

5.   **The Court Should Compel Unilever to Produce All Documents That Relate to the Effects of Trans Fat on Human or Animal Health (Request No. 3)**

*REQUEST FOR PRODUCTION NO. 3:*

    *All Documents that Relate to the effects of trans fat on human or animal health.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 3:*

    *Unilever incorporates by reference its General Objections and Objections to Definitions and Instructions as though fully set forth herein. Unilever further objects that this request is overly broad and unduly burdensome as to, but not limited to, the terms "a11," "documents," "Relate to the effects of trans fat on human or animal health." The request is not reasonably Calculated to lead to the discovery of admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the terms "relate to," "trans fat," "and "human or animal health." Unilever also objects to the time limit as being defined as "January 1,2000" to the present, which is not limited to the relevant time period and is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.*

    *Unilever objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Additionally, the Unilever* [sic] *objects to this request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially sensitive information. Unilever also objects to the request to the extent it seeks information not in its custody, possession, or control or that is publicly available.*

    *Subject to these objections and all General Objections and Objections to Definitions, the Unilever* [sic] *will respond to the extent necessary once discovery is appropriate.*

------------------

    What Unilever knew or knows about the effects of trans fat directly impacts on the question of Unilever's willfulness in misleadingly labeling the margarine products challenged in this action. Plaintiffs will seek punitive damages and so are entitled to discovery of information which is relevant to the question of Unilever's *mens rea*. Documents responsive to this Request are likely to (1) establish basic facts about the danger of trans fats—a question which Judge Ware posed to Plaintiff's counsel in the *Rosen* action during a hearing on Unilever's motion to

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

dismiss that case; and (2) provide insight into Unilever's knowledge of its products, including any action, positive or negative, that Unilever took when it became aware of the dangers of trans fats.

This request is not unduly burdensome, especially in light of its importance, and so does not run afoul of Rule 26(b)(2)'s proportionality requirement. Unilever should have easy access to any product testing reports or results performed by Unilever or on its behalf, and it is unlikely that the volume of documents is especially high. Moreover, the Request concerns only a handful of products.

### 6. The Court Should Compel Unilever to Produce Its Document Retention Policies (<u>Request No. 4</u>)

*<u>REQUEST FOR PRODUCTION NO. 4:</u>*

*Your document retention policies.*

*<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4:</u>*

*Unilever incorporates by reference its General Objections and Objections to Definitions and Instructions as though fully set forth herein. Unilever further objects that this request is overly broad and unduly burdensome as to, but not limited to, the terms "your," and "document retention policies." The request is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the term "document retention policies." Unilever also objects to the time limit as being defined as "January 1, 2000" to the present, which is not limited to the relevant time period and is overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence.*

*Unilever objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Additionally, the Unilever [sic] objects to this request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially sensitive information.*

*Subject to these objections and all General Objections and Objections to Definitions, the Unilever [sic] will respond to the extent necessary once discovery is appropriate.*

------------------

1    "That a party's document retention policies, including its policies as to electronically

2    stored information, may be a fit subject of discovery cannot be gainsaid." *Newman v. Borders,*

3    *Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009) (citation omitted).

4    Plaintiffs are entitled to know Unilever's document retention policy, and any changes in

5    that policy, in order to test any assertion that documents responsive to Plaintiffs' document

6    requests are no longer in Unilever's custody, possession or control because of routine document

7    destruction. The Request is calculated to lead to admissible evidence because production of

8    responsive documents may allow Plaintiffs to locate relevant documents that are responsive to

9    other requests, but which Unilever has not produced. Nor should Plaintiffs be required to wait

10   until a controversy arises.

11   Under Rule 26(b)(2), the production of one or two document retention policies puts

12   almost no burden on Unilever, but Plaintiffs would be highly prejudiced if such policies were not

13   in its possession if and when a controversy arose.

