1 | **THE WESTON FIRM**
GREGORY S. WESTON (239944)
2 | 888 Turquoise Street
San Diego, CA 92109
3 | Telephone: (858) 488-1672
Facsimile: (480) 247-4553
4 | greg@westonfirm.com

5 | JACK FITZGERALD (257370)
2811 Sykes Court
6 | Santa Clara, CA 95051
Telephone: (408) 459-0305
7 | Facsimile: (480) 247-4553
jack@westonfirm.com
8 |

9 | **BECK & LEE BUSINESS TRIAL LAWYERS**
JARED H. BECK (233743)
10 | ELIZABETH LEE BECK (233742)
28 West Flagler St., Ste 555
11 | Miami, FL 33130
Telephone: (305) 789-0072
12 | Facsimile: (786) 664-3334
jared@beckandlee.com
13 | elizabeth@beckandlee.com

14 | Counsel for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER PLC and UNILEVER UNITED STATES, INC.,<br><br>Defendants. | Case No: 3:10-cv-00387 JW (HRLx)<br>Pleading Type: Class Action<br><br>**REPLY IN SUPPORT OF MOTION UNDER FED. R. CIV. P. 37 TO COMPEL UNILEVER UNITED STATES, INC. TO: (1) MAKE ITS INITIAL DISCLOSURES; (2) PRODUCE DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS; AND (3) PROVIDE FULL SUBSTANTIVE RESPONESS TO INTERROGATORIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: The Hon. Howard R. Lloyd<br>Date: April 27, 2010<br>Time: 10:00 am<br>Location: Courtroom 2 |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    1.   Unilever's Motion to Stay is Improper & Unlikely to be Heard ............................. 2

    2.   A Discovery Stay is Improper ................................................................................. 2

    3.   Unilever Should be Compelled to Respond to Plaintiffs' Discovery Demands ......... 3

III. CONCLUSION ............................................................................................................ 10

i

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

# TABLE OF AUTHORITIES

**CASES**

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ............................................................ 6

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D. Cal. 1990) ....................................................... 6

*Ibanez v. Miller*, No. CIV S-06-2668, 2009 U.S. Dist. LEXIS 98394 (E.D. Cal. Oct. 22, 2009) ............................................................................................................................................ 6

*Imbody v. C&R Plating Corp.*, No. 1:08-CV-00218, 2010 U.S. Dist. LEXIS 12682 (N.D. Ind. Feb. 12, 2010) .......................................................................................................................... 12

*Kendall v. GES Exposition Servs.*, 174 F.R.D. 684 (D. Nev. 1997) ............................................. 11

*O'Neal v. NCO Fin. Sys., Inc.*, No. 06cv16, 2006 U.S. Dist. LEXIS 83505, (S.D. Cal. Nov. 16, 2006) ............................................................................................................................ 6

*SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936 (7th Cir. 1988) ................................... 5

*Skellerup Indus. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995) .................................... 6

*Thomas v. Cate*, No. 05-cv-01198, 2010 U.S. Dist. LEXIS 21750 (E.D. Cal. Feb. 19, 2010) ................................................................................................................................... 8, 10

**OTHER AUTHORITIES**

Wright & Miller, Federal Practice and Procedure, § 2035 ............................................................. 6

ii

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

## I. INTRODUCTION

Unilever's argument that this Motion is somehow aimed at "preempting" a scheduling order is wrong—this Motion is set for hearing *after* the case management conference. It is Unilever's own tactical decision-making that has prompted the Motion. Rather than move for a protective order or stay when Plaintiffs served discovery on February 2, Unilever waited the full 30 days, served responses and objections, corresponded with Plaintiffs about the requests, and then—only after Plaintiffs served this Motion[1]—started a campaign to halt discovery altogether.

None of Unilever's arguments for avoiding its discovery obligations are compelling. If discovery is stayed in *Rosen*, as Unilever claims (Opp. at 2), Unilever cannot be facing "conflicting" or even "dual" demands from the *Red* and *Rosen* Plaintiffs (Opp. at 1:9, 3 (Section E), 5:16-17).[2] But the discovery stay in *Rosen* was a stipulation negotiated between Unilever and the *Rosen* Plaintiffs—not the *Red* Plaintiffs. Unilever's attempt to bind *Red*, a related but separate action, by *Rosen* rulings—*especially* those arising by stipulation—is improper. (*See, e.g.*, Opp. at 4:12-20; 5:9-12.) And although Unilever claims that the stipulation the Court adopted stayed discovery, the *Rosen* Plaintiffs apparently disagree (*see* Opp. at 7 n.7).

