WILLIAM L. STERN (CA SBN 96105)
wstern@mofo.com
JANELLE J. SAHOURIA (CA SBN 253699)
jsahouria@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
CONOPCO, INC. (sued herein as UNILEVER
UNITED STATES, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| AMNON ROSEN, et al., | Case No. C-09-02563 JW |
| EVANGELINE RED, et al., | Case No. C-10-00387 JW |
| Plaintiff, | **CLASS ACTION** |
| v. | **DEFENDANT'S RESPONSE TO NOTICE OF TERMINATION OF BECK & LEE AND REESE RICHMAN LLP BY PLAINTIFFS EVANGELINE RED, JENNIFER RED, AND RACHEL WHITT** |
| UNILEVER UNITED STATES, INC., | |
| Defendant. | [Declaration of William L. Stern Filed Concurrently] |
| | Date: September 13, 2010<br>Time: 9:00 a.m.<br>Location: 4th Floor, Courtroom 8<br>Judge: Hon. James Ware |

**I.     INTRODUCTION**

Defendant Unilever takes no position on which class counsel ought to proceed in the *Red* case.[1] But more is at stake than simply deciding which counsel is paramount. The *Red* case has

---

[1] *Red et al. v. Unilever United States, Inc. et al.*, No. C-10-00387 JW (N.D. Cal.) ("*Red*").

been settled, along with the related case called *Rosen*.[2] This dispute among counsel, however, potentially jeopardizes the settlement, because as part of the preliminary approval this Court will be asked to find that class counsel and the *Red* plaintiffs are "adequate representatives." Thus, the parties have been unable to present papers for preliminary approval. Once this dispute is resolved, we anticipate filing for preliminary approval shortly.[3]

This Response describes the status of settlement and the impact of the instant dispute on the settlement, and invites the Court's assistance in resolving the logjam.

## II. STATEMENT OF FACTS

### A. Status of the Settlement.

The parties in both *Red* and *Rosen* signed a Term Sheet on June 21, 2010, moments before Unilever's motion to dismiss was to have been argued in *Red*. The Court set a hearing date for preliminary approval of September 27, 2010, and the parties adjourned to prepare the moving papers. This Section describes the status.

### 1. Where Things Stood as of June 21, 2010.

On June 9, 2009, *Rosen* was filed in this Court challenging Unilever's product labeling and advertising practices for "I Can't Believe it's Not Butter!"®. (*Rosen* Dkt. 1.) Nearly four months later, *Red* was filed in the Central District of California. (*Red* Dkt. 1.) Judge Morrow transferred *Red* to this Court. (*Red* Dkt. 28, p. 14.) On February 17, 2010, this Court related the two cases. (*Rosen* Dkt. 40; *Red* Dkt. 38.)

On May 3, 2010, this Court granted Unilever's motion to dismiss in *Rosen* and entered judgment. (*Rosen* Dkt. 57, 58.) Plaintiff appealed. (*Rosen* Dkt. 60.)

As for *Red*, Unilever's motion to dismiss (*Red* Dkt. 11) was to have been heard June 21, 2010. After negotiations continued throughout the weekend, the parties settled both cases and signed a Term Sheet minutes before the matter was called for oral argument. (Declaration of William L. Stern in Support of Defendant's Response to Notice of Termination of Beck & Lee

---

[2] *Rosen v. Unilever United States, Inc.*, No. C-09-02563 JW (N.D. Cal.) ("*Rosen*").

[3] That hearing had been scheduled for September 27, 2010, but Unilever requests that the date be vacated and a new hearing date set.

and Reese Richman LLP by Plaintiffs Evangeline Red, Jennifer Red, and Rachel Whitt ("Stern Decl.") ¶¶ 2-3, Ex. A.) The parties announced the settlement, this Court ordered Unilever's motion off-calendar, and the Court set a hearing for preliminary approval for September 27, 2010. (*Red* Dkt. 68.) Counsel in *Rosen* agreed to stay the appeal. (Stern Decl. ¶ 3.)

