**THE WESTON FIRM**
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone: (858) 488-1672
Facsimile: (480) 247-4553
greg@westonfirm.com

JACK FITZGERALD (257370)
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305
jack@westonfirm.com

*Counsel for Plaintiffs Evangeline Red,
Jennifer Red, and Rachel Whitt*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, RACHEL WHITT, on behalf of Themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER PLC and UNILEVER UNITED STATES, INC.,<br><br>Defendants. | Case No: 3:10-cv-00387 JW<br>Pleading Type: Class Action<br><br>**AFFIDAVIT OF EVAN LEE**<br><br>Judge: The Hon. James Ware<br>Date: September 13, 2010<br>Time: 9:00 a.m.<br>Location: Courtroom 8, 4th Floor |

**State of California**
**County of** Los Angeles

BEFORE ME, the undersigned Notary, Chang Nim Kim, on this 27 day of August, 2010, Evan Lee personally appeared, known to me to be a credible person and of lawful age, who being by me first duly sworn, on his oath, deposes and says,

1. I am a first-year law student at the University of California, Los Angeles School of Law. I was employed as a paralegal at the Weston Firm from early September, 2009, through late July, 2010. Having recently left the Weston Firm, I am aware of the dispute currently pending between the firm and Beck & Lee.

2. Two days ago, on August 25, 2010, I received approximately a half-dozen phone calls on my cell from an unknown number. When I finally picked up a call from the number, the person on the other line told me he was a process server and had a subpoena to serve on me.

3. The next day, at 8:57 a.m. on August 26, 2010, I received a call on my cell phone from Beck & Lee's business line, and did not answer. The caller was Elizabeth Beck. She left me a message asking me to return her call.

4. I returned Ms. Beck's call at 4:59 p.m. The call lasted until 5:13 p.m. To the best of my recollection, and paraphrasing where necessary, the call proceeded as follows:

5. The first thing Ms. Beck said to me is, "Why are you avoiding the subpoena?" I responded that I did not want to be part of her squabble and wanted to know my rights before accepting the subpoena.

6. Ms. Beck informed me that it was "much more than a squabble," and that there were grave consequences.

7. Ms. Beck then told me "On July 28 or 29, Roz picked me and Jared up at the court and Greg wasn't there. Now, I believe Roz is an honest person full of integrity, and we started asking her about how the Weston Firm runs its business over there. She said she had a bonus coming up for signing up her roommate June and represented that June only signed on

1

1    because Greg had promised her an added award on top of, and different from, the incentive
2    award."
3        8.    Ms. Beck also stated that Mr. Weston "canned Roz because of the fact that she
4    told the truth."
5        9.    Ms. Beck asked me what I thought of what she said. I responded, "To be honest, I
6    think Roz either misinterpreted or misconstrued or misspoke, because I haven't heard about any
7    of that, and I never received any such bonus, so I really have no idea."
8        10.   Ms. Beck asked me more than once why I "sounded nervous," which I took to
9    mean she questioned the truth of my words. I explained to her that I was not nervous so much as
10   upset and sickened by the state of events, especially because the attorneys were once friends.
11       11.   Ms. Beck then told me that I am "shielded from liability because I'm not an
12   attorney who should know better," but said that "justice has a long reach" and that if I "perjure
13   myself" there would be serious ramifications. Ms. Beck stated that she is "vigilant," "relentless,"
14   and "will get to the bottom of this" no matter how far she has to go.
15       12.   I explained to Ms. Beck that I knew nothing, that no such agreements were ever
16   made to my knowledge, and that I would only tell the truth because, as a matter of personal
17   honor, I don't lie. Ms. Beck responded by stating she sure hoped so because being found to have
18   committed perjury could have serious consequences for my law school and legal career. I told
19   her I was not worried about that because integrity is not an empty word to me, and I was telling
20   the truth.
21       13.   We then began discussing the subpoena again, which Ms. Beck said called for my
22   deposition on September 2, 2010, just 7 days later. I told Ms. Beck that it was too soon and that I
23   would need leeway on the date and time. Ms. Beck replied that "we can do it later in the day,"
24   and suggested performing the deposition in my law school dorm room to "ensure [I] wouldn't
25   flee."
26       14.   Ms. Beck also stated that she "had my class schedule," by which I felt she meant
27   that if I attempted to lie, dodge or flee, she would catch me.
28

2

*Red et al. v. Unilever PLC et al.*, Case No. 3:10-cv-00387 JW
AFFIDAVIT OF EVAN LEE

15. At least ten times during the call, I asked Ms. Beck to calm down and/or stop being so contentious. I further requested she remain calm and remember that we had a professional business relationship for some time and I expected her to be respectful to me because I have worked hard for her on the cases the Weston Firm shared with Beck & Lee.

16. Ms. Beck was extremely unstable during the phone call. She would be calm for a short while, then become irritated and aggressive every time I would begin to talk and each time I gave her a response that did not fall in line with what she seemed clearly to want to hear. At times she talked over me and even discredited what I had said, asking me the same question several different ways, or making the same threat about the consequences of perjury in several different ways.

17. At the end of the call, Ms. Beck told me how diligent and vigilant she has been in her search, stating, "I will NOT be disbarred." Ms. Beck also stated, in an ominous tone, that she "knows more than her declaration states."

18. Attached hereto as <u>Exhibit A</u> are the two separate deposition subpoenas served on me by two different process servers on behalf of Beck & Lee.

19. During my 10 months working as a paralegal at the Weston Firm, I was never offered or paid money or anything else of value by Mr. Weston or anyone else associated with the Weston Firm in exchange for locating or referring potential clients or plaintiffs.

20. During my 10 months working as a paralegal at the Weston Firm, I have never paid or promised any other person money or anything else of value in exchange for retaining the Weston Firm or agreeing to act as a plaintiff in a class action, whether on behalf of myself, Mr. Weston, or anyone else associated with the Weston Firm.

[Continued]

3

*Red et al. v. Unilever PLC et al.*, Case No. 3:10-cv-00387 JW
AFFIDAVIT OF EVAN LEE

21. During my 10 months working as a paralegal at the Weston Firm, I never received a bonus, except that on one occasion, Mr. Weston gave me a $50 "just because" bonus (relating to work I had done on an individual real estate case). Moreover, neither Mr. Weston nor anyone else associated with the Weston Firm ever promised me a bonus as a percentage of settlement proceeds for any case.

_____
Evan Lee
Los Angeles, California

**State of California**
**County of** Los Angeles

Subscribed and sworn before me on this 27 day of August, 2010, by Evan Lee, proved to be on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____

CHANG NIM KIM
COMM. #1799660
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES JUNE 26, 2012

Respectfully Submitted,

/s/ Gregory S. Weston
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
888 Turquoise Street
San Diego, CA 92109
Telephone: (858) 488-1672
Facsimile:  (480) 247-4553

JACK FITZGERALD
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305

*Counsel for Plaintiffs Evangeline Red,*
*Jennifer Red, and Rachel Whitt*