**THE WESTON FIRM**
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone: (858) 488-1672
Facsimile: (480) 247-4553
greg@westonfirm.com

JACK FITZGERALD (257370)
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305
jack@westonfirm.com

*Counsel for Plaintiffs Evangeline Red,*
*Jennifer Red, and Rachel Whitt*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, RACHEL WHITT, on behalf of Themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER PLC and UNILEVER UNITED STATES, INC.,<br><br>Defendants. | Case No: 3:10-cv-00387 JW<br>Pleading Type: Class Action<br><br>**CORRECTED DECLARATION OF GREGORY S. WESTON IN SUPPORT OF SUPPLEMENTAL BRIEF CONCERNING PLAINTIFFS' TERMINATION OF BECK & LEE AND REESE RICHMAN**<br><br>Judge: The Hon. James Ware<br>Date: September 13, 2010<br>Time: 9:00 a.m.<br>Location: Courtroom 8, 4th Floor |

I, Gregory S. Weston, declare:

1. I am a member in good standing of the State Bar California, and admitted to practice before this Court. I have personal knowledge of the facts stated herein, and, if called on to do so, could and would testify competently thereto. I make this declaration in support of Plaintiff's Supplemental Brief Concerning Termination of Beck & Lee and Reese Richman.

2. I am a graduate of Ohio State University and Harvard Law School and have devoted substantially all of my practice to representing plaintiffs in class actions. Before founding The Weston Firm, I represented plaintiffs in the following class actions:

- *The Apple iPod iTunes Antitrust Litigation* (N.D. Cal)
- *Bruce v. Crompton Corp.* (Los Angeles Co. Sup. Ct.)
- *In re Carbon Black Antitrust Litigation* (D. Mass.)
- *In re Digital Music Antitrust Litigation* (S.D.N.Y.)
- *In re Graphics Processing Units Antitrust Litigation* (N.D.Cal.)
- *In re International Air Transportation Surcharge Antitrust Litigation* (N.D. Cal.)
- *In re Medical Waste Services Antitrust Litigation* (D. Utah)
- *Ross et al. v. Metropolitan Life Insurance Company* (W.D. Pa.)
- *Williams v. Interinsurance Exchange of the Automobile Club* (San Diego Co. Sup. Ct.)

3. On August 24, 2010, the Honorable Claudia Wilken entered a Notice of Termination, substantially identical to the one Plaintiffs filed here, in an action in which a Weston Firm client terminated Beck & Lee. Attached hereto as <u>Exhibit A</u> is a true and correct copy of Judge Wilken's August 24 Order.

4. On August 24, 2010, the Honorable George H. Wu entered a Notice of Termination, substantially identical to the one Plaintiffs filed here, in an action in which a Weston Firm client terminated Beck & Lee. Attached hereto as <u>Exhibit B</u> is a true and correct copy of Judge Wu's August 24 Order Terminating Representation.

1

5.     Both Orders were entered several days after the Becks filed identical "Opposition" papers in those actions, but before Plaintiffs had any opportunity to respond.

6.     I was appointed sole Class Counsel by the Hon. Margaret M. Morrow to represent purchasers of approximately 145 condominiums in *Adachi et al v. Carlyle/Galaxy San Pedro L.P. et al.*, No. 09-793 (the "Vue action"), which settled in 2009 on a class-wide all-cash basis for approximately $1.35 million.

7.     While the Vue action was pending, I had significant contact with many members of the proposed class, who had each lost sizable investments in the building. That is how I met the three Plaintiffs here, Evangeline Red and her sister, Jennifer, and Rachel Whitt.

8.     I remained in particularly good contact with Jennifer Red, frequently talking on the telephone with her since 2008, including about her other real estate investments and other class actions I was planning. This included discussions of possible actions challenging the false labeling of products containing trans fat. Upon hearing about Unilever's practices, which I considered among the worst of several companies that use trans fat, Ms. Red was eager to step forward and serve as a lead plaintiff, and also referred her sister Evangeline and her co-worker Rachel Whitt, who also knew me from my representation of them in the Vue action. Plaintiffs formally retained the Weston Firm on September 30 and October 1, 2009.

9.     Plaintiffs have no agreement with Beck & Lee and, indeed, have never spoken to, met, or otherwise communicated with the Becks.

10.     Davina Carson Wittick joined the Weston Firm on a part time basis this month. She graduated *magna cum laude* from the University of Colorado - Boulder and is a 2005 graduate of Harvard Law School. Prior to joining the firm, she was an associate at the law firms Jones Day and Faegre & Benson. She has extensive experience with class and multidistrict litigation, focusing on products liability, for example representing Eli Lily & Co. in numerous actions consolidated as *In re: Zyprexa Products Liability Litigation*, MDL No. 1596 (E.D.N.Y).

11.     The Weston Firm currently represents nine individuals and three businesses in 11 pending actions. Seven of those twelve clients were class members in the Vue class action. Two clients contacted me after hearing about another pending action in the media, and a third

contacted me after reading an article I published about real estate investment law. Of the remaining two clients, one was referred to the Weston Firm by a former colleague of Jack Fitzgerald and the second by Evan Lee, a former Weston Firm paralegal.

12. The Weston Firm now has two paralegals on staff. Roz Sutton is the Weston Firm's senior paralegal. The only agreement she has ever signed with the firm is primarily a confidentiality agreement that does not mention pay in any respect. A true and correct copy of an Agreement on Confidentiality, Proprietary Information and Non-Solicitation of Clients between the Weston Firm and Ms. Sutton is attached hereto as <u>Exhibit C</u>.

13. The Weston Firm's other paralegals have all signed identical agreements.

14. When talking to potential clients, my practice is to carefully explain incentive awards so that the person I'm talking to understands such awards are common, but not routine, that the firm cannot promise any particular award, or that an award will be made at all, and that, while the firm may seek an incentive award on the client's behalf if the class action is successful, the award is always subject to court approval.

15. I explained incentive awards in the same manner to Ms. Higginbotham, including both directly and through Ms. Sutton.

16. I met Jared Beck during our first year of law school. About four months before I established my firm, Mr. Beck and his wife, Elizabeth Lee Beck, created the Beck & Lee law firm.

17. The Becks' involvement in this case has been limited. In April 2009, I began the extensive research and drafting required to file this action. I spent a great deal of time and resources researching the facts and law surrounding the possible claims, reviewing the dockets of other food labeling class actions, and reading dozens of medical journal articles and studies concerning artificial trans fat, many of which are cited and described in the Complaint. I also drafted a motion for class certification at the same time as the Complaint, to better identify before filing any claims that might not be appropriate for class treatment. Finally, I discussed the case in detail with Plaintiffs, as well as several other potential plaintiffs, before filing in October

2009. This included, for example, extensive interviews with Plaintiffs and other potential plaintiffs about their purchases of each Unilever product.

18.     During this time, I would send Mr. Beck updates on my work and encourage Mr. Beck to considering joining me as co-counsel. While Mr. Beck occasionally commented on my drafts, this was the extent of Beck & Lee's involvement until our firms entered into the Weston-Beck JPA in March, 2010. An agreement with Reese Richman was reached around the same time.

19.     Once Mr. Fitzgerald and I realized there was a clear and definitive problem that was not going away but was only increasing, we spent approximately two months discussing and pondering solutions. Initially, we agreed we could let the relationship end naturally and without conflict by simply avoiding bringing any more cases with the Becks and Reese Richman. Thus, for example, the we declined, despite a great deal of time invested, Beck & Lee's invitation to jointly prosecute an action against Adobe. Even earlier than this, the Weston Firm dismissed without prejudice a class action brought against Kellogg over its use of trans fat, which was subject to both the Beck and the Reese Richman JPAs.

20.     Attached hereto as <u>Exhibit D</u> is a true and correct email from Jared Beck, dated July 12, 2010, Re: "FW: Adobe lawsuit."[1]

21.     After long deliberation and several attempts to find alternative solutions, Mr. Fitzgerald and I decided we had no other option to promote our clients' best interests than ending all relations with Beck & Lee and Reese Richman. Before doing so, we called each of our clients, apprising them of the situation. As a result, each client authorized us to terminate on their behalves Beck & Lee, including all three Plaintiffs in this action.