14        **7.    The Court Should Compel Unilever to Produce Organization Charts**

15             **Showing Any Employees Who Market, Manufacture, or Develop Its Margarines (<u>Request No. 5</u>)**

16

17   <u>*REQUEST FOR PRODUCTION NO. 5*</u>:

18   *Organization charts showing any employees who market, manufacture, or develop Your*

19   *Margarines.*

20   <u>*RESPONSE TO REQUEST FOR PRODUCTION NO. 5*</u>:

21   *Unilever incorporates by reference its General Objections and Objections to Definitions*

22   *and Instructions as though fully set forth herein. Unilever further objects that this request is*

23   *overly broad and unduly burdensome, as to, but not limited to, the terms "organization charts,"*

24   *"showing," and "any employee who market, manufacture or develop," "Your," and*

25   *"Margarines." The request is not reasonably calculated to lead to the discovery of admissible*

26   *evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the terms*

27   *"organizational charts," "showing," "employees" "market, "manufacture," "develop," and*

28   *"Margarines." Unilever also objects to the time limit as being defined as "January 1, 2000" to*

29   *the present, which is not limited to the relevant time period and is overly broad, unduly*

30   *burdensome and not likely to lead to the discovery of admissible evidence.*

31

32

17

1    *Unilever objects to this request to the extent that it seeks information protected by the*

2    *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.*

3    *Additionally, the Unilever* [sic] *objects to this request to the extent it seeks a trade secret or*

4    *confidential, proprietary, and/or commercially sensitive information.*

5        *Subject to these objections and all General Objections and Objections to Definitions, the*

6    *Unilever* [sic] *will respond to the extent necessary once discovery is appropriate.*

7    ------------------

8        Plaintiffs are entitled to discover Unilever's corporate structure and employees with

9    knowledge of relevant facts. Notably, this Request is narrowly limited only to organization

10   charts concerning Unilever's marketing department and employees. Because Unilever's

11   marketing is the key issue in this case, the requested documents are likely to both lead to

12   admissible evidence through, for example, the discovery of knowledgeable witnesses, and help

13   Plaintiffs understand exactly how Unilever makes marketing decisions. *See generally Whitlow v.*

14   *Martin*, No. 04-3211, 2008 U.S. Dist. LEXIS 46111, at *16 (C.D. Ill. June 12, 2008) (ordering

15   production of organization charts).

16       The burden on Unilever here is small. There cannot be more than one or two dozen

17   marketing organization charts that cover the period from January 1, 2000 to the present

18   (including showing any changes in organization). Moreover, they are likely to be located in a

19   central, readily accessible spot, such as with Unilever's human resources. Thus, the

20   proportionality requirement of Rule 26(b)(2) weighs in favor of Plaintiffs.

21       **8.    The Court Should Compel Unilever to Produce Documents Sufficient**
         **to Calculate Its Total Revenue From the Sale of Margarine in the**
22       **United States for Each Year in the Class Period (<u>Request No. 6</u>)**

23

24   <u>*REQUEST FOR PRODUCTION NO. 6:*</u>

25       *Documents sufficient to calculate total* [sic] *Your total revenue from the sale of*

26   *Margarine in the United States for each year in the Class Period.*

27   <u>*RESPONSE TO REQUEST F'OR PRODUCTION NO. 6:*</u>

28       *Unilever incorporates by reference its General Objections and Objections to Definitions*

29   *and Instructions as though fully set forth herein, Unilever further objects that this request is*

30   *overly broad and unduly burdensome as to, "documents," "sufficient to calculate total* [sic] *Your*

31

32

1  *total revenue," "Margarine," and "Class Period." The request is not reasonably calculated to*

2  *lead to the discovery of admissible evidence. Moreover, this request is vague and ambiguous as*

3  *to, but not limited to, the terms "sufficient to calculate total [sic] Your total revenue," "sale," and*

4  *"Margarine." .Unilever [sic] also objects to the time limit as being defined as the "Class*

5  *Period," which is not limited to the relevant time period and is overly broad, unduly burdensome*