Unilever's argument that Judge Ware's February 10 Related Case Order (Dkt. No. 38) somehow stayed discovery—which by its plain language, did not—is similarly contradicted by Unilever's behavior in serving discovery responses and initial disclosures and filing a Motion to Stay Discovery (Dkt. No. 50), which would be superfluous if discovery were already stayed. Moreover, Unilever has not responded to Plaintiffs' argument that, if the defendant had sincerely believed the Related Case Order required a second, redundant Rule 26(f) conference to

---

[1] Although the Motion was 27 pages, much of it consisted of Plaintiffs "set[ting] forth each request in full, followed immediately by the objections and/or responses thereto," as they are obligated to do pursuant to Local Rule 37-2 for *every* request, since Unilever refused to substantively respond to *any* request. Excluding this content, the brief was only 18 pages. It might have been shorter if Unilever had agreed, before Plaintiffs filed, to serve initial disclosures, which instead, Unilever served three days later (*see* Dkt. No. 48). The omission of tables of contents and authorities was inadvertent.

[2] Unilever's unfounded and unexplained accusation that the *Red* Plaintiffs are only trying to get a "leg-up" on the *Rosen* Plaintiffs (Opp. at 3:12-13) similarly suggests that the *Rosen* Plaintiffs have not served discovery—and so Unilever cannot be facing "conflicting" demands.

1

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

1  commence discovery, it would have sought to timely schedule one. (*See Red* Mot. at 2:20-28.)

**II.     ARGUMENT**

       **1.     Unilever's Motion to Stay is Improper & Unlikely to be Heard**

Unilever's Motion to Stay Discovery filed March 31 and noticed for April 26 (Dkt. No. 50) is improper because (1) it provides only 26 days' notice contrary to Local Rule 7-2, and (2) it was filed before Judge Ware, despite being a discovery motion that is properly before this Court. (*See* Standing Order Regarding Case Management in Civil Cases ("*All* disclosure or discovery disputes in cases assigned to district judges are referred to the assigned magistrate judge for determination pursuant to Fed. R. Civ. P. 72(a). Magistrate judges *themselves* handle disclosure and discovery disputes in the cases assigned to them." (emphasis added))).

Although Unilever concurrently moved for a reduced briefing schedule giving Plaintiffs four days to oppose and Unilever ten days to reply, Unilever was not entitled to file the Motion to Stay unless and until the Court granted its request under Local Rule 6-3. The Court has not ruled on the administrative motion and Unilever's proposed briefing schedule, which had Plaintiffs' opposition due April 9, is now impossible. It is unlikely, therefore, that Judge Ware will hear the motion, which Plaintiffs have also moved to strike, while seeking an order that all further discovery motions be brought before Judge Lloyd. (*See* Plaintiffs' Opposition to Unilever's Administrative Motion, Dkt. No. 55, at 1:13-15 & n.2.)

Judge Ware may nevertheless issue an order impacting discovery at the April 26 case management conference, which may impact this Motion. Until any such orders are issued, though, this Court should, respectfully, proceed as the case is in its current form, with discovery having commenced by the parties' January 15 Rule 26(f) conference.

       **2.     A Discovery Stay is Improper**

Unilever relies on a suspect interpretation of a stipulated order entered in a different case for the proposition that discovery is stayed here. That makes no sense and is contradicted by Unilever's behavior in participating in discovery in this case and filing a motion seeking a stay. Unilever's overlapping request for a stay from *this* Court (Opp. at 7) should be denied.

Unilever's assertion that its motion to dismiss raises "*potentially* dispositive defenses"

2

(Opp. at 2) does not constitute good cause for staying discovery. "Discovery need not cease during the pendency of a motion to dismiss." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 n.11 (7th Cir. 1988). Motions to stay discovery—even pending a potentially dispositive motion—"are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future." *O'Neal v. NCO Fin. Sys., Inc.*, No. 06cv16, 2006 U.S. Dist. LEXIS 83505, at *4-5 (S.D. Cal. Nov. 16, 2006).

A party seeking a discovery stay "carries a heavy burden of making a 'strong showing' why discovery should be denied" by showing "a particular and specific need . . . as opposed to making stereotyped or conclusory statements." *Skellerup Indus. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); Wright & Miller, Federal Practice and Procedure, § 2035).

Where the defendant "merely urges that compliance with plaintiff's discovery request should be stayed pending the District Judge's ruling on its motion to dismiss. . . . [he] has done no more than to argue in conclusory fashion that its motion to dismiss will succeed. This idle speculation does not satisfy Rule 26(c)'s good cause requirement." *Id.* (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)). Here, Unilever only argues "potential" success.