### 2. The Dispute Over the Escrow Account.

Unilever prepared a draft of the preliminary approval documents and circulated them. (Stern Decl. ¶¶ 6-7.) But even before the instant dispute arose, the parties reached impasse over conflicting instructions to Unilever over the escrowing of the attorneys' fees.[4] The Term Sheet calls for the monies to be paid into The Weston Firm's trust account, but counsel for *Rosen* objected. (*Id.*) As a compromise, Unilever suggested that the monies be paid to a third-party escrow, with the ultimate division to be made by an arbitrator or this Court. (Stern Decl., Ex. B.) The other firms agreed to this modification, but The Weston Firm did not. Mr. Weston's position was that his firm should act as escrow, but that was unacceptable as it would expose Unilever to liability to the others. (Stern Decl. ¶ 8, Ex. B.) That impasse persists.

### 3. The Notice of Termination and the Opposition.

On August 12, 2010, Mr. Weston sued his co-counsel in San Diego federal court seeking to declare their joint prosecution agreement invalid. (*Red* Dkt. 73-4, Declaration of Jared H. Beck in Support of Beck & Lee Business Trial Lawyers' Opposition to Notice of Termination, Ex. D.) Four days later, Mr. Weston filed the Notice of Termination to terminate the Reese Richman and Beck & Lee firms' representation of the *Red* Plaintiffs, which is the subject of the court-ordered September 13 hearing. (*Red* Dkt. 70.) Two days after that, Beck & Lee filed an opposition to the Notice, charging Mr. Weston with offering to pay kickbacks of legal fees to a named plaintiff and a paralegal in a case brought against a different defendant that the two firms were jointly prosecuting. (*Red* Dkt. 71.) They accuse Mr. Weston of "a shocking course of unethical and bad-faith conduct." (*Id.* at p. 1.)

---

[4] Under the Term Sheet, Unilever agreed not to oppose a joint fee request not to exceed $490,000. (Stern Decl., Ex. A.) This amount is not in dispute, only how it would get divided among the three law firms. (Stern Decl. ¶¶ 7-8.)

DEFENDANT'S RESPONSE TO NOTICE OF TERMINATION
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2887701

2

### 4. How Other Judges Have Addressed These Issues.

To date, three other judges facing the same rift have made rulings. In the *Yelp!* cases, Judge Patel declined to appoint either Beck & Lee or The Weston Firm as lead counsel. Order, dated Aug. 24, 2010, in *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP and *Cats and Dogs Animal Hospital, Inc. v. Yelp! Inc.*, No. C 10-2351 MHP (Stern Decl., Ex. C). Judges Wilken and Wu, in the *Apple* and *Kraft Foods* cases, respectively, accepted the termination of Beck & Lee and allowed The Weston Firm to serve as lone counsel. Order, dated Aug. 24, 2010, in *Logan v. Apple Inc.*, No. 4:10-cv-02588-CW (Stern. Decl, Ex. D); Order, dated Aug. 24, 2010, in *Red v. Kraft Foods Inc.*, No. 2:10-cv-01028 (GW) (AGRx) (Stern Decl., Ex. E).

### B. This Rift Does Not Affect The Settlement That Was Reached.

Unilever's counsel has spoken to each of the three law firms representing the putative class in *Red* and *Rosen*. All believe the proposed settlement as set forth in the Term Sheet is fair and reasonable and is deserving of a hearing on preliminary approval. (Stern Decl. ¶ 5.)

## III. UNILEVER'S POSITION

Unilever is neutral on the issue of which counsel proceeds in the *Red* case. Unilever believes the Term Sheet is enforceable and is deserving of a decision on preliminary approval. However, Unilever has a direct interest in making sure class counsel and the named plaintiffs are "adequate representatives." In this Section, we discuss these concerns and offer suggestions.