22.     We terminated Beck & Lee and Reese Richman on behalf of our clients by sending written notices of termination.

23.     Attached hereto as <u>Exhibit E</u> is a true and correct copy of the an August 12, 2010 Letter from Gregory Weston to Jared Beck and Elizabeth Beck Re: "Termination of Beck & Lee

---

[1] Certain irrelevant portions of the email concerning specific case information have been redacted. Plaintiffs will have available at the hearing the full email should the Court wish to review it.

by Evangeline Red, Jennifer Red, and Rachel Whitt, Matter of *Red et al. v. Unilever United States, Inc., et al.*"

24.     Attached hereto as <u>Exhibit F</u> is a true and correct copy of the an August 12, 2010 Letter from Gregory Weston to Michael Reese Re: "Termination of Reese Richman by Evangeline Red, Jennifer Red, and Rachel Whitt, Matter of *Red et al. v. Unilever United States, Inc., et al.*"

25.     Attached hereto as <u>Exhibit G</u> is a true and correct copy of an August 13, 2010 Letter from Jared Beck to Gregory Weston Re: "Joint Prosecution Agreement."

26.     Of the ten actions in which Beck & Lee was terminated, only one has advanced past the pleading stage and into merits discovery, and only three (including this one) have more than 50 docket entries.

27.     After their termination, contrary to the Weston Firm's express instruction, Ms. Beck directly contacted two Weston Firm clients that had terminated Beck & Lee, without the Weston Firm's knowledge or permission, calling and leaving them voicemails inviting further direct communications.

28.     Attached hereto as <u>Exhibit H</u> is a true and correct copy of an August 15, 2010 email from Cookie Braude, a representative of Weston Firm client Cats and Dogs Animal Hospital, Inc., to Greg Weston, Re: "Elizabeth.," describing the first of these calls.

29.     Upon learning of these communications, I immediately wrote a letter to Mr. and Ms. Beck reminding them of my client's previous request not to cease direct communication and their professional obligations. Attached hereto as <u>Exhibit I</u> is a true and correct copy of an August 15, 2010 Letter, sent by email at 1:43 p.m., from Gregory Weston to Jared Beck and Elizabeth Beck, Re: "Communications with Represented Parties In Violation of Professional Rules."

30.     Ignoring my letter, Ms. Beck directly emailed the same individuals and called and left two more voicemails. Attached hereto as <u>Exhibit J</u> is a true and correct copy of an email from Elizabeth Beck to Greg Perrault and Cookie Braude, representatives of Weston Firm client Cats and Dogs Animal Hospital, Inc., Re: "Cats and Dogs et al. v. Yelp."

5

31.     On the same day the Weston Firm terminated Beck & Lee and Reese Richman, it filed a Declaratory Judgment action against the firms in the Southern District of California. The Complaint seeks a declaratory judgment that the agreements between the Weston Firm and Beck & Lee and Reese Richman are void and unenforceable. The Weston Firm brought the suit because each of the agreements concerns several actions and the Weston Firm believed it would be far more efficient and economical to resolve the dispute between the lawyers in a single collateral setting, than engage in ten or more sets of motions or applications in each affected action.

32.     Although the parties reached a settlement in principle on June 21, one of the key elements of the term sheet was left and remains indefinite: how Unilever will address Plaintiffs' claims against its "stick" or "hard" margarine products. While Unilever knew when the parties settled it could replace the artificial trans fat in its "soft" or "tub" margarine products with safer but slightly more expensive alternatives as many other companies had already done, such a replacement would be much more difficult for stick margarines.

33.     Unilever's counsel, William Stern, and I went back and forth on this issue in June during initial settlement negotiations, and previously several months earlier during initial settlement talks. Plaintiffs' initial demand that all trans fat be removed from Unilever's stick margarines was too difficult and expensive for Defendant to agree to, especially given the procedural posture of the case. That might have even required Unilever to completely discontinue these products since there is right now no commercially acceptable substitute for artificial trans fat usable in stick margarine. Ultimately, I suggested this last obstacle to settlement be left for further negotiations and wrote into the term sheet four specific suggestions for Unilever to consider during further negotiations, which it agreed to do on the final term sheet.

34.     Given the already rocky relationship with the Becks and Mr. Reese, who continually made demands they receive large fees despite minimal work in this action, I decided to placate them, hoping to provide them with hours to bill before the final settlement by charging them with the task of negotiating a concrete and definite term concerning stick margarines.

35.　To my dismay, the Becks and Mr. Reese ignored this task and instead immediately began arguing about attorney fees: how much each firm would get, who would receive the fee initially before distribution, and even whether the firms should, notwithstanding the Term Sheet's provision for a maximum fee of $490,000, seek a larger amount. Week after week went by with the vital task of negotiating Unilever's concession on stick margarine unaddressed.

36.　On August 11, 2010, Unilever's counsel, William Stern sent an email to all counsel (i.e., the Weston Firm, Beck & Lee and Reese Richman) "making the point that we have a settlement but have reached an impasse that without the appointment of a lead counsel cannot be resolved." In that same email, Mr. Stern noted Reese Richman had rejected "the suggestion that the atty fees be escrowed 1/3 each at your three law firms." A true and correct copy of that August 11, 2010 email from William Stern Re: "Rosen and Red" is attached hereto as Exhibit K.

37.　Within days of the Becks and Mr. Reese's termination, however, I righted the situation by reviewing in detail Unilever's ignored proposal for this issue, researching the use of and amount of trans fat in Unilever's and competitors' stick margarines, and sending Unilever's counsel a long, concrete, and definite draft settlement agreement that he believed provided the most value to stick margarine purchasers without being so onerous Defendant could not accept it. I further provided Defendant with draft of a joint memorandum of points and authorities in support of preliminary approval of the proposed settlement.

38.　I was routinely embarrassed by the Becks' behavior and often felt compelled to apologize to others for it.

39.　In January 2010, a veterinarian in Long Beach, California, who was a former client of mine, contacted my firm, describing several unfair business practices by advertising salesmen working for the popular website Yelp.com. After several weeks of investigation, the Weston Firm wrote a complaint and determined the case would be appropriate for class action treatment. We filed suit in February, listing Beck & Lee as co-counsel. Soon thereafter, another class action attorney in San Diego, Ron Marron, filed a second class action suit against Yelp. Mr. Marron contacted me to confer on the best manner of prosecuting the two actions. I was

receptive to Mr. Marron's offer to join forces, but the Becks strongly disagreed, repeatedly disparaged Mr. Marron, and began behaving erratically in order to drive him away (which succeeded).

40.     Mr. Marron's experience with the Becks is described in the concurrently-filed Declaration of Ron Marron, dated August 27, 2010. That Declaration has been filed with Mr. Marron's E-signature, which Mr. Marron permitted the Weston Firm to do after first reviewing and approving the Declaration. Mr. Marron was traveling and was unable to hand-sign and return a copy of his Declaration in time for this submission. Mr. Marron is willing, however, to file a hand-executed copy of the Declaration if necessary.

41.     On May 11, 2010, Dean Panos, who is lead counsel for Kraft Foods in an action challenging Kraft's food labeling of products containing artificial trans fat, called me and reported as follows: Ms. Beck had just initiated a call with him and immediately began cursing and screaming at him. Mr. Panos was initially so surprised he thought Ms. Beck had called the wrong person, and asked her, as she was screaming, if she knew who she was talking to. This further angered Ms. Beck, who continued cursing and screaming at Mr. Panos. Mr. Panos shortly began typing a "best effort" word-for-word record of the call, and informed me that he would submit it to the court and seek sanctions against Plaintiffs if Ms. Beck had any further contact with him or other Jenner & Block attorneys. I then notified the Becks of this call, and Ms. Beck denied cursing at Mr. Panos while noting he had "paper-thin skin."

42.     Exhibit L has been removed.

43.     Although The Weston Firm and Beck & Lee sometimes worked together productively, the relationship became increasingly acrimonious before it finally broke down altogether. Far from an equal partnership, the venture was characterized by the Becks' need to dominate every interaction. At times this included the Becks screaming and swearing at me and Mr. Fitzgerald, and disparaging one of us to the other in an apparent attempt to "divide and conquer." The Becks also lectured us, and demanded various "rules" for the relationship. The Becks insisted, for example, that they review and approve every decision, communication or filing made by the Weston Firm, although they did not extend the same courtesy to us.