6  *and not likely to lead to the discovery of admissible evidence.*

7       *Unilever objects to this request to the extent that it seeks information protected by the*

8  *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.*

9  *Additionally, the Unilever [sic] objects to this request to the extent it seeks a trade secret or*

10  *confidential, proprietary, and/or commercially sensitive information. Unilever also objects to the*

11  *request to the extent it seeks information not in its custody, possession, or control or that is*

12  *publicly available.*

13       *Subject to these objections and all General Objections and Objections to Definitions, the*

14  *Unilever [sic] will respond to the extent necessary once discovery is appropriate.*

15  ------------------

16       Documents responsive to this Request are relevant to the question of Plaintiffs' and the

17  Class' damages. The Complaint asserts that Plaintiffs and the Class Members are entitled to

18  restitution and/or damages for the amounts they spent on Unilever's margarines because of

19  Unilever's misrepresentations. In determining those damages, Unilever's revenue on the

20  margarines is a good proxy and, at a minimum, is an appropriate starting place for Plaintiffs.

21  Knowing Unilever's revenue during the Class Period will moreover better enable Plaintiffs to

22  assess any proposed settlement accomplished by, for example, a *cy pres* donation to

23  organizations that conduct research designed to combat the dangerous effects of Unilever's

24  margarines: the larger Unilever's revenue, the larger such a donation should be. *See generally*,

25  *Bruce v. Weekly World News*, 310 F.3d 25, 31 (1st Cir. 2002) (defendant's internal revenue

26  documents were best way of determining damages); *In re Levaquin Prods. Liability Litig.*, MDL

27  No. 08-1943, 2009 U.S. Dist. LEXIS 110576, at *5-6 (D. Minn. 2009) (granting motion to

28  compel defendants' production of documents relating to marketing, pricing, sales, revenue,

29  profits and costs).

30

31

32

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

1    There is almost no burden involved in producing these highly-relevant documents

2  because Unilever undoubtedly keeps careful track of its revenue on every product it makes.

3  Without such records, Unilever could not make informed business choices. Moreover, where the

4  Request calls for documents *sufficient to show* Unilever's revenue for each year, this could

5  amount to a single summary document. Thus there is no proportionality problem under Rule

6  26(b)(2).

7    **9.    The Court Should Compel Unilever to Produce All Documents That**
     **Have Been Produced to the Plaintiff in the *Rosen* Action (<u>Request. No.</u>**

8    **<u>7</u>)**

9

10  <u>*REQUEST FOR PRODUCTION NO. 7*</u>:

11    *All Documents that have been produced to the plaintiff in the action Rosen v. Unilever*

12  *United States, Inc., No. 09-02563 (N.D. Cal.).*

13  <u>*RESPONSE TO REQUEST FOR PRODUCTION NO. 7*</u>:

14    *Unilever incorporates by reference its General Objections and Objections to Definitions*

15  *and Instructions as though fully set forth herein. Unilever further objects that this request is*

16  *overly broad and unduly burdensome as to, but not limited to, the terms "all," and" Documents."*

17  *The request is not reasonably calculated to lead to the discovery of admissible evidence.*

18  *Moreover, this request is vague and ambiguous as to, but not limited to, the term "produced."*

19  *Unilever also objects to the time limit as being defined as "January 1,2000" to the present, which*

20  *is not limited to the relevant time period and is overly broad, unduly burdensome and not likely*

21  *to lead to the discovery of admissible evidence.*

22    *Unilever objects to this request to the extent that it seeks information protected by the*

23  *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege*

24  *and is in violation of any protective orders. Additionally, the Unilever* [sic] *objects to this*

25  *request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially*

26  *sensitive information.*

27    *Subject to these objections and all General Objections and Objections to Definitions, the*

28  *Unilever* [sic] *will respond to the extent necessary once discovery is appropriate.*

29  ------------------

30

31                                            20

32

Judge Ware has related this case to the *Rosen* case and has suggested that consolidation may be appropriate. Because the cases are so similar—and indeed, where counsel for both Rosen and the Red Plaintiffs are cooperating—it is fair for Plaintiffs to expect that all documents relevant and responsive to discovery requests in one action will be relevant in the other.