On the other hand, Plaintiffs *will* be harmed if Unilever successfully avoids discovery. Unilever's motion to dismiss this action is scheduled for a hearing in *June*. With the likelihood that the Court will not issue a decision for at least several weeks after the hearing, if Unilever successfully stays discovery pending the dismissal motion, it will have succeeded in delaying discovery for nearly a year since this action was filed. This is a case that alleges that Unilever is *poisoning* people and lying to them about it. It is inappropriate to delay discovery for so long when there is so much at stake.

### 3. Unilever Should be Compelled to Respond to Plaintiffs' Discovery Demands

Plaintiffs and the American consumers they represent may be "afterthoughts" to Unilever (Opp. at 9:27), but this action is—to Plaintiffs—very important. Plaintiffs are eager to receive and begin reviewing appropriate, relevant discovery from Unilever.

3

1   The Federal Rules "permit a broad scope of discovery," which generally includes "any nonprivileged matter that is relevant to any party's claim or defense . . . ." *Ibanez v. Miller*, No. CIV S-06-2668, 2009 U.S. Dist. LEXIS 98394, at *5 (E.D. Cal. Oct. 22, 2009) (citing Fed. R. Civ. P. 26). Because any information that is reasonably calculated to lead to the discovery of admissible evidence is discoverable, "the scope of discovery is not limited to the issues presented in the pleadings." *Id.*

When objecting to a discovery request, the party objecting "must allege *specific facts* showing why the discovery should not be had." *Id.* at 6 (emphasis added). Where a party asserts boilerplate objections, but offering no supporting basis, the objections should be overruled. *See id.* That is almost universally the case here.

   *a. Definitions*

<u>YOU / YOUR; Person</u>

Unilever misconstrues the obligation imposed by the definition. The requests were served on Unilever United States, Inc., and only that company is obligated to respond to discovery. The definition of "you," "your," and "person," encompassing related entities and persons acting on Unilever's behalf (*see* Mot. at 10:19-21) merely obligates Unilever to produce documents that belong to Unilever but may, for some reason, be technically in the control, custody or possession of a related party. This is a routine discovery obligation, and Unilever provides no basis for believing Plaintiffs should, or even *could* somehow "tailor" the definition to seek relevant information (Opp. at 11:11-12)—Unilever does not have to produce non-relevant, non-responsive information regardless of the definition of "you."

<u>DOCUMENTS; Meeting; Meet; Met; Marketing; Market</u>

That Unilever is dissatisfied with how the *Federal Rules* define "documents"[3] (Opp. at 12), because parties must produce responsive post-its and drafts, does not make the definition objectionable. To the contrary, Unilever's non-specific, unexplained and unsupported claim that the "definition falsely assumes that Unilever can easily obtain this information without incurring

---

[3] Unilever sensibly withdraws its objection that the definition is "vague and ambiguous."

4

any expense that outweighs the benefit the information will provide" (Opp. at 12:8-9) is exactly the type of unsubstantiated, boilerplate burden objection courts regularly overrule. The same applies to Unilever's purported objections to "meeting," "meet," "met," "marketing," and "market": "These definitions simply fail to take into account that the expense of complying with these requests will outweigh any benefits." (Opp. at 12:11-15.)

## RELATING TO & CONCERNING

Unilever asserts without any analysis that the definitions include "any relationship"—but by their plain language, that is untrue. Unilever does not explain what "clarification" it needs. The objection should be overruled.

## CLASS PERIOD

Plaintiffs assert in their Complaint that the statutes of limitations on their claims are tolled by Unilever's fraudulent concealment. But the Court need not decide whether the *claims* may be asserted over the full class period in order to grant relevant discovery. As argued in the Motion, Plaintiffs may discover pre-class material, and discovery is not limited in scope to the time of the claims or the allegations in the pleadings. Unilever does not respond to this.

## MARGARINE

Unilever does not show how the definitions of margarine, even though they differ slightly, are at all "vague" or "ambiguous." The objection should be overruled.

 *b. Requests for Production*

## REQUESTS 1 & 3

Unilever's description of what might be involved in producing responsive documents, including its reference to a declaration submitted in support of the improperly-filed Motion to Stay (Opp. at 13:24-25) is an insufficient basis on which to sustain Unilever's objections because Unilever does not argue that the supposed burden outweighs the relevance of information requested.[4] But these requests seek *highly* relevant information about the *key* issues in the case—the health dangers trans fats pose, and information about the content of trans fats in Unilever's

---

[4] Unilever withdraws its objection that Request No. 3 is "vague and ambiguous" with respect to the terms "trans fat," and "human or animal health."