### A. The Term Sheet Is Enforceable and The Settlement Should Be Presented.

The Term Sheet is signed by Elizabeth Beck on behalf of the plaintiffs in both *Red* and *Rosen*. (Stern Decl., Ex. A.) The agreement lays out all the material terms of the settlement. (*Id.*) At the time she signed, Ms. Beck acted with authority and no one denies that she had the authority to sign for all the parties. (Stern Decl.¶ 5.) Messrs. Weston and Fitzgerald were present in the hallway when the Term Sheet was signed. (Stern Decl.¶ 3.) They were present in court moments later when the *Red* case was called for hearing and they heard Ms. Beck announce to this Court that a settlement had been reached. (Stern Decl. ¶ 4.)

A court has inherent power to enforce a settlement between the parties in a pending case. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978); *Hensley v. Alcon Labs., Inc.*, 277

F.3d 535, 540 (4th Cir. 2002). "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1622-23 (2006) (citing *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998)). Because the Term Sheet is sufficiently definite and the essential terms are spelled out, the document constitutes a valid settlement agreement. (Stern Decl., Ex. A.)

The intramural dispute between counsel in *Red* should not affect the settlement.

**B.  The Issue of "Adequacy."**

Although it is neutral on the *selection* of class counsel, Unilever is not neutral on the requirement that counsel and the class representatives must be adequate. Otherwise, the settlement may not bind absent class members.

Rule 23(a)(4) of the Federal Rules of Civil Procedure provides that a class representative is adequate only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The relevant factors are (1) absence of conflict and (2) assurance of vigorous prosecution. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

To be adequate, class representatives must "fairly and adequately protect the interests of the class." *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005). This means that they must have no interests antagonistic to the class. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). The burden is on the plaintiff to demonstrate adequacy. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

Here, the Beck & Lee firm's opposition (*Red* Dkt. 71) charges Mr. Weston with offering to pay kickbacks to a named plaintiff and paralegal in a different case that the two firms were jointly prosecuting. The supporting memorandum states that Mr. Weston has undertaken "a shocking course of unethical and bad-faith conduct." (*Id*. at p. 1.)

These allegations call into question the "adequacy" of counsel. In the *Yelp!* case, Judge Patel wrote: "The relations between the firms appear to have broken down irretrievably, since one has filed a lawsuit against the other. The court, therefore, is concerned that the dispute

DEFENDANT'S RESPONSE TO NOTICE OF TERMINATION                                                                                                                                  4
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2887701

between the firms will preclude both firms from adequately representing the interests of plaintiffs only represented by the other firm." Order, dated Aug. 24, 2010 (Stern Decl., Ex. C.)

Moreover, if it is true, as alleged, that the *Red* plaintiffs agreed to share fees, this dispute potentially calls into question the "adequacy" of the named plaintiffs in *Red.*

### C. Possible Solutions.

If the Court believes these allegations are of sufficient moment as to cast doubt over "adequacy" of counsel or the parties, there may be steps short of having to make findings on these serious charges that would allow the settlement to proceed. We invite the Court to consider some of these less drastic steps that would still preserve the parties' settlement agreement.

#### 1. The Two Cases Could Be Consolidated and Lead Counsel Appointed.

To finalize the settlement, Unilever needs a single voice on the other side. To accomplish that, the Court could consolidate the two cases and appoint interim class counsel to handle settlement for both *Rosen* and *Red*. *See Levitte v. Google, Inc.*, Nos. C 08-03369 JW, C 08-03452 JW et al., 2009 WL 482252, at *1 (N.D. Cal. Feb. 25, 2009) (consolidating similar related cases with similar legal and factual issues and appointing interim lead counsel).

This is effectively what Judge Patel did in the *Yelp!* case. (Stern Decl., Ex. C.) In the *Apple* and the *Kraft Foods* cases, Judges Wilken and Wu allowed the plaintiff to terminate Beck & Lee. (Stern Decl., Exs. D, E.) As noted, Unilever takes no position on which firm(s) should act as lead, but it believes that a single voice is necessary to accomplish settlement.