44.     When I entered into a joint prosecution agreement with Beck & Lee in March 2010, I had done nearly all the work on the various cases the agreement covered, to that date. We anticipated that Beck & Lee would, over time, "catch up," so that the parties would eventually split the work (and fee) approximately 50/50. In a show of good faith, I agreed that Beck & Lee would be entitled to a minimum one-third portion of any fee due, and was prepared to honor that agreement, notwithstanding the Becks' significantly lower hours, in this case.

45.     On June 19, 2010, together with Beck & Lee, we were concurrently preparing for a hearing on Unilever's Motion to Dismiss scheduled for June 21, and negotiating a settlement with Unilever. All four attorneys spoke that afternoon by conference call. On that call, Ms. Beck stated her position that the Becks were entitled to more than was provided for under the joint prosecution agreement. That call quickly degraded into a shouting match and, later, a flurry of angry emails from Ms. Beck.

46.     Attached hereto as <u>Exhibit M</u> is a true and correct copy of a June 19, 2010, 12:58 p.m. email from Elizabeth Beck to Greg Weston, Re: "greg."

47.     Attached hereto as <u>Exhibit N</u> is a true and correct copy of a June 19, 2010, 1:09 p.m. email from Elizabeth Beck to Greg Weston, Re: "furthermore."

48.     Attached hereto as <u>Exhibit O</u> is a true and correct copy of a June 19, 2010, 1:15 p.m. email from Elizabeth Beck to Greg Weston, Re: "hearing hours."

49.     Attached hereto as <u>Exhibit P</u> is a true and correct copy of a June 19, 2010, 1:18 p.m. email from Elizabeth Beck to Greg Weston, Re: "on the topic of Roz."

50.     Attached hereto as <u>Exhibit Q</u> is a true and correct copy of a June 20, 2010, 2:28 p.m. email from Elizabeth Beck to Greg Weston, Re: "Field trip."

51.     Attached hereto as <u>Exhibit R</u> is a true and correct copy of a June 20, 2010, 2:34 p.m. email from Elizabeth Beck to Greg Weston, Re: "Oh greg."

52.     Attached hereto as <u>Exhibit S</u> is a true and correct copy of a June 20, 2010, 2:41 p.m. email from Elizabeth Beck to Greg Weston, Re: "Greg you."

53.     The parties eventually cooled off and agreed that, because there was a dispute as to each party's entitlement to any settlement fee, the parties would require Unilever, as a term of

the settlement, to transfer any attorneys fees to a Weston Firm account established and controlled by Mr. Fitzgerald, because he was thought to be the most "neutral" party.

54. From late June through early August, the parties disputed amongst themselves how any fee should be divided, including in emails, sometimes with Unilever's counsel, William Stern. The situation quickly came to a stand-still, and little progress was being made, calling into question whether the resolution our clients and Unilever had bargained for would really happen.

55. The Becks never previously discussed with the Weston Firm the Becks' "suggestion" that attorneys fees be escrowed 1/3 with each firm, and the Weston Firm never authorized it. The Weston Firm considered this unauthorized approval for the distribution of settlement fees a serious breach of the agreement and good faith, and was the proverbial "straw" upon which Beck & Lee's termination the following day was finally predicated.

56. Aside from attending a joint *Red* and *Rosen* mediation, Reese Richman has not contributed to the *Red* case. Notwithstanding the firm's absence from the action, since learning of the impending settlement, Reese Richman has repeatedly asserted a claim to 50% of any attorneys fees awarded as part of the settlement based on the joint prosecution agreement between the three firms. Attached as <u>Exhibit T</u> is a true and correct copy of an email from Michael Reese to Elizabeth Beck Re: "Unilever."

57. The Weston Firm, and I personally, have never given or offered any person money or anything else of value in exchange for being a plaintiff. Nor has the firm or have I ever employed a "capper" or "runner," or paid or promised any person any money or anything else of value in exchange for locating or referring a client or plaintiff.

58. The Weston Firm, and I personally, have never paid or promised to pay non-attorney employees bonuses as a percentage of a recovery.

59. Attached hereto as <u>Exhibit U</u> is a true and correct copy of an August 9, 2010 email from Alejandro Gutierrez to Roz Sutton, Re: "Yumul Info."

60. Attached hereto as <u>Exhibit V</u> is a true and correct copy of an August 17, 2010, 5:04 p.m. email from Elizabeth Beck to William Stern and others, Re: "Red v. Unilever, Rosen v Unilever."

61.     Attached hereto as <u>Exhibit W</u> is a true and correct copy of an August 17, 2010, 5:08 p.m. email from Elizabeth Beck to Matthew D. Brown, Benjamin Kleine and others, Re: "Cats & Dogs et al. v. Yelp."

62.     Attached hereto as <u>Exhibit X</u> is a true and correct copy of an August 17, 2010, 5:16 p.m. email from Elizabeth Beck to Emilia Morris, Sean Morris and others, Re: "Red, et al. v. the Kroger co. -2:10-cv-01025-DMG-MAN."

63.     Attached hereto as <u>Exhibit Y</u> is a true and correct copy of an August 17, 2010, 5:19 p.m. email from Elizabeth Beck to Frank C. Rothrock, Erin L. Sparkuhl and others, Re: "Peviani v. Hostess Brands."

64.     Attached hereto as <u>Exhibit Z</u> is a true and correct copy of an August 17, 2010, 5:22 p.m. email from Elizabeth Beck to Kyle Kirwan, Kalia Petmecky and others, Re: "Henderson v. Gruma Corp."

65.     Attached hereto as <u>Exhibit AA</u> is a true and correct copy of an August 17, 2010, 5:25 p.m. email from Elizabeth Beck to Dean Panos, Kenneth Lee, Stacy Jakobe, Jill Hutchinson and others, Re: "Red v. Kraft Foods."

66.     Attached hereto as <u>Exhibit BB</u> is a true and correct copy of an August 17, 2010, 6:27 p.m. email from Elizabeth Beck to Michael Sobol, Roger Heller and others, Re: "apple/AT&T ipad class action."

67.     On August 18, 2010, I received an email from Sara Randazzo, a Staff Writer for the Los Angeles Daily Journal. A true and correct copy of that email is attached hereto as <u>Exhibit CC</u>. In the email, Ms. Randazzo states she spoke to the Becks and intended to publish an article about their accusations, requesting my comment. I asked Ms. Randazzo to delay the article, but she refused.

68.     A true and correct copy of an August 19, 2010 article in the Los Angeles Daily Journal, by Sara Randazzo, titled "Attorney Accused of Kickbacks," is attached hereto as <u>Exhibit DD</u>.

*Red et al. v. Unilever PLC et al.,* Case No. 3:10-cv-00387 JW
Declaration of Gregory S. Weston in Support of Supplemental Brief Concerning
Plaintiffs' Termination of Beck & Lee and Reese Richman

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 27, 2010 in San Diego, California

/s/ Gregory S. Weston
Gregory S. Weston

Submitted by,

/s/ Gregory S. Weston
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
888 Turquoise Street
San Diego, CA 92109
Telephone:     858 488 1672
Facsimile:     480 247 4553

JACK FITZGERALD
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305

***Counsel for Plaintiffs Evangeline Red,
Jennifer Red, and Rachel Whitt***

# Exhibit A

1 | **THE WESTON FIRM**
GREGORY S. WESTON (239944)
2 | 888 Turquoise Street
San Diego, CA 92109
3 | Telephone: (858) 488-1672
Facsimile: (480) 247-4553
4 | greg@westonfirm.com
5 |
JACK FITZGERALD (257370)
6 | 2811 Sykes Court
Santa Clara, CA 95051
7 | Telephone: (408) 459-0305
Facsimile: (480) 247-4553
8 | jack@westonfirm.com
9 |

10 | **Counsel for Plaintiff and the Proposed Class**

11 | <center>**UNITED STATES DISTRICT COURT**</center>
12 | <center>**NORTHERN DISTRICT OF CALIFORNIA**</center>

13 |

Case No: 4:10-cv-02588-CW

14 | STUART LOGAN, on behalf of himself
and all others similarly situated,

**NOTICE OF TERMINATION OF**
15 | **BECK & LEE BY PLAINTIFF**
**STUART LOGAN AND [PROPOSED]**
16 |                             Plaintiff,       **ORDER**

17 |        v.