Propounding this discovery request actually *lessens* Unilever's burden because it puts Unilever on notice that, whenever it produced documents to Rosen, it must produce the same documents to the Reds. It is far easier to simply burn a second DVD, or make a photocopy, at the time of production, than to engage in a process whereby the Red Plaintiffs serve exact replicas of Rosen's discovery requests and engage in a round of objections, responses, meet and confers, and motion practice, only to arrive at the same end. Under Rule 26(b)(2), Unilever's compliance with this Request is proper.

## C.   Unilever's Responses to Plaintiffs' Interrogatories Are Improper; the Court Should Order Unilever to Provide Full, Substantive Responses to All Interrogatories

Unilever relies on the same improper reading of the Related Case Order to avoid its obligation to respond to Plaintiffs' Interrogatories. (*See* Weston Decl., Ex. E, at 1 & ¶1; Ex. F, at 1 & ¶1.) Unilever also lodges the same baseless objections to definitions of "you" and "your," "person," "document," "communication," "meeting," "meet, or met," "marketing" or "market," and "margarine." (*Id.*, Ex. E at ¶3-10; Ex. F at ¶¶3-10). Unilever also objects to the definition of "concerning," and "and" and "or" (*id.*, Ex. E at ¶¶5, 11; Ex. F at ¶¶5, 11), even though those definitions are well-accepted, for example, consistent with the SDNY's and EDNY's uniform discovery definitions. SDNY & EDNY L.R. 26.3. Those objections should be overruled and Unilever compelled to respond to Plaintiffs' Interrogatories subject to Plaintiffs' definitions.

Interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). The specific Interrogatories Plaintiffs propounded are discussed below.

### 1.   The Court Should Compel Unilever to List the Names on the Packages of All Margarines Sold by Unilever During the Class Period (Interrogatory No. 1)

*INTERROGATORY NO. 1:*

*List the names on the packages of all Margarines sold by You during the Class Period.*

21

1    _RESPONSE TO INTERROGATORY NO. 1:_

2      *Unilever incorporates by reference its General Objections and Objections to Definitions*

3 *and Instructions as though fully set forth herein. Unilever further objects that this request is*

4 *overly broad and unduly burdensome as to, but not limited to, the terms "all," "Margarines,"*

5 *"You," and "Class Period." The request is not reasonably calculated to lead to the discovery of*

6 *admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the*

7 *terms "names," "packages," "Margarines," "sold," and "Class Period." Unilever also objects*

8 *to the time limit as being defined as the "Class Period" which as described in the Complaint is*

9 *not limited to the relevant time period and is overly broad, unduly burdensome, and not likely to*

10 *lead to the discovery of admissible evidence.*

11      *Unilever objects to this request to the extent that it seeks information protected by the*

12 *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege*

13 *and is in violation of any protective orders. Additionally, the Unilever* [sic] *objects to this*

14 *request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially*

15 *sensitive information.*

16      *Subject to these objections and all General Objections and Objections to Definitions, the*

17 *Unilever* [sic] *will respond to the extent necessary one discovery is appropriate.*

18 ------------------

19      Plaintiffs' lawsuit challenges several of Unilever's margarine products, but Plaintiffs are

20 entitled to know the universe of products Unilever sold during the class period because

21 Unilever's practices with respect to products not identified in the Complaint may be relevant to

22 its business practices generally, or may lead to an expanded scope of the Complaint. For

23 example, if there was a change in the name of a product that Plaintiffs challenge, Plaintiffs are

24 entitled to discover information about the product both before and after the name change.