5

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

products (*see* Mot. at 13:1-17, 15:25-16:8). That the searches for responsive documents might involve "dozens" of employees (Palmet Dec. ¶ 3) or result in the production of "thousands" of documents (Palmet Dec. ¶ 4) is not compelling—searches like this are routine in large, complex federal cases. *See Thomas v. Cate*, No. 05-cv-01198, 2010 U.S. Dist. LEXIS 21750, at *47 (E.D. Cal. Feb. 19, 2010) (the fact that responsive documents might be voluminous does not suffice to sustain a claim of undue burden) (citation omitted). In addition, Unilever has not substantiated its claim of a "huge cost" (Opp. at 13:27) involved in producing responsive documents.

Moreover, Unilever has consistently refused to comment on or counter-propose to Plaintiffs' proposed stipulation concerning electronic discovery, which is designed to simplify the parties' discovery obligations and decrease the burden associated with electronic discovery. (*See* Mot. at 5:1-4 & 22-23; *c.f.* Opp. at 14:9-11.)

Finally, Unilever's argument that it should not have to produce responsive documents because no protective order has been entered (Opp. at 14:9-11) is not an objection to the request. The proper response where a party wishes to protect certain responsive information is that the party will "produce confidential documents upon the entry of a suitable protective order"—not that the party will simply not produce the documents at all.

## REQUEST 2

Again, Unilever's claims of burden and over breadth[5] are unsubstantiated, and in any case are not weighed against the highly relevant nature of the information requested. This case is about Unilever's margarine labeling and packaging. Plaintiffs are entitled to documents that "constitute, contain, concern, discuss, refer to, describe, analyze, identify, evidence, or state" information about those labels and packages. Other than generally claiming so without support, Unilever provides no reason for believing this definition of "relate to" *potentially* encompasses every document Unilever ever created (Opp. at 14:22-24.) For example, Unilever does not show why documents "discussing," "referring to," or "analyzing" labels would not contain the word "label" or the name of the margarine being discussed. Plaintiffs maintain that, by the language of

---

[5] Unilever withdraws its objection that the request is "vague and ambiguous" with respect to "labels," "packages," "images," and "drafts."

6

the definitions involved in this request, Unilever should be able to run relatively simple key word searches for documents.

REQUEST 4

Unilever's claim that it does not know what "document retention policy" means is disingenuous. Moreover, Unilever does not identify or explain what about the request it needs "clarified." (Opp. at 15:10.) Similarly, Unilever's claim that it has "thousands of useless documents" (Opp. at 15:11) that would be response to a request for its document retention policy is unsubstantiated and not credible.

REQUEST 5

Again, Unilever has not substantiated how producing responsive documents is "potentially . . . unruly."[6] (Opp. at 18.) Moreover, the request seeks only existing documents; it does not ask Unilever to recreate anything from scratch. Thus Unilever's concern that the charts may not have been continually kept up to date is inconsequential.

REQUEST 6

Discovery has not been bifurcated and so damages discovery is appropriate. The objection is also newly formed in Unilever's Opposition—it was not interposed in response to Plaintiffs' requests. Moreover, Unilever improperly reads "sufficient to calculate" as "all documents related to" (Opp. at 16:12-16.) Unilever may elect to produce whatever—and however few—documents are necessary to calculate its revenue. This may be comprised of a single summary document.

REQUEST 7

Setting aside Unilever's *ad hominem* attack, the information sought is appropriate because the cases have already been related by Judge Ware. They need not be consolidated in order that information produced in one case is relevant in the other.

*c. Interrogatories*

Unilever's boilerplate objection that the interrogatories are unduly burdensome "is

---

[6] Unilever withdraws its objections that the request is "vague and ambiguous" with respect to the terms "organizational charts," "showing," "employees," "manufacture," and "develop."

7

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

insufficient, as an objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence." *Thomas v. Cate*, No. 05-cv-01198, 2010 U.S. Dist. LEXIS 21750, at *45 (E.D. Cal. Feb. 19, 2010).

<u>INTERROGATORIES 1 & 2</u>

Interrogatories are an important discovery tool because they help parties gather information in the exclusive possession of the opposing party. For example, interrogatories are regularly used to identify witnesses, records, events, etc.