A court has broad discretion under Rule 42(a) of the Federal Rules of Civil Procedure to consolidate cases within this district. *Investors Research Co. v. United States Dist. Ct. for Cent. Dist.*, 877 F.2d 777 (9th Cir. 1989); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 994 (C.D. Cal. 1984) (citations omitted) ("A court has broad discretion in deciding whether or not to grant a motion for consolidation, although, typically, consolidation is favored."). Under Rule 42(a), consolidation is appropriate where cases involve common questions of law and fact. *See Manual for Complex Litigation (Fourth)*, § 11.631, at pp. 121-22 (2004); *Owen v. Labor Ready Inc.*, 146 F. App'x 139, 141 (9th Cir. 2005); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F.

Supp. 161, 175 (C.D. Cal. 1976).  Consolidations are encouraged wherever possible.  *United States v. Knauer*, *aff'd*, 328 U.S. 654 (1946).  In exercising its broad discretion to order consolidation, a district court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause."  *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

Here, *Rosen* and *Red* share common issues of law and fact.  At the core of both cases is the allegation that Unilever falsely advertises its soft spread and stick vegetable oil products as "healthy" or "nutritious" when in fact these products contained TFAs.  In both cases, plaintiffs allege causes of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; its False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*  Furthermore, at the time these cases were related, this Court found, necessarily, that "[t]he actions concern substantially the same parties, property, transaction or event" pursuant to Civil Local Rule 3-12.  (*Rosen* Dkt. 40; *Red* Dkt. 38.)  Additionally, by consolidating these cases, the Court will save resources and will be able to effectuate a joint settlement.  *See Levitte*, 2009 WL 482252, at *1 (consolidating related cases due to the similarities and "lack of any apparent inconvenience, delay, or expense").[5]

Rule 23(g)(3) provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3); *Manual for Complex Litigation*, § 21.11.  *See Cullen v. N.Y. State Civ. Serv. Comm'n*, 566 F.2d 846, 849 (2d Cir. 1977) ("Since absent class members are conclusively bound by the result of an action prosecuted by a party alleged to represent their interests, the court's selection of counsel for the absent class should be guided by the best interests of those members, not the entrepreneurial initiative of the named plaintiffs' counsel.").

---

[5] Courts have recognized that putative class actions are particularly well-suited for consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 773 (9th Cir. 1977); *Owen*, 146 F. App'x at 141 (citing *Huene*, 743 F.2d at 704).

### 2. The Court Could Remove Class Counsel.

If the Court believes that these charges raise ethical issues, it could remove class counsel. "A suggestion of unethical conduct is relevant in determining whether a lawyer can adequately represent a class client." *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1103 (D. Minn. 2009) (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1769.1 (3d ed. 2005)); *Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 577 (N.D.N.Y. 1979) (the ethical competence of class counsel is relevant to the question of adequacy of representation). Appearance of wrongdoing is sufficient to make a lawyer an inadequate representative. *See In re Medtronic, Inc., Implantable Defibrillator Prod. Liab. Litig.*, 434 F. Supp. 2d 729, 731 (D. Minn. 2006) (court removed lawyer associated with Milberg Weiss firm, even where the individual attorney was not personally accused of wrongdoing).

### 3. The Court Could Stay or Dismiss the *Red* Case.

Finally, if it believes that the allegations affect the "adequacy" of the named plaintiffs and not just counsel, the Court could stay the *Red* case or dismiss the *Red* case with prejudice. *See Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237, 240 (N.D. Tex. 1972) (denying class certification where counsel solicited class representatives); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CA-3-4273, 1972 U.S. Dist. LEXIS 13456, at *6-7 (N.D. Tex. June 2, 1972) (same). That would allow settlement to be effectuated through *Rosen*.

## IV. CONCLUSION

For all of the foregoing reasons, Unilever asks this Court's help in breaking the logjam and effectuating the settlement in accordance with the Term Sheet.

Dated: August 27, 2010

WILLIAM L. STERN
JANELLE J. SAHOURIA
MORRISON & FOERSTER LLP

By: /s/ William L. Stern
    WILLIAM L. STERN

Attorneys for Defendant CONOPCO, INC. (sued herein as UNILEVER UNITED STATES, INC.)