18 | APPLE INC. and AT&T MOBILITY LLC,      The Honorable Claudia Wilken

19 |                             Defendants.

20 |

28 |

1      I am the Plaintiff in the above-captioned action and hereby terminate Beck & Lee

2 Business Trial Lawyers, and its attorneys, Jared H. Beck and Elizabeth Lee Beck, as my

3 attorneys of record in this matter. Beck & Lee's business address is 28 West Flagler Street, Suite

4 555, Miami, FL 33130. From this date forward, my only attorneys of record in this case are

5 Gregory S. Weston and Jack Fitzgerald, and The Weston Firm, whose business address is 888

6 Turquoise Street, San Diego, CA 92109.

7

8 Dated: _8-13-2010_

         Stuart Logan

9

10

11 IT IS HEREBY ORDERED

12      The record shall reflect that Plaintiff's attorneys of record are Gregory S. Weston and

13 Jack Fitzgerald, of The Weston Firm. Plaintiff's request to terminate as attorneys of record Jared

14 H. Beck and Elizabeth Lee Beck, of Beck & Lee is granted.

15      As Jared H. Beck and Elizabeth Lee Beck no longer represent any parties in this action,

16 the Clerk is directed to remove Jared H. Beck and Elizabeth Lee Beck from the ECF Notification

17 list.

18

19 Dated: _8/24/2010_

         Honorable Claudia Wilken
         U.S. District Judge
         Northern District CA

20

21

22

23

24

25

26

27

28

1

*STUART LOGAN V. APPLE, INC. ET AL.*, NO. 4:10-CV-02588-CW
TERMINATION OF REPRESENTATION

1   DATED:   August 16, 2010       Respectfully submitted,

2                        /s/ Jack Fitzgerald_____
                         **THE WESTON FIRM**

3

4                        Gregory S. Weston
                        888 Turquoise Street

5                        San Diego, CA 92109
                        Telephone: 858 488 1672

6                        Facsimile: 480 247 4553
                        greg@westonfirm.com

7

8                        Jack Fitzgerald
                        2811 Sykes Court

9                        Santa Clara, CA 95051
                        Telephone: (408) 459-0305

10                     jack@westonfirm.com

11                        ***Attorneys for Plaintiffs***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Stuart Logan v. Apple, Inc. et al.*, No. 4:10-cv-02588-CW
TERMINATION OF REPRESENTATION

# Exhibit B

1

2                    UNITED STATES DISTRICT COURT

3            FOR THE CENTRAL DISTRICT OF CALIFORNIA

4

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated, | No. 2:10-cv-01028 (GW) (AGRx) |
| Plaintiffs, | **ORDER TERMINATING REPRESENTATION** |
| vs. | Judge: Hon. George Wu |
| KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC., | |
| Defendants. | |

15      The record shall reflect that Plaintiffs Evangeline Red and Rachel Whitt's sole

16 attorneys of record are Gregory S. Weston and Jack Fitzgerald, of The Weston Firm.

17 Plaintiffs' request to terminate as counsel Jared H. Beck and Elizabeth Lee Beck, of

18 Beck & Lee is granted.

19      Because Jared H. Beck and Elizabeth Lee Beck no longer are attorneys of

20 record for any party in this action, the Clerk is directed to remove them from the ECF

21 Notification list for 2:10-cv-01028 (GW) (AGRx).

22

23

DATED: August 24, 2010

24

25                                    _____

26                                    The Honorable George H. Wu
                                      U.S. District Court Judge
27

28      *Red et al. v. Kraft Foods Inc. et al.*; Case No. 2:10-cv-01028 (GW) (AGRx)
            [PROPOSED] ORDER TERMINATING REPRESENTATION

# Exhibit C

## AGREEMENT ON CONFIDENTIALITY, PROPRIETARY INFORMATION AND NON-SOLICITATION OF CLIENTS

This Agreement is entered in to by The Weston Firm (the "Firm") and _Rosalyn Sutton_ (the "Employee") and is intended to formalize, in writing, certain understandings and procedures which have been in effect since the commencement of Employee's employment by the Firm. In return for Employee's new or continued employment by the Firm, Employee acknowledges, and Firm and Employee agree, as follows:

### 1. No Conflict

During Employee's period of employment by the Firm, Employee will devote best efforts to the interests of the Firm. While employed by the Firm, Employee will not engage in other employment – without the Firm's consent, or engage in any activities determined by the Firm detrimental to the best interests of the Firm. Employee will refer to the Firm all Clients and business opportunities Employee learns of as a result of service as an employee of the Firm.

### 2. Nondisclosure of Confidential information

Employee acknowledges that, during the performance of duties with the Firm, Employee will receive and have access to confidential, proprietary or trade secret information concerning the Firm, its Clients or of any third party that may disclose such information to the Firm, including but not limited to information that is attorney work product or covered by the attorney client privilege. During employment and at any time after termination of employment, Employee shall not, without prior written consent of the Firm, publish or use or disclose to anyone other than authorized Firm personnel, any of the Firm's confidential, proprietary and/or trade secret information. Employee agrees to abide by any Firm policies and regulations for the protection of confidential, proprietary and trade secret information. Employee understands and agrees that the unauthorized disclosure or misuse of such confidential, proprietary or trade secret information could irreparably damage the Firm, its Clients and/or other third parties dealing with the Firm.

### 3. No Solicitation of Firm Clients

Employee acknowledges that the Firm has invested substantial time, effort and expense in compiling its confidential, proprietary and trade secret information and in assembling it s present staff of personnel and obtaining Clients. In order to protect the confidentiality of the Firm's confidential, proprietary and trade secret information, during Employee's employment with the Firm and for two years immediately following the termination of that employment with the Firm, Employee agrees that all Clients of the Firm that Employee services during Employee's employment with the Firm, and all prospective Clients of the Firm whom Employee has communicated with while in the employ of the Firm, shall be solely the Clients of the Firm.

### 4. Works for Hire

Employee acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of Employee's employment with the Firm and which are

protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

### 5.   Return Of Firm Property

All correspondence, memoranda, notes, records, databases, reports, plans, documents, computers, equipment, electronic data, digitally-stored information or other property received or made by the Employee in connection with employment with the Firm, shall be the exclusive property of the Firm and must not be removed from Firm premises, except as required in the course of employment.  Employee agrees to immediately return and will deliver all such property to the Firm on termination of employment or upon request.

### 6.   Injunctive Relief

A breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to the Firm for which there will be no adequate remedy at law- The Firm shall be entitled to injunctive relief and/or a decree for specific performance and such other and further relief as may be proper (including monetary damages, if appropriate).

### 7.   Notices

Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows with notice deemed given as indicated: (1) by personal delivery when delivered personally; (2) by overnight courier upon written verification of receipt; (3) by telecopy or facsimile transmission upon acknowledgment of receipt of electronic transmission; or (a) by certified or registered mail, return receipt requested, upon verification of receipt. Notices to the Employees shall be sent to the last known address in the Firm's records or such other address as the Employee may specify in writing. Notices to the Firm shall be sent to the Firm's Managing Partner or to such other Firm representative as the Firm may specify in writing.

### 8.   No Violation of Rights of Third parties

Employee agrees that while employed by Firm, he or she will not disclose to the Firm, or induce the Firm to use, any confidential, proprietary or trade secret information or material belonging to any previous employers of Employee. Employee warrants that he or she is not a party to any agreement that will interfere with his or her full compliance with this Agreement. Employee agrees not to enter into any agreement, whether written or oral, that conflicts with the provisions of this Agreement.

### 9.   Post-Employment Application of this Agreement

This Agreement (1) shall remain in affect after the termination of Employee's employment by the Firm, regardless of the reason the employment relationship ends; (2) does not in any way restrict Employee's right, or the right of the Firm, to terminate Employee's employment; (3) inures to the benefits of successors and assigns of the Firm; and (a) is binding upon Employee's heirs and legal representatives.