25 //

26 //

27 //

28 //

29 //

30 //

31

32

---

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

**2. The Court Should Compel Unilever to List All Margarines That Contained Partially Hydrogenated Oil as an Ingredient, and the Time Period During Which it Contained the Ingredient (<u>Interrogatory No. 2</u>)**

<u>*INTERROGATORY NO. 2*</u>:

*Of the Margarines described in Interrogatory No. 1, list all those that contained partially hydrogenated oils as an ingredient, and the time period in which it contained the ingredient.*

<u>*RESPONSE TO INTERROGATORY NO. 2*</u>:

*Unilever incorporates by reference its General Objections and Objections to Definitions and Instructions as though fully set forth herein. Unilever further objects that this request is overly broad and unduly burdensome as to, but not limited to, the terms* [sic] *"Margarines." The request is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the terms "Margarines," "contained," and "partially hydrogenated oils." The request does not specify whether the product is limited to a specific type of oil or oils. Unilever also objects to the extent that "and" constitutes a subpart or compound request. Unilever also objects to the time limit as not being limited to the relevant time period in this lawsuit and is therefore overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.*

*Unilever objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and is in violation of any protective orders. Additionally, the Unilever* [sic] *objects to this request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially sensitive information.*

*Subject to these objections and all General Objections and Objections to Definitions, the Unilever* [sic] *will respond to the extent necessary one discovery is appropriate.*

------------------

Partially hydrogenated oil, or PHO, is the culprit behind trans fats. The process of hydrogenating the oil creates trans fats, which are then present in products that use PHO. Because this action is about Unilever's products that contain PHO, Plaintiffs are entitled to know the universe of such products. This knowledge, even if it concerns products Plaintiffs do not yet

1  challenge in the Complaint, might reasonably lead to the discovery of witnesses knowledgeable
2  about Unilever's use of PHO and trans fats, generally, or information that would reflect on
3  Unilever's manufacture and marketing of such products.

4          **3.      The Court Should Compel Unilever to List the Amount, For Each
                     Year in the Class Period, That Unilever Received in Revenue From
5                    the Sale of Margarine that Contained Partially Hydrogenated
6                    Vegetable Oil (Interrogatory No. 3)**

7  *INTERROGATORY NO. 3:*

8          *The amount for each year in the Class period that you received in revenue from the sale*
9  *of margarine that contained partially hydrogenated vegetable oil.*

10 *RESPONSE TO INTERROGATORY NO. 3:*

11         *Unilever incorporates by reference its General Objections and Objections to Definitions*
12 *and Instructions as though fully set forth herein. Unilever further objects that this request is*
13 *overly broad and unduly burdensome as to, but not limited to, the terms "amount," "Class*
14 *period," and "margarine." The request is not reasonably calculated to lead to the discovery of*
15 *admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the*
16 *terms "Class period," "revenue," "sale," "contained," and "partially hydrogenated vegetable*
17 *oils." The request does not specify whether the product is limited to a specific type of oil or oils.*
18 *Unilever also objects to the time limit as being defined as the "Class period" which as described*
19 *in the Complaint is not limited to the relevant time period and is overly broad, unduly*
20 *burdensome, and not likely to lead to the discovery of admissible evidence.*

21         *Unilever objects to this request to the extent that it seeks information protected by the*
22 *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege*
23 *and is in violation of any protective orders. Additionally, the Unilever* [sic] *objects to this*
24 *request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially*
25 *sensitive information.*

26         *Subject to these objections and all General Objections and Objections to Definitions, the*
27 *Unilever* [sic] *will respond to the extent necessary one discovery is appropriate.*

28 ------------------

29         As with the related document request discussed above, Unilever's response to this
30 interrogatory is directly relevant to the question of Plaintiffs' and the Class' damages. The
31 Complaint asserts that Plaintiffs and the Class Members are entitled to restitution and/or

32

damages for the amounts they spent on Unilever's margarines because of Unilever's misrepresentations. In determining those damages, Unilever's revenue on the margarines is a good proxy and, at a minimum, is an appropriate starting place for Plaintiffs. Knowing Unilever's revenue during the Class Period will moreover better enable Plaintiffs to assess any proposed settlement accomplished by, for example, a *cy pres* donation to organizations that conduct research designed to combat the dangerous effects of Unilever's margarines: the larger Unilever's revenue, the larger such a donation should be.