Thus Plaintiffs' request that Unilever identify all of its products that it sold during the class period (Interrogatory No. 1) is appropriate, since it may allow Plaintiffs to discover other products that should be added to the lawsuit, or which may provide information (by contrast or comparison) with the challenged products.[7]

Unilever's only objection to Interrogatory 2 is that it contains a subpart.[8] But Unilever is wrong that it should be numbered separately. Rule 33 allows a party to "serve on any other party no more than 25 written interrogatories, including all discrete subparts." Interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question. *Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 685 (D. Nev. 1997). That is the case where Plaintiffs request that Unilever state the time period in which each of its products contained trans fats.

Unilever's last statement in this section—that the request assumes Unilever's files are available and easily searchable—is not even contradicted (that is, no use of the word "falsely" or claim that the "assumption" is wrong). But Plaintiffs are not required to tailor their discovery requests according to the availability of the other party's information, which Plaintiffs could not even know.

---

[7] Unilever withdraws its remaining overbreadth objections, as well as its objections that the interrogatory is "vague and ambiguous" with respect to the terms "names," "packages," and "sold."

[8] Unilever withdraws its remaining objections, including that the interrogatory is "vague and ambiguous" with respect to the terms "contained" and "partially hydrogenated oils."

8

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

## INTERROGATORY 3

Unilever's statement that gathering the information requested "could be difficult" is insufficient to sustain an objection to the interrogatory.[9] Unilever's other arguments have already been addressed with respect to Request No. 6, above (including that its objection with respect to damages discovery is new and waived).

## INTERROGATORY 4

Unilever's possible failure to keep records ("Unilever's lists *may be not up-do-date*" (Opp. at 17:28 (emphasis added))) does not make this interrogatory objectionable.[10] It straightforwardly seeks to identify potential witnesses. Unilever is wrong that a list of its advertising employees, including (1) the nature of their involvement (such as job title or description) and (2) address of employment, should be discrete interrogatories. *See Imbody v. C&R Plating Corp.*, No. 1:08-CV-00218, 2010 U.S. Dist. LEXIS 12682, at *4 (N.D. Ind. Feb. 12, 2010) (interrogatory reading "as to your current employees, state:" and then listing 12 subparts, including basic information about hiring and ending dates, job description and title, hours worked per week, salary and benefits, was one interrogatory.)

## INTERROGATORY 5

Unilever's premature claim that it complies with FDA regulations is irrelevant. Plaintiffs seek this information in an effort to understand exactly how dangerous Unilever's products are. It is precisely because the FDA-regulated Nutrition Box does not provide such detailed information that Plaintiffs must request it in discovery.[11]

---

[9] Unilever withdraws its remaining objections, including that the interrogatory is "vague and ambiguous" with respect to the terms "revenue," "sale," "contained," and "partially hydrogenated vegetable oils."

[10] Unilever withdraws its remaining objections, including that the interrogatory is "vague and ambiguous" with respect to the terms "involved in," "advertising," "promotion," "nature of employment" and "address of employment."

[11] Unilever withdraws its remaining objections, including that the interrogatory is "vague and ambiguous" with respect to the terms "amount," "to the nearest one hundred milligrams," "partially hydrogenated oil," "trans fat," and "to the extent the amount was not the same during the class period," and that it calls for information "that is not scientifically or economically possible."

9

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO
INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

## III. CONCLUSION

For the reasons provided in Plaintiffs' Motion to Compel, including the supporting documents and memorandum, and in this Reply Memorandum, Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

DATED: April 13, 2010                                       Respectfully Submitted,


 s/Gregory S. Weston_____
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
888 Turquoise Street
San Diego, CA 92109
Telephone: (858) 488-1672
Facsimile:   (480) 247-4553

JACK FITZGERALD
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305
Facsimile:   (480) 247-4553

**BECK & LEE BUSINESS TRIAL LAWYERS**
JARED H. BECK
ELIZABETH LEE BECK
28 West Flagler St., Ste 555
Miami, FL 33130
Telephone: (305) 789-0072
Facsimile:   (786) 664-3334

Counsel for Plaintiffs and the Proposed Class

10

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.

**CERTIFICATE OF SERVICE**

I am an employee in the office of a member of the bar of this court at whose discretion this service was made. I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 888 Turquoise Street, San Diego, CA 92109. On April 13, 2010, I served the following documents:

1. **REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES FROM UNILEVER UNITED STATES, INC.**

by notice of Electronic Filing, which is a notice automatically generated by the CM/ECF system at the time the documents listed above were filed with this Court, to lead counsel listed by CM/ECF as *"ATTORNEY TO BE NOTICED."*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 13, 2010 in San Diego, California.

_____
Evan Lee