### 10. Governing Law

This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the state in which the Firm employs Employee.

### 11. Severability

Should any provisions of this Agreement be held by a court of law to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

### 12. Waiver

A waiver by the Firm of Employee's breach of any provision of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach by Employer.

### 13. Entire Agreement

This Agreement represents the Firm's and Employee's entire understanding with respect to the subject matter contained in this Agreement and supersedes all previous understandings, written or oral between the Firm and Employee concerning the subject matter of this Agreement. This Agreement may be amended or modified only with the written consent of both the Firm and Employee. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

Employee certifies and acknowledges that he or she has carefully read all of the provisions of this Agreement, understands and will fully and faithfully comply with the Agreement.


DATED: _Jan 25, 2010_                    _Rosalyn Sutton_
                                          EMPLOYEE SIGNATURE

                                          _Rosalyn Sutton_
                                          PRINT NAME

# Exhibit D

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Jared H. Beck [jared@beckandlee.com] |
| **Sent:** | Monday, July 12, 2010 8:09 AM |
| **To:** | 'Gregory S. Weston'; 'Jack Fitzgerald' |
| **Cc:** | elizabeth@beckandlee.com |
| **Subject:** | FW: Adobe Lawsuit |

**Importance:** High

As The Weston Firm is no longer involved in Adobe, I would appreciate it if you guys not communicate with Jabez or any of the other plaintiffs from now on - thanks


JARED H. BECK, ESQ. | Beck & Lee Business Trial Lawyers Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 786-664-3334 Fax

jared@beckandlee.com | twitter.com/JaredBeck
website: www.beckandlee.com | blog: beckandlee.wordpress.com

=====================================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above.  If you are not the intended recipient, you are hereby notified

that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.
=====================================================

-----Original Message-----
From: Jabez Palmer [mailto:bezbiz@mac.com]
Sent: Monday, July 12, 2010 10:42 AM
To: Gregory S. Weston
Cc: Jack Fitzgerald; Mark Gelotte; Jared H. Beck; Elizabeth Lee Beck
Subject: Re: Adobe Lawsuit

REDACTED

# Exhibit E

August 12, 2010

<u>BY E-MAIL AND FEDEX</u>

To:    Mr. Jared H. Beck
       Ms. Elizabeth Lee Beck
       Beck & Lee, P.A.
       Courthouse Plaza Building
       28 West Flagler Street, Suite 555
       Miami, Florida 33130
       Telephone: (305) 789-0072
       jared@beckandlee.com
       elizabeth@beckandlee.com

   *Re:*   **Termination of Beck & Lee by Evangeline Red, Jennifer Red, and Rachel Whitt,
           Matter of** *Red  et al. v. Unilever United States, Inc., et al.*

Dear Mr. Beck and Ms. Beck,

     I write to inform you that my clients, Evangeline Red, Jennifer Red and Rachel Whitt, do not consent to you representing them in the matter *Red et al v. Unilever United States, Inc. et al.*, No. 5:10-cv-00387 (N.D. Cal.), or any other matter. Any communication you may have with them should be directed to me, and in writing, and no direct communication with them in any form should take place. On their behalves, I kindly request you promptly file a notice of withdrawal with the clerk via the ECF system in this matter, and that you refrain from holding yourselves or Beck & Lee out as representing Ms. Evangeline Red, Ms. Jennifer Red, or Ms. Whitt, including in communications with opposing and co-counsel. Finally, kindly return to our attention any and all documents relating to this action and/or belonging to Ms. Evangeline Red, Ms. Jennifer Red, or Ms. Whitt.

Sincerely,

Gregory S. Weston
*Counsel for Evangeline Red, Jennifer Red and Rachel Whitt*

# Exhibit F

August 12, 2010

BY E-MAIL AND FEDEX

To:    Mr. Michael R. Reese
Mr. Kim Richman
Reese Richman LLP
875 Avenue of the Americas, Eighteenth Floor
New York, New York 10001
Telephone: (212) 579-4625
mreese@reeserichman.com
krichman@reeserichman.com

> ***Re:*** **Termination of Reese Richman by Evangeline Red, Jennifer Red, and Rachel Whitt,
> Matter of *Red et al. v. Unilever United States, Inc., et al.***

Dear Mr. Reese and Mr. Richman,

I write to inform you that my clients, Evangeline Red, Jennifer Red and Rachel Whitt, do not consent to you representing them in the matter of *Red et al v. Unilever United States, Inc. et al.*, No. 5:10-cv-00387 JW (N.D. Cal.), or any other matter. Any communication you may have with them should be directed to me, and in writing, and no direct communication with them in any form should take place. On their behalves, I kindly request you promptly file a notice of withdrawal with the clerk via the ECF system in this matter, and that you refrain from holding yourselves or Beck & Lee out as representing Ms. Evangeline Red, Ms. Jennifer Red, or Ms. Whitt, including in communications with opposing and co-counsel. Finally, kindly return to our attention any and all documents relating to this action and/or belonging to Ms. Evangeline Red, Ms. Jennifer Red, or Ms. Whitt.

Sincerely,

Gregory S. Weston
*Counsel for Evangeline Red, Jennifer Red and Rachel Whitt*

# Exhibit G

# B ECK & L EE
### business trial lawyers miami

Courthouse Plaza Building
28 West Flagler Street Suite 555 | Miami, Florida 33130

TEL: 305-789-0072
FAX: 786-664-3334
www.beckandlee.com

August 13, 2010

<u>**Via Certified Mail, Return Receipt Requested and E-mail**</u>

Gregory S. Weston, Esq.
The Weston Firm
888 Turquoise Street
San Diego, CA 92109
greg@westonfirm.com

Re:     <u>Joint Prosecution Agreement</u>

Dear Mr. Weston:

This responds to the 12 separate letters which I received from you on the evening of August 12, 2010, each of which purports to be a "Termination" of Beck & Lee, P.A. ("Beck & Lee") in connection with certain class actions jointly prosecuted by Beck & Lee and The Weston Firm pursuant to our firms' Joint Prosecution Agreement ("JPA") dated March 7, 2010, and various amendments thereto. We reject your sudden demands that our firm withdraw as counsel from these cases and consider the demands themselves to breach the JPA.

Furthermore, the timing of your letters, which also demand that Beck & Lee not communicate with the named plaintiffs in our joint cases, indicates that they were motivated by the investigation our firm has been conducting of your firm's practices for the last two weeks. As you are aware, Beck & Lee recently obtained evidence that The Weston Firm (1) has a practice of offering "kickbacks" to individuals who agree to serve as named plaintiffs in class actions; (2) pays cappers "finder's fees" in exchange for locating named plaintiffs; and (3) compensates its non-lawyer employees on a percentage basis from settlement proceeds. Each of these practices violates California law. See <u>U.S. v. Lerach</u>, CR-07-964 (C.D. Cal.); Cal. Bus. & Prof. Code § 6154; Rule 1-320, Cal. Rules of Prof. Conduct; <u>Matter of Nelson</u>, 1990 WL 140525 (Cal. Bar Ct. 1990).

At this point, my firm's duty runs to both the Court and the putative Classes in all of our joint matters to determine how your firm's practices have affected these cases, including the integrity of the various named plaintiffs who originally retained your firm, and the viability of any motions to be appointed class counsel or fee requests which The Weston Firm files. As such, we request that you begin cooperating with Beck & Lee's investigation by immediately providing the phone number, e-mail address, and home address for each plaintiff originally retained by The

Weston Firm, so that my office may interview them. My office has made repeated requests for this information within the past two weeks, which your office has ignored. Furthermore, please immediately forward copies of all communications (including, but not limited to, all e-mails) which The Weston Firm has had with the named plaintiffs, as well as its employment contracts for Roz Sutton and Evan Lee.

Any questions regarding the foregoing should be directed to me.

Very truly yours,

Jared H. Beck, Esq.
For the firm

cc:     (via e-mail only)

        Jack Fitzgerald, Esq.
        The Weston Firm
        2811 Sykes Court
        Santa Clara, CA 95051
        jack@westonfirm.com

        Elizabeth Lee Beck, Esq.