### 4. The Court Should Compel Unilever to Provide a List of Each of Its Employees Involved in the Advertising and/or Promotion of Its Margarines and, For Each Individual, to Describe the Nature of Their Involvement and Address of Employment (<u>Interrogatory No. 4</u>)

<u>*INTERROGATORY NO. 4*</u>*:*

*Please provide a list of each of Your employees involved in the advertising and/or promotion of Your margarines; for each individual, please describe the nature of their involvement and address of employment.*

<u>*RESPONSE TO INTERROGATORY NO. 4*</u>*:*

*Unilever incorporates by reference its General Objections and Objections to Definitions and Instructions as though fully set forth herein. Unilever further objects that this request is overly broad and unduly burdensome as to, but not limited to, the terms "Your employees involved in the advertising and/or promotion," "Your," "margarines," "nature of their involvement and address of employment." The request is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request is vague and ambiguous as to, but not limited to, the terms "involved in," "advertising," "promotion," "margarines," "nature of employment," and "address of employment." Unilever also objects to the request contains [sic] subparts and/or is compound. Unilever also objects to the time limit as not being limited to the relevant time period in this lawsuit and is therefore overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.*

*Unilever objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and is in violation of any protective orders. Additionally, the Unilever [sic] objects to this*

1  *request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially*

2  *sensitive information.*

3  *Subject to these objections and all General Objections and Objections to Definitions, the*

4  *Unilever [sic] will respond to the extent necessary one discovery is appropriate.*

5  ------------------

6  As is a common use for interrogatories, this request seeks to identify witnesses who may

7  be knowledgeable about the claims and defenses in this action. Unilever's advertising and

8  marketing practices are directly at issue in this case; Plaintiffs are entitled to know who at

9  Unilever is responsible for those practices, and what the involvement is of each of those people.

10  **5.    The Court Should Compel Unilever to List the Amount of Partially**
11  **Hydrogenated Oil and Trans Fat for Each Product Described in the**
       **Complaint to the Nearest One Hundred Milligrams, Including Any**
12  **Changes During the Class Period (<u>Interrogatory No. 5</u>)**

13  <u>*INTERROGATORY NO. 5*</u>*:*

14  *List the amount of partially hydrogenated oil and trans fat for each product described in*

15  *the complaint to the nearest one hundred milligrams and to the extent the amount was not the*

16  *same during the class period. List the dates and amounts during those dates.*

17  <u>*RESPONSE TO INTERROGATORY NO. 5*</u>*:*

18  *Unilever incorporates by reference its General Objections and Objections to Definitions*

19  *and Instructions as though fully set forth herein. Unilever further objects that this request is*

20  *overly broad and unduly burdensome as to, but not limited to, the terms "amount," "to the*

21  *nearest one hundred milligrams," and "[l]ist the dates and amounts during those dates." The*

22  *request is not reasonably calculated to lead to the discovery of admissible evidence. Moreover,*

23  *this request is vague and ambiguous as to, but not limited to, the terms "amount," "to the*

24  *nearest one hundred milligrams," "partially hydrogenated oil," "trans fat," and "to the extent*

25  *the amount was not the same during the class period. Unilever also objects to the request*

26  *contains [sic] subparts and/or is compound. Unilever also objects to the time limit as not being*

27  *limited to the relevant time period in this lawsuit and is therefore overly broad, unduly*

28  *burdensome, and not likely to lead to the discovery of admissible evidence. Unilever also objects*

29  *to the request to the extent it calls for information that is not scientifically or economically*

30  *feasible.*

31

32

1    *Unilever objects to this request to the extent that it seeks information protected by the*

2    *attorney-client privilege, the attorney work product doctrine, or any other applicable privilege*