# Exhibit H

**Gregory S. Weston**

Good Morning Greg,

Greg and I both received phone messages from Elizabeth this morning. We didn't take the call and wanted advise on what we should do? Her message to Greg was, She received a very strange letter from Greg Weston and she had some questions to ask." Her message to me was basically the same.

Please advise.

Cookie Braude

# Exhibit I

August 15, 2010

<u>VIA E-MAIL AND OVERNIGHT FED-EX</u>

To:    Mr. Jared H. Beck
Ms. Elizabeth Lee Beck
Beck & Lee, P.A.
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, Florida 33130
Telephone: (305) 789-0072
jared@beckandlee.com
elizabeth@beckandlee.com

*Re:*    **Communications With Represented Parties In Violation of Professional Rules**

Dear Mr. Beck and Ms. Beck,

On Thursday, August 12, I sent you a letter instructing you not to directly contact my firm's client, Cats and Dogs Animal Hospital, Inc., Dr. Gregory Perrault, or "anyone associated with" Cats & Dogs. You acknowledged your receipt of the letter the next day, Friday, August 13.

Nonetheless, you apparently directly contacted today Dr. Perrault and Cookie Braude, whom you are aware is a close friend of Dr. Perrault and is employed by Cats and Dogs. Specifically, you called each person and left voicemail messages this morning asking each to return your call. Do so violated various rules and duties including, but not necessarily limited to, Cal. R. Prof. Conduct 2-100, N.D. Cal. Civ. L.R. 11-4(a)(1), ABA Model R. of Prof. Conduct 4.2, ABA Disciplinary Rule 7-104(A)(1), and Fla. R. Prof. Conduct 4-4.2. Evidence of these calls have been preserved.

I again demand you cease any further harassment of my firm's clients and violation of your professional responsibilities. If you fail to do so, we will seek appropriate relief.

Very truly yours,

Greg Weston

Gregory S. Weston

# Exhibit J

**Gregory S. Weston**

---

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Sunday, August 15, 2010 3:09 PM |
| **To:** | 'greg perrault'; 'Cookie Braude' |
| **Cc:** | jared@beckandlee.com; 'Gregory S. Weston' |
| **Subject:** | Cats & Dogs et al. v. Yelp |
| **Attachments:** | 8-12-10 ltr FR Weston.pdf |

Dear Dr. Perrault and Cookie,

Late last week, I received the attached letter from Greg Weston without any prior notice or explanation.

As you know, we have provided extensive legal services to you (Cats & Dogs) as your attorneys. We have provided numerous consultations (both in-person and over email and the phone), and expended significant out-of-pocket costs in representing you, including travel to San Francisco for the case management conference before Judge Patel, which you attended with us.

We are also actively litigating your case against Yelp in the Northern District of California, as you know, and are also representing the 9 other named plaintiffs who are jointly represented by Beck & Lee and The Weston Firm.

I have tried to talk to Greg Weston (who is cc'd on this email) about this, but he has simply refused to return my calls.

Please confirm whether this letter is accurate and whether you are indeed seeking to terminate the attorney-client relationship with Beck & Lee, because I am extremely perplexed. If it is indeed true that Cats & Dogs wishes to terminate Beck & Lee as counsel, I need to confirm that fact with you so that we can properly close out your file. As things stand, however, I am confused and concerned about the situation because I have not received any communication from you indicating that you wish to terminate Beck & Lee, or that we have provided you with anything less than excellent service. I am also concerned about the adverse implications that this could have on our representation of the proposed Class of businesses damaged by Yelp's conduct, and therefore have a duty to advise you about any such implications prior to you making any decision to terminate our attorney-client relationship.

Please give me a call at any time. I know you have my cell phone number, but in case you need it again, it is 305-968-3426 – thank you.

Best regards,

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
============================================

# Exhibit K

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Stern, William L. [WStern@mofo.com] |
| **Sent:** | Wednesday, August 11, 2010 1:26 PM |
| **To:** | Elizabeth Lee Beck; Jared H. Beck; Gregory S. Weston; jack@westonfirm.com; Michael Reese; Kim Richman |
| **Cc:** | Sahouria, Janelle J. |
| **Subject:** | Rosen and Red |

All:

1. I communicated to Messrs. Reese and Richman the suggestion that the atty fees be escrowed 1/3 each at your three law firms. This was rejected.

2. Ideally, we all agree that we would like to reach substantive agreement on the percentage split prior to filing the preliminary approval papers on September 3. But if we can't, then we should at least be able to agree on a process.

3. I am proposing that the Settlement Agreement establish either one of two potential processes for resolving the fee-split: (i) Unilever to escrow at US Bank the entire amount that Judge Ware awards (i.e., up to $490K), with the escrow instructions to read that the monies shall be released by the Bank in such percentage shares that are set forth in a writing signed by representatives of all three law firms or, if no joint agreement is received by a date certain, then upon an award issued by an arbitrator (AAA or JAMS or anyone else you select); or (ii) if you don't want to defer this determination until after final approval, then we could have Judge Ware decide at the final approval hearing not only the total amount of fees to be awarded but also the percentage split. Please advise by 5 p.m. EDT on Monday, August 16, 2010 whether you accept one or the other, or neither.

4. If we don't have agreement on a process, we need a Plan B: Unilever will file a motion on September 3, to be heard September 27, asking for appointment of lead counsel. My moving papers would be neutral and brief, not explaining in any real detail the substance of the dispute, but making the point that we have a settlement but have reached an impasse that without the appointment of a lead counsel cannot be resolved. I would circulate my papers in advance so that both sides would have time to file their moving papers on September 3, asking why they and not someone else should be appointed lead. Plan B risks having to go public with this dispute, and for lawyers in your area of practice that could carry consequences beyond just this case. Unilever would very much prefer avoiding this, and I would think your firms would too.

Please let me know your decisions by Monday evening.

W

------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

================================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any

information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

------------------------------------------------------------------

# Exhibit L



Exhibit Removed

# Exhibit M

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Saturday, June 19, 2010 12:58 PM |
| **To:** | greg@westonfirm.com |
| **Cc:** | jared@beckandlee.com; 'Jack Fitzgerald' |
| **Subject:** | greg |

Greg you said that you think the beck firm is not "indispensible." You don't see us as a team, do you, for the long haul. You see us a underlings, is that it? To be cast off at your pleasure? Oh yeah, "don't go to the hearing, I'll handle it, don't need you," you said? When there is a settlement offer on the table finally, you told the Beck firm to get out, didn't you? So transparent.

You see, that's where u and I differ. I have always believed that each of us has unique gifts, and deficiencies that the others make up for. That this is a union for the long-term. Lord knows you have your deficiencies, although you would probably go to your grave thinking that u are perfect.

You must think I have been running on 2 hrs of sleep, dealing with stern and reese while trying to cram for for a hearing no one wanted to do, for sheer fun and to impress you.

You want to arbitrate this fee fight you said? You want to take this to the courts/arb and terminate our working relationship over a crummy first settlement? Is the Unilever settlement that important to you? Because it's not to me, in the grand scheme of things. But I don't get screwed over, as a matter of principle. Even if it's over a nickel. You should look at the Beck & Lee Law Firm v. the law firm of will wright, the last lawyer who saw Jared and me as stupids who will work hard for nothing. Screw u, greg Weston. My mother did not raise a fool.

You want to take this to court, irretreviably damage any relationship we ever had, go ahead and do it. You may win a few extra coins, you may not. You may even lose some. You look at your little pile of coins and coo at them while jared and I will move on to other things.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s) greg you have said to me that
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
================================================

# Exhibit N

**Gregory S. Weston**

---

**From:**             Elizabeth Lee Beck [elizabeth@beckandlee.com]
**Sent:**              Saturday, June 19, 2010 1:09 PM
**To:**                 'Gregory S. Weston'
**Cc:**                 'Jack Fitzgerald'; 'Jared Beck'
**Subject:**         furthermore

Furthermore, I have always acknowledged your gifts, greg, and I tell everyone about how you have very unique ways of thinking.  But you have never, ever said a single word about my contributions.  Never.  You must think I'm a big nobody.  No, what you do is to yell at me and say that we are not needed anymore.  Do you think I came to San Jose to sit around and scratch mu butt while you toss me to the curb and keep all the fees to yourself for Evan's chauffeur service!?!