3    *and is in violation of any protective orders. Additionally, the Unilever* [sic] *objects to this*

4    *request to the extent it seeks a trade secret or confidential, proprietary, and/or commercially*

5    *sensitive information.*

6        *Subject to these objections and all General Objections and Objections to Definitions, the*

7    *Unilever* [sic] *will respond to the extent necessary one discovery is appropriate.*

8    ------------------

9        The amount of trans fat present in Unilever's products directly affects how dangerous

10   those products are. Because the issue in this case is whether Unilever's marketing misleadingly

11   minimized the danger of its products, Plaintiffs must establish that the products are, in fact,

12   dangerous. This interrogatory is directly on point.

13       To the extent Unilever objects based on "scientific or economic infeasibility, Unilever

14   should be required to support that assertion with, at a minimum, a declaration explaining the

15   claim. If it is, indeed, scientifically or economically "infeasible" to test Unilever's products to

16   determine the amount of trans fat to the nearest hundredth milligram, then Unilever should be

17   compelled to respond to the interrogatory in an economically feasible way that is closest in scope

18   to the request (for example, to the nearest tenth of a milligram).

19   **V.    CONCLUSION**

20       Unilever's discovery behavior—from its failure to provide initial disclosures well over

21   three months after the Rule 26(f) conference, to its disingenuous reading of the Related Case

22   Order, to its non-responsive discovery answers, to its refusal to review Plaintiffs' proposed

23   stipulation on e-discovery—seems calculated to stonewall Plaintiffs in discovery *from the*

24   *beginning*. Respectfully, the Court should not countenance such behavior, instead setting the

25   tone now for proper discovery behavior throughout the rest of this action. In sum, the Court

26   should overrule Unilever's improper objections, should order Unilever to make full production

27   and responses to Plaintiffs' discovery requests, and should order Unilever to make its initial

28   disclosures while awarding Plaintiffs monetary and evidentiary sanctions as requested herein.

29   //

30

31

32

---

27

Dated: March 23, 2010

Respectfully submitted,

/s/ Jack Fitzgerald
THE WESTON FIRM
Gregory S. Weston
888 Turquoise St.
San Diego, CA 92109
Phone: (858) 488-1672
Fax: (480) 247-4553

Jack Fitzgerald
2811 Sykes Ct.
Santa Clara, CA 95051
Phone: (408) 459-0305

Jared H. Beck
Elizabeth Lee Beck
BECK & LEE BUSINESS
TRIAL LAWYERS
28 West Flagler Street, Ste 555
Miami, FL 33130
Phone: (305) 789-0072
Fax: (786) 664-3334

*Attorneys for Plaintiffs*

*Red et al. v. Unilever PLC et al., Case No. 3:10-cv-00387 JW*
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

1

## CERTIFICATE OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party

3   to the within action. My business address is 2811 Sykes Ct., Santa Clara, CA 95051. On March

4   23, 2010, I served the following documents:

5      **1. NOTICE OF MOTION AND MOTION UNDER FED. R. CIV. P. 37 TO
          COMPEL UNILEVER UNITED STATES, INC. TO: (1) MAKE ITS INITIAL
6          DISCLOSURES; (2) PRODUCE DOCUMENTS RESPONSIVE TO
          DOCUMENT REQUESTS; AND (3) PROVIDE FULL SUBSTANTIVE
7          RESPONSES TO INTERROGATORIES; MEMORANDUM OF POINTS AND
          AUTHORITIES IN SUPPORT THEREOF**

8

9

10  by notice of Electronic Filing, which is a notice automatically generated by the CM/ECF system

11  at the time the documents listed above were filed with this Court, to lead counsel listed by

12  CM/ECF as *"ATTORNEY TO BE NOTICED."*

13      I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.

15      Executed on March 23, 2010 in Santa Clara, California.

16

17

18                                        /s/ Jack Fitzgerald
                                          Jack Fitzgerald
19

20

21

22

23

24

25

26

27

28

29

30

31

32