You want to throw me away?  After I have put up the Beck Firm's hard, hard earned money and done work on this, you freaking want to chuck me!?!

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
================================================

# Exhibit O

**Gregory S. Weston**

---

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Saturday, June 19, 2010 1:15 PM |
| **To:** | 'Gregory S. Weston' |
| **Cc:** | 'Jack Fitzgerald'; 'Jared Beck' |
| **Subject:** | hearing hours |

And you said that you have issues with jared and me both showing up for hearings? why the fuck did you show up for the smart balance hearing then, which jared was arguing in its entirety? With a FREAKING ENTOURAGE! Are you some sort of celebrity? I mean really, what possible contribution did Roz, the college kid, provide at that hearing, except to increase your hours?

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
===============================================

# Exhibit P

**Gregory S. Weston**

---

**From:** Elizabeth Lee Beck [elizabeth@beckandlee.com]
**Sent:** Saturday, June 19, 2010 1:18 PM
**To:** 'Gregory S. Weston'
**Cc:** 'Jared Beck'; 'Jack Fitzgerald'
**Subject:** on the topic of Roz

I'm just dying, dying to know greg.  The Team Meal after the smart balance hearing, to which I invited Roz (don't get me wrong, I like Roz).  Did she bill the time she spent at the meal, munching on Korean food?

Did she?

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
===============================================

# Exhibit Q

**Gregory S. Weston**

I understand you want to go on a field trip while I am upto my neck in paper preparing for a garbage hrg no one wanted to do.

How do you expect to be able to xconsider any counteroffer or any questions I may have if you are off sightseeing??

Was this greg's idea?

Thanks, guys. Thanks for abandoning me.

Have fun at your field trip.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.
=================================================

# Exhibit R

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Sunday, June 20, 2010 2:34 PM |
| **To:** | Jack Fitzgerald; Greg Weston |
| **Cc:** | Jared H. Beck |
| **Subject:** | Oh greg |

R u gonna bill the field trip?  Inquiring minds want to know


Sent from my Verizon Wireless BlackBerry

# Exhibit S

**Gregory S. Weston**

---

**From:**      Elizabeth Lee Beck [elizabeth@beckandlee.com]
**Sent:**      Sunday, June 20, 2010 2:41 PM
**To:**      Greg Weston
**Cc:**      Jack; Jared H. Beck
**Subject:**      Greg you

You have a talent for sucking all the motivation out of a person.  "You're dispensible"
"Get out of my case"
"Hey, let's take a field trip!"

I actually have to think about some strange things to motivate myself to do this hrg, because the very thought of busting my ass for some megalomaniac so that he can get credit and money for "His Case" is enough to make me want to curl up and sleep.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax elizabeth@beckandlee.com |
www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.
===============================================

# Exhibit T

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Michael Reese [mreese@reeserichman.com] |
| **Sent:** | Monday, August 09, 2010 9:47 AM |
| **To:** | Elizabeth Lee Beck |
| **Cc:** | Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L. |
| **Subject:** | Re: Unilever |
| **Attachments:** | Joint Prosecution Agreement.pdf |

Elizabeth -

You are completely wrong. So there is no mystery, our signed agreeement is attached hereto.

We all understand that not all money should go to the Weston Firm account, because that would in essence violate the terms of the agreement. I can understand that Will Stern does not want to be placed in such a position. Accordingly, the most sensible thing to do, if you will not agree to 50% going to the Weston escrow account and 50% going to the Reese Richman LLP account, is that it go to a third-party account. I believe that is what Will Stern intended when he included the language regarding a third-party account. We will agree that the money go into a third-party account as suggested by Will Stern if we can't get agreement that 50% goes to Reese Richman LLP escrow account now.

On Mon, Aug 9, 2010 at 12:29 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:

No, I think you are completely and blindly misconstruing the document that you referring to. And we do not agree to a third-party account. That is a term that you made up recently. No one agreed to that. Proper apportionment of attorneys' fees should be determined by a court or agreed to by the plaintiffs' counsel before Unilever pays out a single penny in fees.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers

Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130

305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax

elizabeth@beckandlee.com | www.beckandlee.com

=================================================

The information contained in this e-mail message is confidential, may be

attorney privileged, and is intended only for the use of the individual(s)

named above. If you are not the intended recipient, you are hereby notified

that any dissemination, distribution or copy of this communication is strictly

prohibited.  If you have received this communication in error, please contact

the sender by reply e-mail and destroy all copies of the original message.

=================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:26 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever


Elizabeth -


By your own logic, it certainly doesn't make sense for all the money to go into the Weston Firm account.  And as you, and all parties, are  aware, we (Reese Richman LLP and the Weston/Beck group) are to split these fees 50/50 pursuant to our signed agreement.


Nonetheless, if you won't agree now to 50% going to the Weston Firm esrow and 50% to the Reese Richman escrow account, I'll agree that the funds go to a third-party account on which all the parties are signators.

On Mon, Aug 9, 2010 at 12:19 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:

Mike,


I have taken a preliminary look at your edits and find your changes to the fees section inaccurate and at the very least, very premature.  As such, we will be sending in our own edits to defense counsel once finalized and cc you.


As you and I discussed on the phone some weeks back, I completely am at a loss as to why some $250,000 should go into your trust account without any determination by the court of appropriate fees.  Have you done work to justify that?  If so, I haven't seen hide nor hair of any proper evidence.


Obviously, your firm and the Weston/Beck firms disagree here, but this issue needs to be hashed out.  We should get paid for the work we have done.  I am cc'ing defense counsel, fyi

2

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers

Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130

305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax

elizabeth@beckandlee.com | www.beckandlee.com

===============================================

The information contained in this e-mail message is confidential, may be

attorney privileged, and is intended only for the use of the individual(s)

named above.  If you are not the intended recipient, you are hereby notified

that any dissemination, distribution or copy of this communication is strictly

prohibited.  If you have received this communication in error, please contact

the sender by reply e-mail and destroy all copies of the original message.

===============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:00 PM
**To:** Elizabeth Lee Beck; Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Elizabeth and Greg -

Do you all have any edits?

I am going to circulate my edits to the other side at close of business today and was hoping to include your edits as well.

On Thu, Aug 5, 2010 at 2:56 PM, Michael Reese <mreese@reeserichman.com> wrote:

Elizabeth and Greg -

My firm's edits are attached.

Do you all have any edits?

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor

New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:   (212) 253-4272

# Exhibit U

**Roz Sutton**

---

**From:** Alejandro Gutierrez [alejandro@beckandlee.com]
**Sent:** Monday, August 09, 2010 11:21 AM
**To:** 'Roz Sutton'
**Subject:** Yumul Info

Roz,

Can you please send me Rebecca Yumul's contact information. Email and phone number, if available.

Thank you,

ALEJANDRO GUTIERREZ | Paralegal | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 786-206-2447 Fax
alejandro@beckandlee.com | www.beckandlee.com

# Exhibit V

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 5:04 PM |
| **To:** | 'Stern, William L.' |
| **Cc:** | 'Sahouria, Janelle J.'; 'Jared H. Beck'; jack@westonfirm.com; 'Gregory S. Weston'; 'Michael Reese' |
| **Subject:** | Red v Unilever, Rosen v Unilever |
| **Attachments:** | 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

# Exhibit W

# Gregory S. Weston

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 5:08 PM |
| **To:** | 'Brown, Matthew D.'; Benjamin Kleine |
| **Cc:** | 'David Ongaro'; awinchester@ongaroburtt.com; Daydrmn@aol.com; jack@westonfirm.com; 'Gregory S. Weston'; 'Jared H. Beck' |
| **Subject:** | Cats & Dogs et al. v. Yelp |
| **Attachments:** | 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=====================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=====================================================

# Exhibit X

# Gregory S. Weston

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 5:16 PM |
| **To:** | 'Morris, Emilia'; 'Morris, Sean' |
| **Cc:** | jack@westonfirm.com; 'Gregory S. Weston'; 'Jared H. Beck' |
| **Subject:** | Red, et al. v. The Kroger Co. - 2:10-cv-01025-DMG-MAN |
| **Attachments:** | 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

# Exhibit Y

# Gregory S. Weston

**From:** Elizabeth Lee Beck [elizabeth@beckandlee.com]
**Sent:** Tuesday, August 17, 2010 5:19 PM
**To:** 'Rothrock, Frank C. (SHB)'; 'Sparkuhl, Erin L. (SHB)'
**Cc:** jared@beckandlee.com; jack@westonfirm.com; 'Gregory S. Weston'
**Subject:** Peviani v. Hostess Brands
**Attachments:** 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf


Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927. I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

# Exhibit Z

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 5:22 PM |
| **To:** | 'Kirwan, R'; 'Petmecky, Kalia' |
| **Cc:** | jared@beckandlee.com; 'Jack Fitzgerald'; 'Gregory S. Weston' |
| **Subject:** | Henderson  v. Gruma Corp. |
| **Attachments:** | 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

================================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.
================================================

# Exhibit AA

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 5:25 PM |
| **To:** | 'Panos, Dean N'; 'Lee, Kenneth K.'; 'Jakobe, Stacy S.'; 'Hutchison, Jill M.' |
| **Cc:** | 'Jared H. Beck'; 'Jack Fitzgerald'; 'Gregory S. Weston' |
| **Subject:** | Red v. Kraft Foods |
| **Attachments:** | 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf; 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
===============================================

# Exhibit BB

## Gregory S. Weston

| | |
|---|---|
| **From:** | Elizabeth Lee Beck [elizabeth@beckandlee.com] |
| **Sent:** | Tuesday, August 17, 2010 6:27 PM |
| **To:** | 'Sobol, Michael W.'; 'Heller, Roger'; amuhlbach@mofo.com; mgimenez@mofo.com; dfalk@mayerbrown.com; kneale@mayerbrown.com; hmoser@mofo.com; cpeplinski@mofo.com; jsmith@flk.com; ppreovolos@mofo.com; kfranklin@mofo.com; SBrickman@mofo.com; bfuller@mofo.com |
| **Cc:** | 'Gregory S. Weston'; 'Jack Fitzgerald'; 'Jared H. Beck' |
| **Subject:** | apple/AT&T ipad class action |
| **Attachments:** | 35 [D.E. 35] Decl of A. Gutierrez 8-17-10.pdf; 32 [D.E. 32] Beck & Lee's Opp. to Not. of Term. 8-17-10.pdf; 33 [D.E. 33] Decl of JHB 8-17-10.pdf; 33 [D.E. 33.1] Exhibit A 8-17-10.pdf; 33 [D.E. 33.2] Exhibit B 8-17-10.pdf; 33 [D.E. 33.3] Exhibit C 8-17-10.pdf; 33 [D.E. 33.4] Exhibit D 8-17-10.pdf; 34 [D.E. 34] Decl of ELB 8-17-10.pdf |

Dear defense counsel:

You may be aware of BECK & LEE BUSINESS TRIAL LAWYERS' OPPOSITION TO NOTICE OF TERMINATION OF BECK & LEE BY PLAINTIFF REBECCA YUMUL AND [PROPOSED] ORDER filed early this morning in Yumul v Smart Balance, Inc., case no. 10-cv-00927.  I have attached it to this e-mail, with the supporting declarations and exhibits.

We want to alert you to the fact that Beck & Lee is currently preparing appropriate notices to file in all of the other class actions where The Weston Firm is involved, including the one in which you are defense counsel.

Thank you.


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

====================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
====================================================

# Exhibit CC

**Gregory S. Weston**

---

| | |
|---|---|
| **From:** | Sara Randazzo [Sara_Randazzo@dailyjournal.com] |
| **Sent:** | Wednesday, August 18, 2010 2:06 PM |
| **To:** | 'greg@westonfirm.com' |
| **Subject:** | request for comment |

Hi Greg,

I just spoke to the Becks, who essentially detailed their side of the story as it appears in the declaration filed in the Unilever case. I'll be summarizing the series of events, according to the declaration, and hope to get any responding comment from you in terms of what happened leading up to their termination and your filing of the lawsuit and what your response is to the allegations that you engaged in improper behavior to find plaintiffs in your cases.

My deadline is 3 p.m., so if you'd like to comment I'll need to get it before then.

Best,

*~ Sara Randazzo*
Staff Writer | Daily Journal
44 Montgomery St., Suite 250
San Francisco, CA 94104
415.296.2402 (office)
916.849.5310 (cell)
sara_randazzo@dailyjournal.com

# Exhibit DD

**Gregory S. Weston**

---

| | |
|---|---|
| **From:** | sara_randazzo@dailyjournal.com |
| **Sent:** | Thursday, August 19, 2010 10:02 AM |
| **To:** | greg@westonfirm.com |
| **Subject:** | Daily Journal Article |

DAILY JOURNAL NEWSWIRE ARTICLE
http://www.dailyjournal.com
© 2010 The Daily Journal Corporation.
All rights reserved.
------------------------------------------

August 19, 2010

ATTORNEY ACCUSED OF KICKBACKS
By Sara Randazzo

Daily Journal Staff Writer

A fight has heated up this week between San Diego plaintiffs' attorney Gregory Weston and Florida law firm Beck & Lee, whose attorneys are accusing Weston of promising kickbacks to a paralegal and named plaintiff in a consumer class action in exchange for their involvement in the case, according to court papers filed Wednesday in federal court in the Northern District of California.

The allegations by Florida-based husband-and-wife duo Jared Beck, 33, and Elizabeth Lee Beck, 35, come five days after Weston, 29, filed a lawsuit in San Diego federal court to void a series of contracts between the two firms, which detail agreements to share fees on several proposed consumer class actions the firms are working on together as co-counsel. *The Weston Firm v. Beck & Lee, CV-1694.* Beck & Lee also received termination letters late last week from Weston, who started his career at the firm then known as Lerach Coughlin Stoia Geller Rudman & Robbins, on behalf of clients in 12 joint matters, 11 of which have been filed in California federal court.

"This is a devastating situation for us," Jared Beck, who met Weston when they were both first-years at Harvard Law School, said Wednesday. "He's someone Elizabeth and I considered a friend, somebody we trusted, somebody we believed to be an ethical person and ethical lawyer."

In a declaration filed Wednesday opposing Beck & Lee's termination in a case filed against Unilever, Beck said the problem arose about three weeks ago, when he and Lee Beck learned from Weston's paralegal, Roz Sutton, that she had been promised a "bonus" from Weston for convincing a roommate to serve as a named plaintiff in one of the cases, and that the roommate was also promised a fee outside of any award granted by the court. The couple, who are licensed to practice in California, said when they tried to independently investigate the truth of Sutton's comments, Weston and his partner Jack Fitzgerald stopped answering calls and e-mails, then abruptly served them with the lawsuit and termination letters.

Weston said in an e-mail Wednesday that, "The Becks' allegations are completely false, and amount to sour grapes from attorneys after they were fired by a large number of unhappy clients."

Legal ethics expert Diane Karpman said the allegations, if true, touch on an issue that's received considerable attention since Milberg Weiss partners were indicted in 2006 for paying plaintiffs to participate in class actions. "It's categorically illegal to make side payments not disclosed to court," Karpman said, adding that incentives can be provided to lead plaintiffs with court approval.

The partnership between Beck & Lee and Weston's firm began in mid-2009 in the Unilever case, in which plaintiffs claim the consumer product conglomerate engaged in unfair food labeling practices. *Red et al. v. Unilever United States Inc. et al*, CV-00387. It quickly spawned into joint work on other food-labeling litigation, as well as a proposed class action against Yelp Inc. for deceptive advertising practices and against Apple Inc. for false advertising related to the iPhone. New York law firm Reese Richman also entered into a joint prosecution agreement with the two firms and is a named defendant in Weston's lawsuit filed last week. Reese Richman did not return a call for comment.

Beck said he and his wife are prepared to take over all the class actions but first have to wait and see how the courts respond to the declarations they've filed and continue to file in all the pending matters.

"We think it would be an absolute shame for the defendants in those cases to get off scot-free because one of the lawyers or law firms didn't play by the rules," Beck said.

sara_randazzo@dailyjournal.com

1028180669