1   **THE WESTON FIRM**
GREGORY S. WESTON (239944)
2   888 Turquoise Street
San Diego, CA 92109
3   Telephone: (858) 488-1672
Facsimile: (480) 247-4553
4   greg@westonfirm.com

5   JACK FITZGERALD (257370)
2811 Sykes Court
6   Santa Clara, CA 95051
Telephone: (408) 459-0305
7   jack@westonfirm.com

8   ***Counsel for Plaintiffs Evangeline Red,***
***Jennifer Red, and Rachel Whitt***
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14   EVANGELINE RED, JENNIFER RED,        Case No: 3:10-cv-00387 JW
     RACHEL WHITT, on behalf of Themselves  Pleading Type: Class Action
15   and all others similarly situated,

16                                        Judge: The Hon. James Ware
                    Plaintiffs,
17                                        Date: No Hearing Set (L.R. 7-9(d))
                        v.
18

19   UNILEVER PLC and UNILEVER UNITED
     STATES, INC.,
20
                   Defendants.
21

22      **[PROPOSED] DECLARATION OF GREGORY S. WESTON IN SUPPORT OF**

23   **EVANGELINE RED'S, JENNIFER RED'S, AND RACHEL WHITT'S MOTION FOR**

24   **RECONSIDERATION OF THE COURT'S SEPTEMBER 14, 2010 ORDER AND/OR, IN**

     **THE ALTERNATIVE, APPLICATION FOR AN ORDER CERTIFYING**
25   **INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

26

27

I, Gregory S. Weston, declare:

1.     I am a member in good standing of the State Bar California, and admitted to practice before this Court. I have personal knowledge of the facts stated herein, and, if called on to do so, could and would testify competently thereto. I make this declaration in support of Plaintiffs Motion for Reconsideration of the Court's September 14, 2010 Order and/or, in the alternative, for an Order certifying interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

2.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of the transcript of the September 13, 2010 hearing before this Court.

3.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of the June 21, 2010 Settlement Term Sheet between Plaintiffs and Unilever.

4.     Attached hereto as <u>Exhibit C</u> is a true and correct copy of an August 19, 2010 email from Gregory S. Weston to William H. Stern. The email attached two files, a Microsoft Word document, which was the latest iteration of the draft final settlement agreement, i.e., Plaintiffs' last counteroffer, and an Adobe PDF document, which is a blackline, showing the changes from the version Unilever had previously sent, i.e., its previous counteroffer. Annexed to the email in Exhibit C are true and correct excerpts from the .pdf blackline, specifically showing the changes Plaintiffs proposed to that section of the settlement agreement concerning Unilever's concession on stick margarines (*see* Ex. B at ¶ 4).

5.     Attached hereto as <u>Exhibit D</u> is a September 16, 2010 email from Janelle J. Sahouria to multiple recipients, attaching revised settlement papers. The email attaches three files, two Microsoft Word documents, which is the latest iteration of the draft final settlement agreement, i.e., Unilever's last counteroffer, and an Adobe PDF document, which is a redline showing the changes Unilever made to the previous version. Annexed to the email in Exhibit D are true and correct excerpts from the PDF redline, specifically showing the changes Unilever proposed to that section of the settlement agreement concerning Unilever's concession on stick margarines.

6.    Attached hereto as <u>Exhibit E</u> is a true and correct copy of a CitiBusiness Account Opening Confirmation, confirming the opening of an Interest On Lawyers Trust Account by the Weston Firm's Jack Fitzgerald, in Santa Clara, on June 25, 2010.

7.    Attached hereto as <u>Exhibit F</u> is a true and correct copy of a June 22, 2010 email from Michael Reese to Elizabeth Lee Beck.

8.    Attached hereto as <u>Exhibit G</u> is a true and correct copy of a June 22-25, 2010 email chain by and between, among others, Elizabeth Lee Beck and Michael Reese.

9.    Attached hereto as <u>Exhibit H</u> is a true and correct copy of a July 21, 2010 email from William L. Stern to multiple recipients.

10.    Attached hereto as <u>Exhibit I</u> is a true and correct copy of a July 21, 2010 email from Elizabeth Lee Beck to multiple recipients.

11.    Attached hereto as <u>Exhibit J</u> is a true and correct of an August 9, 2010 email chain by and between, among others, Elizabeth Lee Beck and Michael Reese.

12.    Attached hereto as <u>Exhibit K</u> is a true and correct copy of an August 9, 2010 email from Elizabeth Lee Beck to Michael Reese.

13.    Attached hereto as <u>Exhibit L</u> are true and correct copies of two August 9, 2010 emails from Elizabeth Lee Beck to William L. Stern.

14.    Attached hereto as <u>Exhibit M</u> is a true and correct copy of a September 27, 2010 email from William L. Stern to multiple parties.

15.    Attached hereto as <u>Exhibit N</u> is a true and correct copy of the transcript of a September 16, 2010 hearing before the Honorable George H. Wu, in the matter of *Red et al. v. Kraft Foods, Inc. et al.*, No. CV-10-01028 (C.D. Cal.).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 27, 2010 in San Diego, California

<u>/s/ Gregory S. Weston</u>
Gregory S. Weston

DATED: September 27, 2010

Respectfully Submitted,

s/Gregory S. Weston
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
888 Turquoise Street
San Diego, California 92109
Telephone: (858) 488-1672
Facsimile: (480) 247-4553

JACK FITZGERALD
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305

*Attorneys for Evangeline Red, Jennifer Red, and Rachel Whitt*

# EXHIBIT A

4

5    EVANGELINE RED, ET AL,        )  CV-10-00387-JW
                                   )
6                PLAINTIFF,        )  SAN JOSE, CALIFORNIA
                                   )
7         VS.                      )
                                   )  SEPTEMBER 13, 2010
8    UNILEVER UNITED STATES,       )
     INC., ET AL,                  )
9                                  )  PAGES 1-43
                 DEFENDANT.        )
10   _____

11
                TRANSCRIPT OF PROCEEDINGS
12           BEFORE THE HONORABLE JAMES WARE
               UNITED STATES DISTRICT JUDGE
13

14
     A P P E A R A N C E S:
15

16

     FOR THE PLAINTIFF:  BECK & LEE
17                       BY:  ELIZABETH LEE BECK
                         28 W. FLAGLER STREET, STE 555
18                       MIAMI, FL 33130

19

20   FOR THE DEFENDANT:  MORRISON & FOERSTER
                         BY:  WILLIAM STERN
21                            JANELLE SAHOURIA
                         425 MARKET STREET
22                       SAN FRANCISCO, CA 94105

23
          (APPEARANCES CONTINUED ON THE NEXT PAGE)
24

25   OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                         CERTIFICATE NUMBER 13185

1

```
 1    FOR THE PLAINTIFF:  THE WESTON FIRM
                          BY:  GREGORY WESTON
 2                             JACK FITZGERALD
                          888 TURQUOISE STREET
 3                        SAN DIEGO, CA 92109

 4

 5    FOR THE PLAINTIFF:  REESE RICHMAN, LLP
                          BY:  MICHAEL REESE
 6                             KIM RICHMAN
                          875 SIXTH AVE, 18TH FL
 7                        NEW YORK, NY 10001

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA          SEPTEMBER 13, 2010
 2                   P R O C E E D I N G S
 3            (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5            THE CLERK:  CALLING CASE NUMBER 10-387.
 6    EVANGELINE RED, ET AL. V. UNILEVER UNITED STATES,
 7    INC. ET AL.
 8            ON FOR HEARING OF NOTICE OF TERMINATION
 9    OF BECK & LEE AND REESE RICHMAN, LLP.
10            15 MINUTES EACH SIDE.
11            COUNSEL, PLEASE COME FORWARD AND STATE
12    YOUR APPEARANCES.
13            MR. WESTON:  GREGORY WESTON REPRESENTING
14    PLAINTIFFS EVANGELINE RED, JENNIFER RED AND RACHEL
15    WHITT.
16            WITH ME ALSO ARE JACK FITZGERALD, AND
17    SOMEONE WHO RECENTLY JOINED MY FIRM BUT HASN'T
18    FILED PRO HAC VICE YET IS IN THE AUDIENCE WITH US.
19            MS. BECK:  GOOD MORNING, YOUR HONOR.
20    ELIZABETH LEE BECK, FROM BECK & LEE ON BEHALF OF
21    THE PLAINTIFFS CLASS.
22            MR. REESE:  GOOD MORNING, YOUR HONOR.
23    MICHAEL REESE FROM REESE RICHMAN, LLP.  ALSO WITH
24    ME IS MY PARTNER KIM RICHMAN.
25            MR. STERN:  GOOD MORNING, YOUR HONOR.
```

```
 1          WILLIAM STERN FOR UNILEVER, AND WITH ME
 2     IS JANELLE SAHOURIA.
 3          THE COURT:  VERY WELL.
 4          DO I HAVE ANY PARTIES ON THE PHONE FOR
 5     THIS?
 6          THIS WAS A CASE WHERE I WANTED TO MAKE
 7     SURE THE CLASS REPRESENTATIVES WERE GIVEN AN
 8     OPPORTUNITY TO APPEAR BECAUSE THE NATURE OF THIS
 9     MOTION OR MAYBE THEY ARE HERE, PHYSICALLY PRESENT.
10          THE CLASS REPRESENTATIVES ARE EVANGELINE
11     RED, JENNIFER RED AND RACHEL WHITT.
12          MR. WESTON:  YES, YOUR HONOR.  THEY ARE
13     SITTING THERE NEXT TO MR. JACK FITZGERALD.
14          THE COURT:  THANK YOU.  THANK YOU FOR
15     COMING.
16          YOU TAKE ON A VERY IMPORTANT
17     RESPONSIBILITIES AS CLASS REPRESENTATIVES.  NOT
18     ONLY DO YOU BRING THE CASE ON YOUR OWN INDIVIDUAL
19     BEHALVES BUT YOU BRING IT ON BEHALF OF OTHERS
20     SIMILARLY SITUATED.
21          THE COURT HAS YET TO CERTIFY THE CLASS,
22     BUT PART OF ITS CONSIDERATION IS TO MAKE SURE THE
23     REPRESENTATIVES ARE ADEQUATE AND CAN TAKE ON THOSE
24     RESPONSIBILITIES.
25          THIS IS A MOTION -- WHO IS MAKING THE
```

MOTION?  WHO IS THE MOVING PARTY HERE?

        MR. WESTON:  YOUR HONOR, IT WOULD BE MY CLIENTS SITTING OVER HERE WHO HAVE ASKED FOR -- ASKED THE COURT TO TERMINATE THE BECK & LEE AND REESE RICHMAN WHO ARE LISTED AS THEIR COUNSEL OF RECORD.

        THE COURT:  AND WHY?

        MR. WESTON:  WE'VE HAD A NUMBER OF DISPUTES WHICH ARE DESCRIBED IN GREAT DETAIL IN OUR BRIEFS.

        BUT BASICALLY, THE BECK & LEE FIRM HAS BEHAVED UNPROFESSIONALLY IN REPEATED WAYS OVER THE PAST FEW MONTHS.

        AND THE SECOND GROUND IS REESE RICHMAN HAS INTERFERED WITH THE PROCESS OF GOING FROM SETTLEMENT TERM SHEET THAT WE HAD AGREED TO IN JUNE TO A FINAL SETTLEMENT.

        AND YOUR HONOR, BY TERMINATING THEM NOW WE CAN VERY QUICKLY LET THE DEFENDANTS KNOW WHO THEY NEED TO NEGOTIATE WITH AND GO FROM THAT TERM SHEET TO A FULL SETTLEMENT AGREEMENT AND SEEK PRELIMINARY APPROVAL FROM THE COURT.

        THE COURT:  ALL RIGHT.

        AND THE PLAINTIFFS HAD FORMALLY BEEN REPRESENTED BY TWO SEPARATE LAW FIRMS?

MR. WESTON:  YOUR HONOR, THE PLAINTIFFS

HAVE ONLY RETAINED MY FIRM.  I BROUGHT THEM IN

UNDER A JOINT PROSECUTION AGREEMENT.

         THAT AGREEMENT WAS NEVER APPROVED BY MY

CLIENTS, AND UNDER RULE OF PROFESSIONAL CONDUCT

2200 AND A NUMBER OF CASES WHICH IS CHAMBERS V. KAY

FROM THE CALIFORNIA SUPREME COURT, A JOINT

PROSECUTION AGREEMENT IS NOT SUFFICIENT TO BIND THE

CLIENT OR THE OTHER ATTORNEY.

         AND EVEN IF IT WERE BINDING, THE CLIENTS

HAVE THE ABSOLUTE RIGHT UNDER FURTHER SUPREME COURT

PRECEDENT, FRACASSE IS THE MOST NOTABLE CASE, TO

TERMINATE THEIR OTHER ATTORNEYS WITH OR WITHOUT

CAUSE.

         AND THE CASES SAY THAT IS AN ABSOLUTE

RIGHT.

         THE COURT:  WELL, SO DO I NEED CONSIDER

THIS MOTION?  I HAD ON THE VARIOUS DOCUMENTS BECK &

LEE AS THE COUNSEL FOR THE PLAINTIFFS AND THE

PROPOSED CLASS.

         MR. WESTON:  YOUR HONOR, THOSE WERE FILED

WITHOUT MY CLIENT'S AUTHORIZATION, AND DESPITE THE

FACT THEY HAD SUBMITTED TO THE COURT, AND I ALSO

TOLD THEM BY LETTER PREVIOUSLY THEY WERE NOT TO

FILE ANYTHING ELSE IN THIS CLAIMING THEY REPRESENT

MY CLIENTS.

THE COURT:  I SEE.

BUT THEY HAD, AT SOME POINT UNDER THIS GIANT PROSECUTION AGREEMENT, THE AUTHORITY TO FILE?

MR. WESTON:  WITH MY AUTHORIZATION THEY DID HAVE THE AUTHORITY TO SPEAK FOR THE CLASS UNTIL WE TERMINATED THEM MORE THAN A MONTH AGO.

THE COURT:  I SEE.

I IS THERE SOMEONE FROM BECK & LEE WHO WANTS TO SPEAK TO THIS?

MS. BECK:  YES, YOUR HONOR.

ELIZABETH LEE BECK FOR THE PLAINTIFFS PROPOSED CLASSES.

YOUR HONOR, IF I COULD GO THROUGH THE TIMELINE, I THINK IT WOULD BE VERY ENLIGHTENING AS TO WHY BECK & LEE AS COUNSEL FOR THE PLAINTIFFS WHO -- THE LAW FIRM THAT HAS DONE THE BULK OF THE WORK IN THE RED ACTION WHICH IS BEFORE THE COURT TODAY, AND REESE RICHMAN WHO IS ALSO COUNSEL FOR THE PLAINTIFFS IN THIS CASE AND THE COUNSEL OF RECORD FOR THE ROSEN MATTER, THE RELATED ROSEN MATTER BEFORE THE COURT HAS BEEN TERMINATED.

YOUR HONOR, IN THE RED VERSUS UNILEVER CASE WHICH IS BEFORE THE COURT, A HEARING WAS SET FOR JUNE 21ST, 2010, ON DEFENDANT'S MOTION TO

1    DISMISS.  I WAS PREPARED TO ARGUE THAT HEARING

2    BEFORE YOUR HONOR ON THAT DAY.

3            THROUGHOUT THAT WEEKEND, WITH INPUT FROM

4    BOTH THE WESTON FIRM AND REESE RICHMAN, I SETTLED

5    THE CASE ON BEHALF OF THE PLAINTIFFS.

6            THE TERMS WERE MADE FULLY -- WERE

7    DISCLOSED FULLY TO ALL PLAINTIFFS COUNSEL.  THEY

8    APPROVED AND THE SETTLEMENT TERM SHEET WAS SIGNED

9    WITH MR. STERN, COUNSEL FOR THE DEFENDANT AND

10   MR. STERN AND I ANNOUNCED THE SETTLEMENT BEFORE

11   YOUR HONOR ON JUNE 21ST.

12           THE COURT:  NOW PART OF YOUR STATEMENT

13   THAT LEFT ME WANTING MORE --

14           MS. BECK:  YES, YOUR HONOR.

15           THE COURT:  -- IS THE STATEMENT THAT IT

16   WAS APPROVED BY YOUR CLIENT.

17           MS. BECK:  YOUR HONOR, NOW I WOULD LIKE

18   TO SAY THAT WHEN I SIGNED THE SETTLEMENT TERM

19   SHEET, THAT WAS WITH FULL APPROVAL BY ALL COUNSEL,

20   NOT ONLY REESE RICHMAN AND US AS COUNSEL FOR THE

21   PLAINTIFFS AND THE CLASS, BUT ALSO THE WESTON FIRM.

22           THERE'S NO DISPUTE HERE -- IT IS

23   ABSOLUTELY CLEAR THAT NO TERM --

24           THE COURT:  YOU MISHEARD ME.

25           MS. BECK:  YES, YOUR HONOR.

```
1              THE COURT:  I HEARD YOU SAY IT WAS WITH

2    APPROVAL OF COUNSEL.

3              MS. BECK:  YES, YOUR HONOR.

4              THE COURT:  YOU ARE LAWYERS, YOU

5    REPRESENT THE PLAINTIFF.

6              MS. BECK:  YES, YOUR HONOR.

7              THE COURT:  SO YOU CAN'T SETTLE A CASE

8    UNLESS IT'S APPROVED BY YOUR CLIENT.  YOU DON'T

9    SETTLE IT, THEY SETTLE IT.

10             SO WHAT I WAS ASKING, ALTHOUGH A LITTLE

11   BIT PERHAPS TOO OBTUSELY IS, WHAT IS YOUR

12   REPRESENTATION WITH RESPECT TO WHETHER THE

13   PLAINTIFFS APPROVED THE SETTLEMENT?

14             MS. BECK:  MY UNDERSTANDING IS THAT THE

15   PLAINTIFFS ARE FULLY SATISFIED WITH THE TERMS OF

16   THE SETTLEMENT.

17             THE COURT:  NO, NO, THAT'S NOT ANSWERING

18   MY QUESTION.  SATISFIED IS DIFFERENT FROM

19   APPROVING.

20             WHAT WAS THE REPRESENTATION?  DID THEY

21   APPROVE THE SETTLEMENT?

22             MS. BECK:  YES, YOUR HONOR.  THROUGH THE

23   WESTON FIRM WHICH IS THE LAW FIRM THAT THEY

24   RETAINED AS THEIR ATTORNEYS.

25             THE COURT:  OKAY.  SO DO I UNDERSTAND
```

```
 1    THEN THAT YOUR REPRESENTATION IS THAT THE WESTON

 2    LAW FIRM, ON BEHALF OF THE PLAINTIFFS, SAID WE

 3    APPROVE THE SETTLEMENT?

 4             MS. BECK:  YES, YOUR HONOR.

 5             THE COURT:  WHAT'S YOUR RESPONSE TO THAT?

 6             MR. WESTON:  I WOULD DISPUTE THE BECK &

 7    LEE FIRM HAS DONE THE BULK OF THE WORK.

 8             THE COURT:  I'M TRYING TO GET TO THE

 9    QUESTION OF WHETHER OR NOT THESE PLAINTIFFS

10    APPROVED THE SETTLEMENT SO THAT I CAN -- THAT WILL

11    TAKE ME DOWN ONE ROAD.

12             BUT DID YOU OR SOMEONE ON BEHALF OF THE

13    WESTON LAW FIRM REPRESENT TO MS. BECK HERE THAT THE

14    PLAINTIFFS APPROVED THE SETTLEMENT?

15             MR. WESTON:  THE SETTLEMENT TERM SHEET BY

16    PLAINTIFFS, I DID SEE IT APPROVED.  THOSE HAD BEEN

17    AGREED BY THE PARTIES.

18             THE SETTLEMENT TERM SHEET.

19             THE COURT:  SAY THAT AGAIN.

20             DID YOU, ON BEHALF OF EVANGELINE RED

21    JENNIFER RED AND RACHEL WHITT, DID YOU SAY AS THEIR

22    LAWYER ON THEIR BEHALF, I APPROVE THE SETTLEMENT?

23             MR. WESTON:  APPROVE THE SETTLEMENT TERM

24    SHEET BUT NOT A FULL SETTLEMENT AGREEMENT.

25             THE COURT:  OKAY.
```

```
 1          SO THAT SOUNDS LIKE YOU DID APPROVE THE

 2   SETTLEMENT AND THE TERM SHEET.  OF COURSE, AS I

 3   UNDERSTAND THE PRACTICE, SOMETIMES ISN'T THE WHOLE

 4   THING, THEN YOU GOTTA WORK OUT THE EXACT WORDS

 5   HAVING TO DO WITH THAT.

 6          BUT WHY DID YOU DO THAT?  DID YOU HAVE

 7   THEIR AUTHORITY TO APPROVE THE SETTLEMENT AT THAT

 8   POINT?

 9          MR. WESTON:  YES, I DID, YOUR HONOR.

10          THE COURT:  ALL RIGHT.

11          SO NOW WE ARE AT A POINT WHERE THERE'S AN

12   APPROVAL OF THE SETTLEMENT.  WHAT WENT WRONG?

13          MS. BECK:  THERE WAS ONE TERM IN THE

14   SETTLEMENT TERM SHEET, YOUR HONOR, ONLY ONE TERM

15   THAT IS THE SOURCE OF BASICALLY THIS ENTIRE

16   SETTLEMENT COMING TO A GRINDING HALT, YOUR HONOR.

17          AND IT ACTUALLY -- BELIEVE IT OR NOT, IT

18   DOESN'T AFFECT THE CLASS WHATSOEVER.  THERE'S --

19   THE ATTORNEY'S FEES, YOUR HONOR, THE WESTON FIRM IS

20   TAKING THE POSITION THAT ALL THE ATTORNEYS FEES IN

21   THIS CASE WHETHER THEY WERE BY BECK & LEE, WESTON

22   OR REESE RICHMAN, BE SENT TO THEIR TRUST ACCOUNT.

23          REESE RICHMAN OBJECTED, AND COUNSEL FOR

24   DEFENDANT ALSO, FROM WHAT I UNDERSTAND, HAS

25   RESERVATIONS ABOUT DOING THAT BECAUSE IT OPENS THE
```

```
1    DEFENDANTS TO LIABILITY.

2              COUNSEL FOR DEFENDANT SUGGESTS --

3              THE COURT:  WHY?  WHY DOES THE MOVEMENT

4    OF THE FUNDS TO THE TRUST ACCOUNT -- IS OWNED BY

5    WHOEVER IS THE TRUSTOR IS, NOT OWNED BY THE

6    TRUSTEE.  WHY IS PUTTING IT IN A TRUST ACCOUNT A

7    SOURCE FOR CONCERN?

8              MS. BECK:  YOUR HONOR, AT THIS POINT I

9    THINK BECK & LEE WOULD HAVE CONCERNS ABOUT THAT.

10             BECAUSE ON AUGUST 13TH THE WESTON FIRM

11   SUED MY FIRM AND REESE RICHMAN IN THEIR BACKYARD,

12   IN THE SOUTHERN DISTRICT OF CALIFORNIA, ATTEMPTING

13   TO NULLIFY THE JOINT PROSECUTION AGREEMENT.

14             YOUR HONOR, DESPITE WHAT THEY FILED IN

15   THIS CASE, DESPITE WHAT MR. WESTON REPRESENTS AS TO

16   WHY THE CLASS REPRESENTATIVES TERMINATED US, IN

17   THAT ACTION YOUR HONOR, THAT ACTION WHICH WAS FILED

18   A FEW WEEKS AGO, THEY'RE TAKING THE POSITION THAT

19   THOSE JOINT PROSECUTION AGREEMENTS ARE NULL AND

20   VOID AB INITIO BECAUSE MR. WESTON CONVENIENTLY DID

21   NOT TELL THE PLAINTIFFS THAT REESE RICHMAN AND BECK

22   & LEE WERE WORKING ON THIS CASE ON BEHALF OF THEM

23   AND THE CLASS.

24             SO MR. WESTON'S POSITION IS THAT DESPITE

25   THE CONTRIBUTIONS --
```

```
 1              THE COURT:  I'M SORRY, LET'S STOP AT THAT
 2      POINT.
 3              SO YOUR REPRESENTATION TO THE COURT IS
 4      THAT THE WESTON LAW FIRM HAD NOT ADVISED THE
 5      PLAINTIFFS THAT THE REESE THE BECK & LEE FIRM WAS
 6      ALSO REPRESENTING THEM?
 7              MS. BECK:  APPARENTLY, THAT IS WHAT HE
 8      HAS STATED IN THE COMPLAINT IN THE SOUTHERN
 9      DISTRICT OF CALIFORNIA.
10              I WOULD SAY THAT TO ME --
11              THE COURT:  LET ME SEE IF I CAN GET AN
12      ANSWER FROM THE PLAINTIFFS.
13              EVANGELINE RED, JENNIFER RED, RACHEL
14      WHITT, WHAT'S THE RELATIONSHIP BETWEEN EVANGELINE
15      AND JENNIFER?
16              MS. RED:  SISTERS.
17              THE COURT:  WHAT'S THE RELATIONSHIP WITH
18      RACHEL WHITT.
19              MS. WHITT:  I'M FRIENDS WITH JENNIFER
20      RED, YOUR HONOR.
21              THE COURT:  FRIENDS.
22              WHAT I'M HEARING IS YOU WERE NOT ADVISED
23      OF THE INVOLVEMENT OF BECK & LEE IN THIS
24      LITIGATION?  IS THAT TRUE?
25              MS. WHITT:  I'VE SEEN THEIR NAMES ON THE
```

FORMS THAT I SIGNED.  I AM AWARE, BUT I HAVEN'T

TALKED WITH MR. WESTON AND I KNOW MR. FITZGERALD.

THE COURT:  YOU SAW THEIR NAMES BUT YOU

DIDN'T KNOW WHAT THE RELATIONSHIP WAS?

MS. WHITT:  YES.

THE COURT:  NO ONE TOLD YOU THEY WERE

ALSO YOUR LAWYERS?

MS. WHITT:  I KNOW THEY ARE LAWYERS

BECAUSE IT STATES THERE ON THE FORMS THAT WE READ.

THE COURT:  SO YOU KNEW THEY WERE

INVOLVED SOMEHOW AS YOUR LAWYERS?

MS. WHITT:  YES, YOUR HONOR.

THE COURT:  COUNSEL?  WHAT DID YOU TELL

THE PLAINTIFFS ABOUT THE RELATIONSHIP WITH BECK &

LEE?

MR. WESTON:  WELL, YOUR HONOR, IT

ACTUALLY HAS CHANGED SOMEWHAT.

THE COURT:  I KNOW, BUT WHAT DID YOU TELL

THEM?

MR. WESTON:  I TOLD THEM THEY WERE

LAWYERS WHO WERE GOING TO ASSIST ME.  THEY HADN'T

BEEN DOING MUCH IN THE CASE BUT IF IT BECAME AN

ISSUE, IF WE WERE GOING TO TRIAL, WE WOULD NEED

ADDITIONAL ATTORNEYS AND THEY WERE PREPARED FOR ME

AND THEY HAVE SORT OF FULFILLED THAT ROLE IN THE

PAST.

THE COURT:  SO THEY WERE GOING TO BE THE TRIAL LAWYERS?

MR. WESTON:  IF IT WERE NECESSARY.

THE COURT:  ALL RIGHT.

SO KEEP GOING.

MS. BECK:  SO WESTON IS TAKING THE POSITION THAT OUR LAW FIRM AND REESE RICHMAN ARE NOT ENTITLED TO ANY FEES.

THE COURT:  LET ME STOP YOU THERE.

SO THE CONCERN, AS I PICK IT UP FOR PUTTING THE MONEY IN THE TRUST ACCOUNT FROM THE SETTLEMENT, AT THAT POINT WAS WHETHER OR NOT THE QUESTION OVER THE JOINT REPRESENTATION AGREEMENT WOULD CAUSE THE FIRM HOLDING THE MONEY IN THE TRUST ACCOUNT, WOULD ACT INCONSISTENTLY WITH WHATEVER WAS THE ARRANGEMENT UNDER THE JOINT REPRESENTATION AGREEMENT?

MS. BECK:  I BELIEVE THAT WAS REESE RICHMAN'S CONCERN AT THAT POINT.

NOW I WOULD LIKE TO MENTION AT THIS POINT THAT DEFENDANT CAME UP WITH A VERY GOOD COMPROMISE. BECAUSE THIS CASE HAS SETTLED AND THERE'S NO REASON WHY THIS CASE SHOULD NOT REACH FINAL SETTLEMENT, COUNSEL FOR UNILEVER SUGGESTED THAT THE ATTORNEY'S

```
 1    FEES NO MATTER, SHOULD BE PUT INTO A THIRD PARTY --

 2            THE COURT:  HOLD IT.  I'M SORRY.

 3            SO WHAT DID REESE RICHMAN HAVE TO DO WITH

 4    THIS CASE?

 5            MS. BECK:  YOUR HONOR, THEY ARE COUNSEL

 6    FOR THE ROSEN V. UNILEVER CASE.

 7            THE COURT:  SO THEY HAD NOTHING TO DO

 8    WITH THIS CASE?

 9            MS. BECK:  THEY ALSO SIGNED A JOINT

10    PROSECUTION AGREEMENT WITH OUR FIRMS.  THEY WERE

11    COUNSEL OF RECORD FOR THE ROSEN CASE WHICH WAS

12    DISMISSED WITH PREJUDICE BEFORE YOUR HONOR.

13            THE TWO CASES ARE RELATED.  THE RED CASE,

14    WHICH IS CURRENTLY BEFORE YOUR HONOR, ENGULFS AND

15    ENCOMPASSES THE ATTORNEYS WITH RESPECT TO THE

16    CLAIMS.

17            THE COURT:  SO THEY'RE NOT ATTORNEYS OF

18    RECORD, BUT THEY WERE CONCERNED ABOUT WHERE THE

19    MONEY WENT IN THE SETTLEMENT OF THIS CASE BECAUSE

20    IT MIGHT AFFECT THE OTHER CASE?

21            WHAT WAS THE STATUS OF THE OTHER CASE AT

22    THE POINT OF THE SETTLEMENT?

23            MS. BECK:  THE OTHER CASE WAS DISMISSED

24    WITH PREJUDICE.

25            BUT I WOULD LIKE TO MENTION, YOUR HONOR,
```

THAT THE SETTLEMENT -- TERM SHEET SETTLEMENT, THE
ROSEN APPEAL, IT DOESN'T ONLY SETTLE THE RED VERSUS
UNILEVER CASE BUT IT ALSO SETTLES THE ROSEN VERSUS
UNILEVER CASE WHICH IS CURRENTLY ON APPEAL.

THE COURT:  I SEE.  SO THE ROSEN
PLAINTIFFS --

MS. BECK:  YES, YOUR HONOR.

THE COURT:  -- WERE GOING TO OBTAIN
SOMETHING OF SUBSTANCE IN THE SETTLEMENT ITSELF, SO
THAT GAVE THE REESE RICHMAN FIRM SOME CONCERNS
ABOUT MAKING SURE THE FUNDS FLOWED IN A WAY THAT
WOULD BE CONSISTENT WITH THEIR CLIENT'S POSITION.

MS. BECK:  EXACTLY, YOUR HONOR.

AND REESE RICHMAN, I WAS IN CONTACT WITH
MR. MICHAEL REESE OF THE REESE RICHMAN FIRM
THROUGHOUT THAT SETTLEMENT WEEKEND.  HE APPROVED
THE TERMS, AND THERE IS NO QUESTION THAT THE
SETTLEMENT TERM SHEET HAD, IS APPROVED BY THE ROSEN
PLAINTIFF AS WELL.

THE COURT:  LET'S GO TO THE BOTTOM LINE.

THIS IS A CIVIL CASE.  AND ESPECIALLY
WHERE THERE IS NO CLASS CERTIFIED YET, THE CLIENTS
ARE ENTITLED TO BE REPRESENTED BY THE ATTORNEY OF
THEIR CHOICE.

THERE'S NO REASON WHY THE COURT WOULD

1   IMPOSE ANY REPRESENTATION TO THESE PLAINTIFFS,

2   ESPECIALLY PRIOR TO CERTIFICATION.

3           SO IF THE NAMED PLAINTIFFS WISHED TO

4   SWITCH OUT LAWYERS, WHY SHOULD THE COURT STAND IN

5   THEIR WAY?

6           MS. BECK:  YOUR HONOR, LET ME RESPOND TO

7   THAT, YOUR HONOR.

8           YOUR HONOR MENTIONED THE BOTTOM LINE.

9   THE BOTTOM LINE HERE IS THAT AFTER A CASE WAS

10  SETTLED, THE WESTON FIRM BASICALLY -- FIRST OF ALL,

11  I WOULD LIKE TO MENTION YOUR HONOR THAT EVERY

12  SINGLE CASE THAT THE WESTON FIRM HAS CITED IN ITS

13  PAPERS THAT TALKS ABOUT THE CLIENT'S ABSOLUTE RIGHT

14  TO TERMINATE CLASS COUNSEL, NONE OF THOSE CASES ARE

15  THE CLASS ACTION CONTEXT.  THEY ARE ALL INDIVIDUAL

16  CASES, YOUR HONOR.  AND IT IS CLEARLY EASY TO SEE

17  WHY.

18          BECAUSE IN A CLASS ACTION THE PLAINTIFFS

19  HAVE SUCH A NOMINAL STAKE IN THE CASE, YOUR HONOR,

20  THAT THE CLASS COUNSEL CAN MANIPULATE THE CLASS

21  REPRESENTATIVES TO ACT IN A WAY THAT IS NOT -- THAT

22  DOES NOT FURTHER THE INTERESTS OF THE CLASS, BUT

23  THEY ACT IN A WAY THAT IS TOWARDS THE

24  AGGRANDIZEMENT OF THE ATTORNEYS OR THE CLASS

25  REPRESENTATIVES.  AND THAT IS WHAT HAPPENED HERE,

YOUR HONOR.

THE CASE SETTLED AND THE WESTON FIRM MADE
THE CLASS REPRESENTATIVES TERMINATE EVERYBODY.

NOW YOUR HONOR, THE MANUAL FOR COMPLEX
LITIGATION SPEAKS TO THIS.  IT SPEAKS TO ABUSING
THE CLASS ACTION PROCEDURE FOR THE IMPROPER GAIN OF
THE ATTORNEYS AND/OR THE CLASS REPRESENTATIVES AND
THAT'S WHAT HAS HAPPENED HERE.

THE -- WHETHER OR NOT THE CLASS
REPRESENTATIVES HAVE RETAINED CLASS COUNSEL IS JUST
ONE OF MANY FACTORS THAT THE COURT MAY CONSIDER IN
APPOINTING WHO IS CLASS COUNSEL.

WHAT THE PLAINTIFFS HERE AND THE WESTON
FIRM IS TRYING DO, YOUR HONOR, IS USURP THE COURT'S
AUTHORITY TO APPOINT LEAD COUNSEL.  AND IT WOULD
MAKE A MOCKERY OF CLASS ACTIONS, YOUR HONOR.

THE COURT:  REMIND ME, DID I APPOINT LEAD
COUNSEL?

MS. BECK:  NO, SIR, YOUR HONOR, YOU DID
NOT.

THE COURT:  HOW CAN THEY USURP MY
AUTHORITY?

MS. BECK:  BECAUSE THE PLAINTIFFS ARE
BASICALLY SAYING THE CASE IS SETTLED, I WANT ALL
THE OTHER LAW FIRMS TERMINATED.  AND THE LAST MAN

STANDING IS THE WESTON FIRM, THEREBY BY A PROCESS

OF ELIMINATION THEY'RE GOING TO BE LEAD COUNSEL.

THE COURT: WELL, I DON'T SEE HOW THAT

AFFECTS THE COURT'S AUTHORITY AT ALL.

IT DOES SEEM TO ME THERE MIGHT BE A

HEALTHY LITIGATION THAT COULD GO ON BETWEEN THE

LAWYERS OVER THIS JOINT REPRESENTATION AGREEMENT

AND WHETHER OR NOT THE ATTORNEYS ARE ENTITLED TO

COMPENSATION FOR THEIR WORK PRIOR TO ITS

TERMINATION, OR DAMAGES IF IT'S IMPROPERLY

TERMINATED BECAUSE IT'S A CONTRACT.

AND JUST LIKE EVERY CONTRACT, IT CAN BE

THE SUBJECT OF LITIGATION. PERHAPS, NOT FEDERAL

COURT BECAUSE ORDINARILY WE DON'T TAKE CASES UNLESS

WE HAVE JURISDICTION. AND AT THIS POINT I DON'T

KNOW A BASIS FOR FEDERAL JURISDICTION OVER A BREACH

OF CONTRACT AGREEMENT BETWEEN LAWYERS REPRESENTING

PEOPLE IN A LITIGATION.

IT COULD BE THERE'S DIVERSITY BECAUSE I

UNDERSTAND SOME OF THESE FIRMS ARE FROM OUTSIDE OF

THE STATE, BUT I WON'T GO THERE.

YOU STILL HAVEN'T DEALT WITH MY QUESTION.

AND IT DOES SEEM TO ME THAT AT THIS STAGE OF THE

LITIGATION THE COURT WOULD DEFER TO THE WISHES OF

THE PLAINTIFFS.

1    IT DOES SEEM TO ME THAT THERE ARE

2    CIRCUMSTANCES UNDER WHICH YOU ARE CORRECT THAT I

3    SHOULD EXAMINE THOSE PLAINTIFFS TO MAKE SURE THAT

4    THEY ARE ADEQUATE AND EXAMINE THEIR LAWYER TO MAKE

5    SURE THAT THE LAWYER IS ADEQUATE.

6    BUT IT ALL STARTS WITH THEIR COMING

7    BEFORE THE COURT AS INDIVIDUAL PLAINTIFFS WITH AN

8    INDIVIDUAL -- WITH A LAWYER REPRESENTING THEM AS

9    INDIVIDUAL PLAINTIFFS THEN SEEKING TO HAVE IT

10   CERTIFIED AS A CLASS.  AND IN THAT MOTION, THE RULE

11   23 MOTION, THE COURT WOULD BECOME INVOLVED IN THE

12   REPRESENTATION ISSUE.

13   OFTEN AS IT SOUNDS LIKE IS THE CASE HERE,

14   THERE'S A SETTLEMENT.  AND PRIOR TO ANY SUBSTANTIVE

15   LITIGATION, AND I'M ALWAYS WELCOMING SETTLEMENTS

16   AND CLASS ACTION, BUT EVEN THEN, AT THAT SETTLEMENT

17   HEARING, I WOULD ENGAGE IN THE RULE 23 ANALYSIS.

18   SO IT DOES SEEM TO ME THAT I'M DISPOSED

19   TO GRANT THE PLAINTIFF'S REQUEST TO THE LAWYER OF

20   THEIR CHOICE AT LEAST AS AN INITIAL MATTER IN THIS.

21   I TAKE IT MR. STERN, YOU HAVE NO ISSUE IN

22   THIS AT ALL AS UNILEVER, OR DO YOU?

23   MR. STERN:  YOUR HONOR, WE DON'T HAVE A

24   STAKE IN IT.

25   WE FEEL, AS COUNSEL HAVE SAID, THAT THE

1    TERM SHEET IS ENFORCEABLE AND IT DESERVES AN

2    OPPORTUNITY TO BE PRESENTED.

3            THE COURT:  WELL, THAT BECOMES ANOTHER

4    MATTER.  I'VE HAD THAT SITUATION.

5            I SHOULD TELL YOU ALL, NOTHING I'M DOING

6    HERE IS ANY INDICATION THAT THE COURT WOULD ENFORCE

7    A TERM SHEET AS A SETTLEMENT.

8            IT SEEMS TO ME THAT A SETTLEMENT IS WHERE

9    EVERYBODY AGREES TO IT, THEN THERE'S A BREACH OF

10   THE SETTLEMENT AGREEMENT.  I'VE HAD THAT SITUATION

11   BUT IT'S VERY SELDOM THE COURT GETS INVOLVED IN

12   PRELIMINARY SETTLEMENT DISCUSSIONS UNLESS I'M DOING

13   IT AS SORT OF AN ADR KIND OF PROCESS TO ENFORCE

14   TERM SHEETS.

15           IT SEEMS TO ME, BY ITS VERY DEFINITION,

16   SOMETIMES THOSE ARE PRELIMINARY AND IT SAYS THE

17   PARTIES HAVE NOT REACHED A SETTLEMENT.  BUT I'VE

18   HAD TERM SHEETS THAT SAY ON THEIR FACE THIS IS A

19   FULL AND FINAL SETTLEMENT OF THE WHOLE CASE.

20           SO UNTIL I GET THERE, I WON'T COMMENT

21   FURTHER ON THAT.

22           FINAL WORDS?

23           MS. BECK:  YOUR HONOR, I WOULD JUST LIKE

24   TO REALLY BRING UP SEVERAL OTHER ISSUES THAT DID

25   NOT THAT I DIDN'T HAVE AN OPPORTUNITY BRING UP.

THE TIMING OF BECK & LEE'S TERMINATION
ALSO COINCIDES WITH A CAR RIDE I HAD WITH A
PARALEGAL AT THE WESTON FIRM WHERE THERE WERE SOME
SERIOUS CONCERNS BROUGHT UP ABOUT THE PRACTICE OF
THE WESTON FIRM, NAMELY THAT THE WESTON FIRM
PROMISES CLASS REPRESENTATIVES KICKBACK FUNDS FOR
BEING A REPRESENTATIVE IN A CLASS ACTION AND ALSO
COMPENSATES ITS NON-LAWYER EMPLOYEES WITH FEES THAT
ARE GENERATED FROM CLASS ACTIONS WHEN THEY SETTLE.

        WHEN I HAD THIS CONVERSATION WITH MS. ROZ
SUTTON, WHO IS A RECENT COLLEGE GRADUATE AND A
PARALEGAL AT THE WESTON FIRM, I BEGAN AN
INVESTIGATION OF THE WESTON FIRM'S PRACTICES AND
SOON THEREAFTER WE WERE ALSO TERMINATED.

        I WOULD LIKE TO REALLY JUST STATE TO THE
COURT THAT WHAT THE WESTON FIRM HAS DONE HERE IS
BASICALLY ON THE EVE OF A SETTLEMENT TO TERMINATE
ALL OF ITS CO-COUNSEL AND --

        THE COURT:  LET ME TAKE THAT UP BECAUSE
THERE'S A SERIOUS CHARGE.

        IN OTHER WORDS, FOR WHOM DID THIS
PARALEGAL WORK --

        MS. BECK:  THE WESTON FIRM, YOUR HONOR.
HER NAME IS ROZ SUTTON.

        THE COURT:  DO I HAVE A DECLARATION FROM

HER?

MR. WESTON: YES, YOU DO, YOUR HONOR. THAT'S JUST ABSOLUTELY FALSE AND IT'S SOUR GRAPES.

THE COURT: JUST A MOMENT. SO LET ME FIND HER DECLARATION.

THE COURT: ROZ SUTTON, IS THAT HER STATEMENT?

MR. WESTON: YES IT IS, YOUR HONOR.

THE COURT: YOU'VE READ THIS.

MS. BECK: YES, YOUR HONOR.

THE COURT: IS IT TRUE WHAT'S STATED IN THE AFFIDAVIT?

MS. BECK: ALL I CAN TESTIFY IS THE CONVERSATION I HAD WITH MS. SUTTON IN THE CAR, I WAS A DIRECT WITNESS TO THAT.

I FILED AN AFFIDAVIT AS WELL, YOUR HONOR, A DECLARATION TO THE CONVERSATION I HAD WITH MS. SUTTON AND I ALSO FILED ON THE RECORD MY CONTEMPORANEOUS NOTES.

YOUR HONOR, I WOULD ALSO LIKE TO MENTION THERE WAS ANOTHER EMPLOYEE BY THE NAME OF EVAN LEE. MS. SUTTON TOLD ME MR. EVAN LEE, WHO WAS NOT AN ATTORNEY, WOULD BE GETTING A PERCENTAGE OF THE SETTLEMENT PROCEEDS FROM THIS CASE YOUR HONOR, FROM THIS CASE BECAUSE HE BILLED ON IT.

```
1              THE COURT:  WHO TOLD YOU THAT?

2              MS. BECK:  MS. SUTTON.

3              THE COURT:  I HAVE AN AFFIDAVIT FROM

4    EVAN LEE?

5              MS. BECK:  YES, YOUR HONOR.

6              THE COURT:  HAVE YOU READ THAT.

7              MS. BECK:  YES, YOUR HONOR.

8              I DON'T KNOW IF IT'S TRUE, ALL I CAN

9    TESTIFY IS THE CONVERSATION I HAD WITH MS. SUTTON.

10             I WOULD LIKE TO POINT OUT THAT MR. LEE

11   DOESN'T STATE THAT HE WILL NOT GET SOMETHING FROM

12   THE UNILEVER SETTLEMENT, HE JUST SAYS IT'S NOT A

13   PERCENTAGE.  IT MAY BE A BONUS.  ROZ SUTTON WASN'T

14   SURE ABOUT THE PERCENTAGE.

15             THE COURT:  HERE'S WHERE I'M LEFT WITH

16   THIS.

17             IF I DETERMINE THAT THE COUNSEL THAT THE

18   PLAINTIFFS DESIRE TO HAVE AS THEIR COUNSEL HAVE

19   VIOLATED THE RULES OF PROFESSIONAL CONDUCT, THAT

20   COULD LEAD THE COURT TO TAKE ACTION TO TERMINATE

21   THEM AT LEAST AS TO COUNSEL FOR THE PLAINTIFFS AS

22   CLASS REPRESENTATIVES AND PERHAPS TERMINATE THEM AS

23   INDIVIDUAL REPRESENTATIVES.

24             I DON'T KNOW WHAT TO MAKE OF THIS.  IT

25   DOES SEEM TO ME THAT YOUR STATEMENTS DO RUN
```

1  CONTRARY TO THESE AFFIDAVITS.

2  IT COULD BE THE AFFIANT'S ARE NOT TELLING

3  THE TRUTH, OR YOU ARE NOT TELLING THE TRUTH OR

4  EVERYBODY'S DIFFERENT VERSIONS CAN BE RECONCILED

5  WITH MORE TIME BEFORE THE COURT.

6  BUT THESE ARE MATTERS THAT ARE EXTRANEOUS

7  TO THE QUESTION BEFORE THE COURT AS TO WHETHER OR

8  NOT THE PLAINTIFFS ARE ENTITLED TO THEIR CUSTOMERS

9  OF CHOICE.

10  THESE ARE SERIOUS MATTERS HERE ON THEIR

11  FACE SUBMITTED TO THE COURT AS SWORN DECLARATIONS.

12  AND SO I ASSUME IF THE INDIVIDUALS WERE TO COME

13  FORWARD, THEY WOULD SWEAR TO IT.  SO IT MIGHT CAUSE

14  THE COURT TO TAKE THIS MATTER UP IN A SEPARATE

15  PROCEEDING.

16  MS. BECK:  YOUR HONOR, IF I MAY, ONE LAST

17  WORD.

18  THE PLAINTIFFS, THE PROPOSED CLASS

19  REPRESENTATIVES IN THIS CASE TERMINATING BECK & LEE

20  AND REESE RICHMAN IS NOT INCONSISTENT WITH BECK &

21  LEE'S POSITION THAT WHAT THE WESTON FIRM HAS DONE

22  IS VERY ABUSIVE OF THE CLASS ACTION PROCESS

23  YOUR HONOR.

24  THEY CAN CERTAINLY TERMINATE WHOMEVER

25  THEY CHOOSE TO.  BUT THE CLASS REPRESENTATIVES AND

```
 1    CLASS COUNSEL MUST ALWAYS ACT IN THE INTEREST OF
 2    THE CLASS.  AND THERE CAN BE NO POSSIBLE BENEFIT TO
 3    TERMINATING LAW FIRMS, AND THEY ARE HERE,
 4    YOUR HONOR.
 5              I HAVE NEVER SPOKEN WITH THEM,
 6    YOUR HONOR.  THEY HAVE NOT GIVEN ANY INDICATION
 7    THAT THEY ARE UNHAPPY WITH THE WAY THIS LITIGATION
 8    HAS PROCEEDED ON BEHALF OF THE CLASS.
 9              THE WESTON FIRM HAS NOT GIVEN ANY
10    INDICATION THAT IT IS UNHAPPY WITH THE CO-COUNSEL
11    RELATIONSHIP AS TO THE WORK THAT WAS DONE.  AND IT
12    IS NOT INCONSISTENT THAT EVEN THOUGH THEY HAVE A
13    RIGHT TO TERMINATE THEIR COUNSEL, IF THEY DO SO,
14    AND THEY ARE STILL -- AND THEY THEIR LAW FIRM IS
15    LEFT TO BASICALLY TAKE OVER THIS CASE AND THE
16    SETTLEMENT HERE MAY OR MAY NOT HAPPEN BECAUSE THE
17    WESTON FIRM HAS INDICATED THAT THEY WOULD POSSIBLY
18    SEEK GREATER FEES THAN WHAT IS IN THE SETTLEMENT
19    TERM SHEET.
20              THAT IS ABUSIVE OF THE CLASS ACTION
21    PROCEDURE, YOUR HONOR.  AND IF THEY DO SO I
22    RESPECTFULLY SUBMIT TO THE COURT THAT BY
23    TERMINATING BOTH BECK & LEE AND THE REESE RICHMAN
24    THEY'RE ACTING IN CONTRAVENTION TO THE INTEREST OF
25    THE CLASS AND THEY BE SEEN AS OPT OUTS OF THE
```

```
1    CLASS, YOUR HONOR.  THEY BE SEEN AS OPT OUTS OF THE
2    CLASS.
3             THE COURT:  YOU ARE WAY AHEAD OF WHERE I
4    AM.  I DON'T REGARD THEM AS HAVING ANY AUTHORITY TO
5    TERMINATE REESE RICHMAN AS LEAST AS TO THIS CASE
6    BECAUSE I DON'T RECOGNIZE REESE RICHMAN AS THEIR
7    LAWYERS FOR PURPOSES OF THIS CASE.
8             SO REESE RICHMAN COMES TO THE CASE
9    REPRESENTING A DIFFERENT SET OF PEOPLE, I PRESUME.
10            MS. BECK:  WELL, THEY DID FILE A NOTICE
11   OF APPEARANCE IN THIS CASE.
12            THE COURT:  AS COUNSEL FOR PLAINTIFFS.
13            MS. BECK:  YES, YOUR HONOR.
14            THE COURT:  WHERE IS REESE RICHMAN?
15   MR. REESE?
16            MR. REESE:  GOOD MORNING, YOUR HONOR.
17   MICHAEL REESE FROM REESE RICHMAN.     THAT WAS
18   CORRECT.  WE FILED A NOTICE OF APPEARANCE ON BEHALF
19   OF THE REDS AND MS. WHITT IN THIS MATTER.
20            THE COURT:  SO THEY RETAINED YOU ALSO?
21            MR. REESE:  THAT'S CORRECT.
22            THE COURT:  WHEN?
23            MR. REESE:  FEBRUARY OF 2010.
24            THE COURT:  YOU MET WITH THEM AND THEY
25   SIGNED A CONTRACT WITH YOUR FIRM?
```

```
1              MR. REESE:  THIS WAS BASED ON THE JOINT
2      PROSECUTION AGREEMENT.  MR. WESTON SAID WE HAD THE
3      RIGHT TO REPRESENT THEM.  MR. WESTON ALSO HAD THE
4      RIGHT TO REPRESENT MR. ROSEN.
5              THE COURT:  LET'S ME SEE IF I CAN
6      UNBUNDLE THAT.
7              IN OTHER WORDS, IN THIS JOINT PROSECUTION
8      AGREEMENT, I WAS TREATING THAT AS A CONTRACT AMONG
9      THE LAWYERS.  BUT YOU TREAT IT AS THOUGH IT WAS
10     MR. WESTON'S STATEMENT ON BEHALF OF THE PLAINTIFFS,
11     YOU ARE RETAINED AS COUNSEL FOR PLAINTIFFS?
12             MR. REESE:  THAT'S CORRECT.
13             THE COURT:  DO YOU HAVE A COPY OF THAT?
14             MS. BECK:  YOUR HONOR, WE FILED, IF YOU
15     COULD -- IF THE COURT WILL BEAR WITH ME, I WILL
16     FIND THE DOCUMENT.
17             THE COURT:  IF YOU FILED IT, I SHOULD
18     HAVE IT.
19             MS. BECK:  IT'S THE DECLARATION.
20             THE COURT:  THE JOINT PROSECUTION
21     AGREEMENT.
22             MS. BECK:  YES, YOUR HONOR.  IT IS
23     EXHIBIT 1 TO DOCKET NUMBER 81.
24             THE COURT:  I DON'T THINK OF THINGS IN
25     NUMBERS, WHOSE DECLARATION IS IT?
```

1          MS. BECK:  IT'S MY DECLARATION,

2   SUPPLEMENTAL DECLARATION OF ELIZABETH LEE BECK,

3   FILED ON AUGUST 27TH.

4          YOUR HONOR, I WOULD ALSO LIKE TO

5   MENTION --

6          THE COURT:  JUST A MOMENT, ONE THING AT A

7   TIME.

8

9          MS. BECK:  IT'S THE DECLARATION OF GERALD

10  H. BECK.

11         THE COURT:  CAN'T FIND IT READILY, SO IF

12  YOU HAVE AN EXTRA COPY OF THIS REPRESENTATION

13  AGREEMENT, I WOULD LIKE TO SEE IT.

14         MS. BECK:  IT'S THE ONLY COPY WE HAVE BUT

15  I WILL BE HAPPY TO BRING IT UP.

16         THE COURT:  GIVE IT TO THE CLERK.

17         THE COURT:  YOU'VE SEEN THIS?

18         MR. WESTON:  YES, YOUR HONOR.

19         YOU MAY NOTE ON ITS FACE IT SAYS IT IS

20  VOID UNLESS IT HAS THE CLIENT'S APPROVAL.  AND YOU

21  HAVE NO CLAIM THAT THE CLIENTS HAVE APPROVED IT.

22         MS. BECK:  I'VE ALSO SUBMITTED TO THE

23  COURT EXHIBIT 1 TO MY DECLARATION WHICH IS AN

24  E-MAIL FROM MR. WESTON TO MYSELF AND MICHAEL REESE

25  SAYING HE JUST REPRESENTED TO THE COURT,

1   YOUR HONOR, THAT THE PLAINTIFFS NEVER HIRED US.

2          BUT IN THE E-MAIL THAT HE WROTE TO US

3   SOMETHING, THAT I JUST SUBMITTED TO THE COURT,

4   FILED ON ECF, IN THAT E-MAIL HE STATES TO US THE

5   CLIENT AGREEMENTS PERMIT OTHER LAW FIRMS TO

6   PARTICIPATE, SO I DON'T THINK IT'S NECESSARY THAT

7   WE SIGN ANOTHER AGREEMENT.

8          THAT IS A DIRECT MISREPRESENTATION.

9          THE COURT:  LET ME READ THIS.

10         WELL, I BRIEFLY REVIEWED THIS DOCUMENT

11  THAT'S MARKED EXHIBIT A.  WHICH IS PART OF WHAT

12  APPEARS TO BE DOCUMENT 73-1 FILED ELECTRONICALLY

13  FILED PERHAPS IN THIS CASE, IT DOESN'T HAVE --

14         MS. BECK:  YES, IT WAS FILED IN THIS CASE

15  YOUR HONOR.

16         THE COURT:  ALL RIGHT.  THEN I LOOKED AT

17  THIS E-MAIL.  I CAN'T WHAT IS IT YOU THINK IS

18  IMPORTANT FROM THIS E-MAIL.

19         MS. BECK:  THAT E-MAIL SHOWS THAT

20  MR. WESTON A'S ENTIRE BASIS FOR TERMINATING HAVING

21  HIS CLASS ACTION REPRESENTATIVES TERMINATE

22  CO-COUNSEL IS, WELL, YOU KNOW, THEY NEVER SIGNED AN

23  AGREEMENT WITH YOU.

24         BUT THAT E-MAIL SHOWS THAT MR. WESTON

25  KNEW ALL ALONG THAT THE AGREEMENT WITH HIS CLIENTS

31

PERMITTED OTHER ATTORNEYS TO FILE, TO WORK ON THEIR

BEHALF.  AND I THINK THAT THAT IS INCREDIBLY BAD

FAITH TO HAVE -- TO LITIGATE A CASE ON BEHALF OF A

CLASS AND ON THE EVE OF A SETTLEMENT JUST FIRE

EVERYBODY.

I THINK THAT THAT BEHAVIOR COULD REEK

HAVOC IN CLASS ACTIONS, YOUR HONOR.

THE COURT:  WHAT I WAS ATTEMPTING TO DO

IS TO SEPARATE THAT FROM THE ON GOING CASE.

WHAT'S THE POSITION OF THE TWO LAW FIRMS

THAT THE PLAINTIFFS INDICATE THEY WISH TO TERMINATE

AS TO WHY YOU WOULDN'T BE PROTECTED FOR THE WORK

YOU'VE DONE TO DATE BY YOUR JOINT PROSECUTION

AGREEMENT?

MS. BECK:  WELL YOUR HONOR, I WOULD FIRST

LIKE TO STATE THAT THERE ARE CONCERNS ABOUT THE

ADEQUACY OF BOTH THE CLASS REPRESENTATIVES AND THE

COUNSEL FOR THE CLASS.  THAT WOULD BE THE FIRST

CONCERN.  BUT --

THE COURT:  WHY WOULD THAT HAVE ANYTHING

TO DO WITH THE JOINT PROSECUTION AGREEMENT?

MR. REESE:  IF I MAY FIELD THIS, IF

THAT'S OKAY.  IT'S BECAUSE MR. WESTON SUED BOTH MY

FIRM AND MS. BECK'S FIRM SAYING THAT THAT AGREEMENT

IS NULL AND VOID BECAUSE I NEVER TOLD MY CLIENTS

ABOUT IT.

HE'S FILED A FEDERAL ACTION AGAINST BOTH
OF OUR FIRMS IN THE SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION ASKING FOR DECLARATORY JUDGMENT
FROM THE COURT DOWN THERE THAT THAT CONTRACT IS
UNENFORCEABLE

THE COURT:  LET ME SEE.  MAYBE THAT
CREATES A CONFLICT.

BUT IT SEEMS TO ME IN THE COURSE OF THAT
LITIGATION, THAT JUDGE WILL DECIDE WHETHER OR NOT
THIS AGREEMENT IS VALID OR INVALID.  CORRECT?

MR. REESE:  THAT'S POSSIBLE; THAT'S
CORRECT.

THE COURT:  I ALSO READ THAT THERE'S AN
ARBITRATION CLAUSE IN THE CONTRACT ITSELF.

SO I WON'T GET INTO WHETHER, BECAUSE THAT
CASE IS NOT PENDING BEFORE ME, BUT WHAT I'M TRYING
TO GET TO IS AND MAYBE THE CONFLICT OF INTEREST IS
THE ANSWER.

WHAT IS IT ABOUT THE FACT THAT THERE'S A
DISPUTE OVER THE JOINT PROSECUTION AGREEMENT THAT
AFFECTS THE RIGHT OF THE PLAINTIFFS TO CHOOSE THE
LAWYER TO GO FORWARD WITH THE LITIGATION?

MS. BECK:  YOUR HONOR, THE ONLY -- THE
DISPUTE AS TO THE ENTITLEMENT OF FEES, YOUR HONOR,

IS A DISPUTE THAT IS OUR POSITION AND REESE
RICHMAN'S POSITION TO BE RESOLVED ANOTHER DAY.  IT
DOESN'T AFFECT THE CLASS, IT'S A DISPUTE TO BE
RESOLVED ANOTHER DAY.

        BUT THE DISPUTE HERE, YOUR HONOR, THE
DISPUTE THAT HAS BROUGHT EVERYTHING TO A GRINDING
HALT IS THAT THE WESTON FIRM IS DEMANDED --
UNILEVER HAS SUGGESTED LOOK, WHY DON'T I JUST
SUGGEST THAT I PUT ALL THE ATTORNEY'S FEES INTO A
BANK, A THIRD PARTY TRUST ACCOUNT AT U.S. BANK,
AND, YOU KNOW, YOU PLAINTIFFS FIRMS CAN GO SETTLE
YOUR DISPUTE, AND THIS SETTLEMENT IN RED ON BEHALF
OF THE CLASS IS PROCEED.

        MR. WESTON HAS COMPLETELY REJECTED THAT
PROPOSAL.  HE IS DEMANDING TODAY THROUGHOUT THIS,
EVER SINCE THE SETTLEMENT, TERM SHEET WAS SIGNED,
THE WESTON'S FIRM A POSITION IS NO, NO, NO, NO, ALL
THE FEES MUST COME FROM MY TRUST ACCOUNT.

        REESE RICHMAN HAD RESERVATIONS ABOUT
THAT.  HE SAID, I'M NOT COMFORTABLE, WHY DON'T WE
PUT IT TO THE THIRD PARTY TRUST ACCOUNT.

        AND NOW BECK & LEE HAS RESERVATIONS
BECAUSE THIS WAS THE COMPLAINT THAT WAS FILED IN
THE SOUTHERN DISTRICT OF CALIFORNIA, YOUR HONOR.
IT BASICALLY SAYS IF YOUR HONOR, I CAN SUBMIT IT TO

```
 1   THE COURT BUT IT WAS FILED IN THIS CASE AS AN

 2   EXHIBIT.

 3          BUT IF THAT'S -- WE HAVE RESERVATIONS

 4   ABOUT WHAT MR. WESTON IS DEMANDING ALL THE FEES BE

 5   PUT INTO HIS TRUST ACCOUNT.  AND FROM WHAT I

 6   UNDERSTAND UNILEVER HAS CONCERNS ABOUT THAT.  I

 7   THINK THE BEST OPTION IS TO PUT IT INTO A THIRD

 8   PARTY TRUST ACCOUNT.

 9          THAT'S THE ONLY DISPUTE HERE THAT HAS

10   BROUGHT EVERYTHING TO A GRINDING HALT.  AND ALONG

11   WITH MY CONVERSATION WITH MS. SUTTON WITH NO NOTICE

12   WHATSOEVER --

13          THE COURT:  LET ME DISRUPT YOU.

14          SO ON BEHALF OF THE PLAINTIFFS,

15   MR. WESTON, IS IT THE INTENT OF THE PLAINTIFF SO

16   FAR AS YOU KNOW AT THIS POINT TO PROCEED WITH THE

17   SETTLEMENT BUT FOR THIS QUESTION HAVING TO DO WITH

18   THE FEES?

19          MR. WESTON:  THAT'S CORRECT, YOUR HONOR.

20   WE SUBMITTED A FULL SETTLEMENT AGREEMENT BASED ON

21   THE TERM SHEET TO THE DEFENDANT.

22          MY CLIENTS VIEWED IT AND BELIEVE IT'S

23   GOOD FOR THE CLASS.  AND WE ARE PREPARED TO SUBMIT

24   IT.

25          THE COURT:  AND UNILEVER IS CONTENT WITH
```

THE SETTLEMENT?

MR. STERN:  WE ARE, YOUR HONOR.

THE COURT:  SO THAT JUST AS TO THE RED ACTION, IT SEEMS TO ME THAT -- WHAT IS YOUR OBJECTION TO PUTTING THE SETTLEMENT PROCEEDS, WHATEVER THEY ARE, INTO A THIRD PARTY ACCOUNT TO BE DISTRIBUTED ACCORDING TO FURTHER ORDERS OF THE COURT?

MR. WESTON:  FIRST OF ALL, THAT THIS ACTUALLY INVOLVES TEN DIFFERENT ACTIONS AND HAVING THEM DISPUTE WITH ME OVER AND DELAY SETTLEMENT WHICH HAS OCCURRED HERE ALREADY, IN 10, 11, 12 DIFFERENT ACTIONS, THERE'S SEVERAL CONTEMPLATED ACTIONS THAT MY FIRM WILL LIKELY FILE IN THE COMING YEAR, IS GROSSLY INEFFICIENT.

I WOULD POINT OUT THAT YOUR HONOR'S SUGGESTION THAT THIS IS A MATTER FOR THE OTHER CASE IS ONE THAT HAS BEEN ADOPTED BY THE NINTH CIRCUIT IN MOORE V. TEFLON.  THERE THE COURT SAID THE DETERMINATION OF FEES WOULD HAVE BEEN A TIME CONSUMING ACTIVITY WHICH WOULD HAVE SUBJECTED THE OPPOSING PARTIES AND THE COURT TO DELAY IN VEXATION --

THE COURT:  I DON'T FEEL VEXED AT ALL BUT I DO FEEL YOU HAVEN'T ANSWERED MY QUESTION EXCEPT

1   FOR EFFICIENCY.

2            SAY AGAIN, WHAT IS YOUR OBJECTION TO

3   PUTTING -- SINCE THERE'S AN AGREED SETTLEMENT, BUT

4   THERE IS ADMITTED TO BE DISPUTES AMONG THE LAWYERS

5   WITH RESPECT TO THE HANDLING AND THE DISTRIBUTION

6   OF FEES AND ALL OF THAT, WHAT IS YOUR OBJECTION TO

7   PUTTING THE PROCEEDS OF THE SETTLEMENT SO THE CLASS

8   IS PROTECTED AND NOT INVOLVED IN ONE LAWYER'S

9   SAYING, WELL, I GET ALL THE MONEY OR I GET SOME

10  PORTION OF IT INCONSISTENT, AND SINCE THAT'S IN

11  YOUR ACCOUNT, YOU CAN TELL THE BANK TO DO WHATEVER

12  YOU WOULD WISH TO DO WITH THE MONEY.

13           WHAT WOULD BE YOUR OBJECTION TO THE MONEY

14  BEING HELD IN A THIRD PARTY TRUST ACCOUNT?

15           MR. WESTON:  MY OBJECTION IS THAT -- WE

16  HAVE A SECTION HERE.  THE ONLY RECOURSE OF THE

17  TERMINATED FIRMS IS AGAINST THE WESTON FIRM.

18           I AM NOT PERMITTED TO SHARE FEES WITHOUT

19  THE CONSENT MIGHT HAVE CLIENTS, AND THEY HAVE

20  REFUSED CONSENT, AND I THINK THAT'S THE RIGHT

21  COURSE OF ACTION TO REFUSE CONSENT.

22           THE COURT:  THAT GOES TO THE MERITS OF

23  WHETHER THIS JOINT PROSECUTION AGREEMENT HAS

24  VALIDITY AND WHETHER IT SHOULD GOVERN THE

25  DISTRIBUTION OF FUNDS.

1    SO IT DOES SOUND TO ME LIKE THERE'S A

2    LEGITIMATE CONCERN, IF YOU TAKE THAT POSITION, THAT

3    CONSISTENT WITH YOUR POSITION YOU CAN SAY, I CAN'T

4    SHARE FEES, I'VE SPENT ALL THE MONEY.

5           MR. WESTON:  I DON'T THINK THEY SHOWED

6    LEGAL ENTITLEMENT TO HAVE THE FUNDS FROZEN.

7           THE COURT:  THEY HAVE SHOWN LEGAL

8    ENTITLEMENT AS A RESULT OF A JOINT PROSECUTION

9    AGREEMENT.

10          MR. WESTON:  YOUR HONOR, WE HAVE A NUMBER

11   OF CASES IN HERE, BUT THAT AGREEMENT IS VOID ON ITS

12   CASE.

13          THE COURT:  UNTIL IT'S DECLARED VOID.

14          IN OTHER WORDS, THERE'S LITIGATION

15   SOMEBODY HAS RAISED OVER THIS, I HEARD YOU FILED

16   IT.

17          MR. WESTON:  YES.

18          THE COURT:  SO YOU ARE NOT THE JUDGE.

19   YOU CAN'T DECIDE IT'S VOID ON ITS FACE.

20          IT DOES SEEM TO ME, THEN, THAT THE

21   COURT'S ACTION OF TERMINATING THE LAWYERS MIGHT

22   HAVE EVIDENTIARY VALUE IN THIS DISPUTE.

23          IT DOES SEEM TO ME THAT RATHER THAN MY

24   MAKE A JUDGMENT ABOUT THE EFFECT OF THIS JOINT

25   PROSECUTION AND WHO HAS THE AUTHORITY, THE

```
 1    PLAINTIFFS CERTAINLY AS INDIVIDUALS HAVE THE RIGHT

 2    TO DESIGNATE THEIR LAWYERS.

 3           BUT IF THEIR EXPRESSED INTENT IS TO

 4    PROCEED WITH THE SETTLEMENT WHICH WAS NEGOTIATED

 5    WHEN ALL THREE FIRMS WERE REPRESENTING THEM, THAT

 6    FOR ME NOW TO TAKE A POSITION TERMINATING ONE FIRM

 7    OR THE OTHER COULD AFFECT THE ULTIMATE DISTRIBUTION

 8    OF THE FUNDS.

 9           SO IT SEEMS TO ME THE WISEST THING FOR

10    THE COURT TO DO WOULD BE TO ORDER THE FUNDS PLACED

11    INTO A THIRD PARTY ACCOUNT TO APPOINT SOMEONE TO

12    HOLD ON TO THAT ACCOUNT AND ONLY DISBURSE THE FUNDS

13    ACCORDING TO FURTHER ORDER OF THIS OR ANY OTHER

14    COURT THAT HAS JURISDICTION OF THOSE FUNDS BECAUSE

15    IT SOUNDS LIKE THE FUNDS ARE INVOLVED IN OTHER

16    LITIGATIONS, IT BEHOOVES THE PARTIES, PERHAPS, TO

17    PUT IT ALL IN ONE PLACE, BUT I WILL LEAVE THAT AS

18    IT IS.

19           AND TO DENY THE MOTION.  IT PAINS ME TO

20    DO SO BECAUSE IT'S IN YOUR INTEREST TO GO THROUGH

21    WITH THE SETTLEMENT AND IT SOUNDS LIKE THE MOST

22    EXPEDITIOUS WAY.

23           IF I MAKE AN ORDER HERE, THERE PROBABLY

24    ARE WRITS AND APPEALS THAT CAN BE TAKEN FROM THAT.

25    AND IF I DON'T TAKE ANY ACTION AND SIMPLY PUT THE
```

MONEY IN AND SAY, LET'S FIGURE OUT WHERE THE MONEY
GOES, ACCORDING TO THE SETTLEMENT EVERYBODY AGREES
THAT'S THE MOST EFFICIENT WAY, THAT'S THE ORDER I
WILL MAKE.

THANK YOU ALL VERY MUCH.  YOU CAN HAVE
YOUR DOCUMENT BACK BECAUSE I THINK I PROBABLY HAVE
MINE.

MS. BECK:  YOUR HONOR, I BEG THE COURT'S
PARDON.  DID THE COURT GRANT OR DENY THE MOTION TO
TERMINATE OR AFFIRM?

THE COURT:  I WILL WRITE MY ORDER.

THE TENTATIVE DECISION OF THE COURT IS TO
DENY THE MOTION UNDER THE CIRCUMSTANCES.

MR. WESTON:  YOUR HONOR, MAY I MAKE
ANOTHER POINT?

THE COURT:  CERTAINLY.

MR. WESTON:  OKAY.  THANK YOU,
YOUR HONOR.

I WOULD DIRECT THE COURT TO EXHIBIT M OF
MY DECLARATION AND ITS CONTENTS.  IN IT THIS IS
WHAT MS. BECK SAID TO ME SEVERAL MONTHS AGO.

MS. BECK:  YOUR HONOR, MR. WESTON FILED A
LOT OF --

MR. WESTON:  YOU WANT TO ARBITRATE THIS
FEE FIGHT.  YOU SAID, YOU WANT TO TAKE THIS TO THE

```
1    COURT AND ARBITRATE OUR WORKING RELATIONSHIP OVER A
2    CRUMMY FIRST SETTLEMENT.  IS THE UNILEVER
3    SETTLEMENT THAT IMPORTANT TO YOU, BECAUSE IT'S NOT
4    TO ME IN THE GRAND SCHEME OF THINGS.  I DON'T GET
5    SCREWED OVER AS A MATTER OF PRINCIPLE EVEN IF IT'S
6    OVER A NICKEL.
7             YOUR HONOR, THEY DISRUPTED THE SETTLEMENT
8    AND PART OF THE SETTLEMENT REQUIRES THE PARTIES TO
9    MEET AND CONFER ON A VERY SUBSTANTIAL TERM HOW
10   UNILEVER WILL BENEFIT THE CLASS BY REMOVING OR
11   REDUCING THE AMOUNT OF TRANS FAT IN ITS SOLID
12   MARGARINES THAT REQUIRES MEET AND CONFER PROCESS.
13            AND UNILEVER IS NOT GOING TO BE ABLE TO
14   DO THAT UNLESS WHO REPRESENTS THE CLIENTS IS
15   DETERMINED.
16            THE COURT:  WELL, I THINK THAT FOR
17   PURPOSES OF THE SETTLEMENT WHENEVER THAT SETTLEMENT
18   IS PRESENTED TO ME I CAN DEAL WITH THAT.
19            I DON'T CARE TO BE INVOLVED IN THE
20   INFORMAL COMMUNICATIONS THAT COUNSEL EXCHANGE
21   BETWEEN AND AMONG THEMSELVES, AND SOMETIME YOU USE
22   LANGUAGE THAT YOU WOULD NEVER USE BEFORE THE COURT.
23   I UNDERSTAND THAT.  I PRACTICED LAW MYSELF FOR
24   15 YEARS.
25            SO I MADE MY DECISION.  THANK YOU, ALL.
```

```
 1            MR. WESTON:  THANK YOU, YOUR HONOR.

 2            (WHEREUPON, THE PROCEEDINGS IN THIS

 3   MATTER WERE CONCLUDED.)

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22             _____
               SUMMER A. FISHER, CSR, CRR
23             CERTIFICATE NUMBER 13185

24

25

# EXHIBIT B

*WCS*

Plaintiffs' counteroffer to Unilever, expiring on June 21 at 9:00 a.m. PDT. *Unilever Conopco, Inc., Unilever United States, Inc., Unilever N.V., and*

1. National class-wide 23(b)(2) injunctive settlement. Complete "Section 1542" release for
Unilever PLC and its wholly-owned subsidiaries, including known and unknown claims for
all soft spread and stick brands manufactured by Unilever, including private brand labels.
Both lawsuits and *Rosen* appeal to be dismissed with prejudice upon final approval of the
settlement.

2. No admission of liability and no press statements or press releases.

3. Unilever agrees that after December 31, 2011 and continuing for ten years thereafter it
will not include PHVO in any of its soft spread products that are being released as part of
point 1, above. The parties to meet/confer to discuss the monetary value to attribute in
the Settlement Agreement to this concession.

4. The parties agree to meet and confer to discuss methods Unilever, as indicated by its
counsel, is currently undertaking to reduce its use of PHVO in its hard margarines
portfolio, with the understanding that Unilever will include at least some concession
relating to its hard margarine portfolio, which plaintiffs believe would be required in order
that a settlement releasing hard margarine claims survive judicial and possible objector
scrutiny. Such terms that Unilever agrees to consider include (1) placing the phrase "see
the Nutrition Facts for other important information" below the phrase "no cholesterol" (2)
agreeing to reduce the amount of trans fat per serving in Unilever's Willow Run hard
margarine, which Plaintiffs' research indicates currently has 3g of trans fat per serving, to
the same 1.5g trans fat per serving in Imperial hard margarine (3) agreeing to fund
research in developing commercially acceptable alternatives to PHVO by certain levels
(4) agreeing to modify the vegetable oil blend used in hard margarines such that the level
of trans fat per serving is reduced, even if the reduction does not reach the 0.5g per
serving threshold to result in a label change, for instance substituting 5% of the PHVO
used in the current formulation of Imperial with the same amount of fully hydrogenated
vegetable oil.

5. Personal injury claims excluded from release.

6. Unilever to withdraw without prejudice its Motion to Dismiss, currently set for hearing
June 21, 2010, once the parties reach written agreement on the terms of the proposed
class settlement. If settlement is not reached or is not preliminarily or finally approved by
the Court, Unilever reserves the right to refile its MTD.

7. Unilever pays for notice costs, not to exceed $50,000, under the following proposed
budget: (1) $30,000 for display ad in Parade Magazine or USA Today; (2) $2,000 for
settlement website; (3) $17,000 for web ads targeted at US residents advertising the
website (4) $1,000 for the preparation of a declaration by an advertising consultant
describing the notice plan.

8. Unilever will pay and not oppose a request for attorneys' fees to the *Red* and *Rosen* counsel that does not exceed $490,000. That amount will be sent in the form of a check ~~or a wire transfer~~ made to the Weston Firm Trust Account located in Santa Clara County, California within 14 days of an order preliminarily approving the settlement. In the event the settlement does not receive final approval, the funds will be returned to Unilever.

9. Unilever will pay and not oppose a request for incentive award of $4,500 per class representative.

Agreed:

On behalf of Plaintiffs in the *Red* and *Rosen* cases:

Dated: June 21, 2010            ELIZABETH LEE BECK, ESQ.

Beck & Lee Business Trial Lawyers

By: _____
Elizabeth Lee Beck

On behalf of Defendants in the *Red* and *Rosen* cases:

Dated: June 21, 2010            Morrison & Foerster, LLP

By: _____
William L. Stern

# EXHIBIT C

**Gregory S. Weston**

| | |
|---|---|
| **From:** | Gregory S. Weston [greg@westonfirm.com] |
| **Sent:** | Thursday, August 19, 2010 4:10 PM |
| **To:** | 'wstern@mofo.com' |
| **Subject:** | Settlement Communication - Red et al v Unilever |
| **Attachments:** | Blackline 2- Settlement Agreement.pdf; UNILEVERROSENRED Settlement Agreement - GW edits.DOC |

Dear Will,

Attached are my clients' offer to settle and release all margarine labeling claims against Unilever on a nationwide basis, together with a blackline from the version proposed by Unilever.

It occurs to me that we might add as the last sentence to 1.1 that the Rosen action was dismissed with prejudice and judgment entered against the sole plaintiff on [date].

Sincerely,
Greg Weston

THE WESTON FIRM
GREGORY S. WESTON
888 Turquoise St
San Diego, CA 92109
858.488.1672 (Phone) | 480.247.4553 (Fax)
GREG@WESTONFIRM.COM | WWW.WESTONFIRM.COM

1  ~~MICHAEL R. REESE (CA SBN 206773)~~
   ~~mreese@reeserichman.com~~
2  ~~Kim E. Richman~~
   ~~krichman@reeserichman.com~~
3  ~~REESE RICHMAN LLP~~
   ~~875 Avenue of the Americas, 18th Floor~~
4  ~~New York, New York, 10001~~
   ~~Telephone: (212) 643-0500~~
5  ~~Facsimile: (212) 253-4272~~
   ~~Attorney for Plaintiff in the *Rosen* action~~
6
7  GREGORY S. WESTON (CA SBN 239944)
   greg@westonfirm.com
8  THE WESTON FIRM
   888 Turquoise Street
9  San Diego, California 92109
   Telephone: (858) 488-1672
10 Facsimile: (480) 247-4553
11 JACK FITZGERALD (CA SBN 257370)
   jack@westonfirm.com
12 2811 Sykes Court
   Santa Clara, CA 95051
13 Telephone: (408) 459-0305
   Facsimile: (480) 247-4553
14
15 Attorneys for Plaintiffs ~~in~~and the ~~*Red*~~
   ~~action~~Proposed Class
16 ~~(additional plaintiffs' counsel listed on~~
   ~~signature page)~~
17

   WILLIAM L. STERN (CA SBN 96105)
   wstern@mofo.com
   JANELLE J. SAHOURIA (CA SBN 253699)
   jsahouria@mofo.com
   MORRISON & FOERSTER LLP
   425 Market Street
   San Francisco, California 94105-2482
   Telephone: 415.268.7000
   Facsimile: 415.268.7522

   Attorneys for Defendant
   CONOPCO, INC. (sued herein as
   UNILEVER UNITED STATES, INC.)

18                    UNITED STATES DISTRICT COURT

19         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

20

21

22

23

24

25

26

27

28

AMNON ROSEN, et al.,

Case No.    C-09-02563 JW

Case No.    C-10-00387 JW

EVANGELINE RED, et al.JENNIFER RED, AND RACHEL WHITT, on behalf of themselves and all others similarly situated,

PlaintiffPlaintiffs,

v.

UNILEVER UNITED STATES, INC.,

Defendant.

**CLASS ACTION**

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE AND PROPOSED PRELIMINARY APPROVAL ORDER (EXHIBIT A); CLASS NOTICE (EXHIBIT B); FINAL APPROVAL ORDER (EXHIBIT C); FINAL JUDGMENT (EXHIBIT D)**

Judge:  Hon. James Ware

proceeding where the releases or covenants not to sue provided pursuant to the Settlement

Agreement may serve as a bar to recovery.

**8.      SETTLEMENT BENEFITS AND INJUNCTIVE RELIEF**

8.1      Defendant agrees that in consideration of the Releases set forth in Article 4,

Defendant will provide the benefits described below.

8.2      <u>Elimination of Partially Hydrogenated Oils and Artificial Trans Fat from
Defendant's Soft Spread Products</u>.  Under the Settlement Agreement, Defendant will be required

to continue its efforts and/or initiate efforts to remove or reduce levels of partially hydrogenated

vegetable oils and artificial trans fat from its Soft Spread and Stick Products and Private Label

Products.

8.3      After December 31, 2011 and continuing until December 31, 2021, Defendant

agrees that it will not include partially hydrogenated vegetable oil in any of its soft spread

products that are being released under this Settlement Agreement.  .

8.4      <u>Addressing Partially Hydrogenated Oils and Artificial Trans Fat in Stick Products</u>.

~~Unilever shall include one or more of the following concessions relating to its hard margarine~~

~~("stick") portfolio:  (1) placing the phrase "see the Nutrition Facts for other important~~

~~information" below the phrase "no cholesterol"; (2) agreeing to reduce from 3 grams per serving~~

~~to 1.5 g (one and a half grams) or lower the amount of trans fat per serving in Unilever's Willow~~

~~Run® hard margarine; (3) agreeing to fund research in developing commercially acceptable~~

~~alternatives to partially hydrogenated vegetable oils; (4) agreeing to modify the vegetable oil~~

~~blend used in hard margarines such that the level of trans fat per serving is reduced, even if the~~

~~reduction does not reach the 0.5 g (one-half gram) per serving threshold to result in a label change~~

~~(for instance substituting 5% (five percent) of the PHVO used in the current formulation of~~

~~Imperial® with the same amount of fully hydrogenated vegetable oil).__  Unilever shall undertake

at least $1.4 million in research, development, and consumer testing expenses in each of the next

five calendar years, starting with 2011 and ending in 2015, toward the goal of developing

commercially acceptable hard margarines that are free of or have a reduced amount of Artificial

Trans Fat. By April 1 following the end of each year, starting on April 1, 2012, Unilever shall provide Class Counsel with a declaration made under penalty of perjury that it is spent more than $1.4 million toward this goal.

Unilever's obligation under this section will terminate, however, immediately upon it ceasing to produce any variety of Imperial Margarine that contains 2.0g or more of trans fat per serving, using the method of trans fat Nutrition Panel measuring methods. If this occurs in the middle of a calendar year, in lieu of a declaration of R&D spending as described above that calendar year, Unilever shall provide  declaration that it has changed the formula for these products such that the Nutrition Panel may bear the statement that it contains 1.5, 1.0, 0.5, or 0 grams of trans fat per serving.

8.5     Defendant is not required to eliminate from its Soft Spread and Stick Products and Private Label Products ~~artificial~~any fats that are not attributed to partially hydrogenated ~~vegetable~~ oils.  To the extent that Defendant substitutes animal-derived products containing natural trans fat (i.e., *trans*-vaccenic acid) which research indicates poses no harm to human health, the quantity of *trans*-vaccenic acid shall not be counted in the total amount of trans fat described in the previous section.

## 9.     NOTICE TO SETTLEMENT CLASS MEMBERS

9.1     If, by entering the Preliminary Approval Order, the District Court provides authorization to publish the Class Notice to Class Members, Defendant will cause the publication of Summary Notice.  A copy of the proposed Class Notice is appended to this Agreement as Exhibits __ and __.

9.2     Summary Notice shall be published in two separate issues of *USA Today* by the Notice Publication Deadline (or the next available edition dates thereafter) of Preliminary Approval.

9.3     Defendant shall publish the Full Notice on the Internet, at http://_____, and make the text of the Full Notice available for downloading via the Internet.   The Full Notice shall

# Exhibit D

| From: | Sahouria, Janelle J. |
|-------|------------------------|
| To: | mreese@reeserichman.com; kim@reeserichman.com; Jared H. Beck; Elizabeth Lee Beck; Gregory S. Weston; Jack Fitzgerald |
| Cc: | Stern, William L. |
| Subject: | Rosen/Red: Updated Settlement Documents for Your Review |
| Date: | Thursday, September 16, 2010 10:00:47 PM |
| Attachments: | SAN_FRANCISCO-#2862832-v10-UNILEVER_ROSEN_RED_Settlement_Agreement.DOC |
| | Redline settlement agreement.pdf |
| | SAN_FRANCISCO-#2868036-v8-UNILEVER_ROSEN_RED__Notice_&_MPA_for_Motion_for_Prelim_Class_Approval.DOC |
| | Redline MPA.pdf |
| Importance: | High |

Dear Counsel,

Attached is the draft settlement agreement and preliminary approval MPA.  Please note that we have done our best to incorporate and reconcile everyone's edits.  **We request that you email us your edits and declarations with exhibits, e.g. resumes, no later than Tuesday, September 28, 2010.**  Please advise if that will be a problem.

We need your help in beefing up the brief to do a better job of selling the settlement.   We need declarations from each of you that fully explain the benefits of the settlement.  Additionally, it would be helpful if your declarations fully outlined your qualifications, and the adequacy of the class representatives and counsel.  We will take your declarations and then further edit and beef up the brief.

I appreciate your cooperation and look forward to working with you over the next few weeks.

Thank you,

Janelle

**Settlement Agreement and Redline to Version Last Circulated**
<<SAN_FRANCISCO-#2862832-v10-UNILEVER_ROSEN_RED_Settlement_Agreement.DOC>> <<Redline settlement agreement.pdf>>


**MPA and Redline to Version Last Circulated**
<<SAN_FRANCISCO-#2868036-v8-UNILEVER_ROSEN_RED__Notice_&_MPA_for_Motion_for_Prelim_Class_Approval.DOC>> <<Redline MPA.pdf>>

---------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

======================================================================


This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
---------------------------------------------------------------------


_____ Information from ESET NOD32 Antivirus, version of virus signature database 5456 (20100916) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

MICHAEL R. REESE (CA SBN 206773)
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York, 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

~~Attorney for Plaintiff in the *Rosen* action~~

GREGORY S. WESTON (CA SBN 239944)
greg@westonfirm.com
JACK FITZGERALD (CA SBN 257370)
jack@westonfirm.com
THE WESTON FIRM
888 Turquoise Street
San Diego, California 92109
Telephone: (858) 488-1672
Facsimile: (480) 247-4553

JARED H. BECK (CA SBN 233743)
jared@beckandlee.com
ELIZABETH LEE BECK (CA SBN 233742)
elizabeth@beckandl

WILLIAM L. STERN (CA SBN 96105)
wstern@mofo.com
JANELLE J. SAHOURIA (CA SBN 253699)
jsahouria@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: ~~415.268.7000~~ (415) 268-7000
Facsimile: ~~415.268.7522~~ (415) 268-7522

Attorneys for Defendant CONOPCO, INC. (sued herein as UNILEVER UNITED STATES, INC.)

~~8.3     After December 31, 2011 and continuing until December 31, 2021, Defendant agrees that it will not include partially hydrogenated vegetable oil in any of its soft spread products that are being released under this Settlement Agreement.  .~~

8.2     ~~8.4~~ Addressing Partially Hydrogenated Oils and Artificial Trans Fat in Stick Products.  Unilever shall include one or more of the following concessions relating to its hard margarine ("stick") portfolio:  (1) placing the phrase "see the Nutrition Facts for other important information" below the phrase "no cholesterol"; (2) agreeing to reduce from 3 grams per serving to 1.5 g (one and a half grams) or lower the amount of trans fat per serving in Unilever's Willow Run® hard margarine; (3) agreeing to fund research in developing commercially acceptable alternatives to partially hydrogenated vegetable oils; (4) agreeing to modify the vegetable oil blend used in hard margarines such that the level of trans fat per serving is reduced, even if the reduction does not reach the 0.5 g (one-half gram) per serving threshold to result in a label change (for instance substituting 5% (five percent) of the ~~PHVO~~partially hydrogenated vegetable oil used in the current formulation of Imperial® with the same amount of fully hydrogenated vegetable oil).

8.3     ~~8.5~~ Defendant is not required to eliminate from its Soft Spread and Stick Products and Private Label Products ~~artificial~~any fats that are not attributed to partially hydrogenated vegetable oils.

**9.      NOTICE TO SETTLEMENT CLASS MEMBERS**

9.1     If, by entering the Preliminary Approval Order, the District Court provides authorization to publish the Class Notice to Class Members, Defendant will cause the publication of Summary Notice.  A copy of the proposed Class Notice is appended to this Agreement as Exhibits __ and __.

9.2     Summary Notice shall be published in two separate issues of *USA Today* by the Notice Publication Deadline (or the next available edition dates thereafter) of Preliminary Approval.

9.3     Defendant shall publish the Full Notice on the Internet, at http://_____, and make the text of the Full Notice available for downloading via the Internet.   The Full Notice shall

# EXHIBIT E

# CitiBusiness Account Opening Confirmation

CITIBANK, N.A.

As per your request, we have opened the following account for you on **6/23/2010** at our **SANTA CLARA** branch:

Your account is titled:
**THE WESTON FIRM**

Your Tax Identification Number Is:
<span>█████ Redacted</span>

Your account mailing address is:

**THE WESTON FIRM**
**888 TURQUOISE ST**
**SAN DIEGO, CA 92109**

| Account Type | Account Number | Deposit Opening Balance | Annual Interest Rate | Annual Percentage Yield |
|---|---|---|---|---|
| **IOLTA INTEREST CHKNG** | █████ Redacted | **$50,000.00** | **Refer to rate sheet** | **Refer to rate sheet** |

THANK YOU FOR BANKING AT CITIBANK

We want to help you manage all your money any time, anywhere, any way
you choose.  For assistance with your account or information on Citibank
services, call the CitiBusiness Service Center
at
1-877-528-0990
24 hours a day, 7 days a week

For the Hearing and Speech impaired only
call our Text Telephone: 800-945-0258

- Additional information is contained in our Citibank Client Manual.

# EXHIBIT F

Look.  What a simpleminded threat.  He's threatening that he's racked up a lot of hours.

Don't mind him.

------Original Message------
From: Michael Reese
To: Elizabeth Lee Beck
To: Greg Weston
To: Kim Richman
Subject: Unilever
Sent: Jun 22, 2010 8:40 PM

Elizabeth -  is the agreement on attorneys fees that we won't seek
more than $490,000, or are we not so limited?  If the latter, we are
considering whether to request more than that.

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:   (212) 253-4272


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===========================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
===========================================

# EXHIBIT G

Gawd. Referencing an agmt he breached himself more ways than one

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Friday, June 25, 2010 12:32 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Actually, I don't understand your comments regarding experience/competence. As you are aware, we have handled cases exaclty like this before (Wendys) and were the first to file this case against Unilever.

Also, pursuant to the signed written agreement we have, we also will be involved in the drafting of the settlement agreement. As you can see from the signed agreement we have, it requires the joint involvement on significant documents such as a settlement agreement, as well as other matters such as the 50%/50% split we have on attorney fees.

On Fri, Jun 25, 2010 at 12:22 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
No need, thanks. I think we can handle--we certainly have enough resources.

We also have some concerns about the way Rosen was handled and your
experience/competence--I'm sure you understand. Obviously, we are open to
having our minds changed, but this is something we should discuss on a call.
I would also like to mention that ignoring me for stretches of time and only
popping up when you want something, Michael, and then demanding unilaterally
set calls is really not the way to productively work together.

You didn't even show up for the hearing.

Anyway, I will let you know when we are available for a call.

In the meantime, if you have any questions about the Rosen aspect of the settlement, I suggest you contact Stern/Janelle directly.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

==============================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above.  If you are not the intended recipient, you are hereby notified

that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
==============================================

-----Original Message-----
From: Michael Reese [mailto:mreese@reeserichman.com]
Sent: Thursday, June 24, 2010 7:29 PM
To: Elizabeth Lee Beck
Cc: Gregory S. Weston; Kim Richman
Subject: Re: Unilever

Elizabeth and Greg-

It appears you might be too swamped on other matters to get together to discuss Unilever.  Accordingly, unless I hear otherwise, my firm will start tomorrow on drafting the settlement agreement to be signed by the parties.
Best - Michael

On Tuesday, June 22, 2010, Michael Reese <mreese@reeserichman.com> wrote:
> When then are you available to talk?
>
> On Tuesday, June 22, 2010, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
>> No.
>>
>>

>>
>> ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
>> Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami,
>> Florida 33130
>> 305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
>> elizabeth@beckandlee.com | www.beckandlee.com
>>
>> =============================================
>> The information contained in this e-mail message is confidential, may be
>> attorney privileged, and is intended only for the use of the
individual(s)
>> named above.  If you are not the intended recipient, you are hereby
notified
>>
>> that any dissemination, distribution or copy of this communication is
>> strictly
>> prohibited.  If you have received this communication in error, please
>> contact
>> the sender by reply e-mail and destroy all copies of the original
message.
>> =============================================
>>
>>
>>
>> -----Original Message-----
>> From: Michael Reese [mailto:mreese@reeserichman.com]
>> Sent: Tuesday, June 22, 2010 12:11 PM
>> To: Elizabeth Lee Beck; Gregory S. Weston
>> Cc: Kim Richman
>> Subject: Unilever
>>
>> Is everyone available for a call at 4 pm EST tomorrow?  We want to
>> discuss drafting the settlement agreement as well as a motion to stay
>> the appeal in Rosen.
>>
>> --
>> Michael R. Reese
>> REESE RICHMAN LLP
>> 875 Avenue of the Americas, 18th Floor
>> New York, New York 10001
>> Telephone:  (212) 643-0500
>> Facsimile:  (212) 253-4272
>>
>>
>
> --
> Michael R. Reese
> REESE RICHMAN LLP
> 875 Avenue of the Americas, 18th Floor
> New York, New York 10001

> Telephone: (212) 643-0500
> Facsimile: (212) 253-4272
>

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5229 (20100625) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT H

# Gregory S. Weston

**From:** Stern, William L. [WStern@mofo.com]
**Sent:** Wednesday, July 21, 2010 12:31 PM
**To:** Elizabeth Lee Beck; Jared H. Beck; Gregory S. Weston; michael@reeserichman.com; kim@reeserichman.com
**Cc:** Sahouria, Janelle J.
**Subject:** Rosen and Red v. Unilever
**Attachments:** UNILEVERROSENRED Notice & MPA for Motion for Prelim Class Approval - 5.DOC; UNILEVERROSENRED Settlement Agreement - 6.DOC; UNILEVERROSENRED Decl. of J. Sahouria ISO Motion for Prelim. Class Approval - 2.DOC; UNILEVERROSENRED Final Judgment - 2.DOC; UNILEVERROSENRED Final Approval Order - 2.DOC; UNILEVERROSENRED Declaration of Unilever ISO Motin for Prelim Class Approval - 2.DOC; UNILEVERROSENRED [Proposed] Order Granted Prelim. Class Approval (Ex. A) - 2.DOC; UNILEVERROSENRED Summary Notice of Prelim. Class Approval - 2.DOC

All:

1. Attached please find drafts of the motion papers for preliminary and final approval in this case. We welcome your input and suggestions, in particular, a draft of your supporting declarations and suggestions for improving the section in the brief re strengths/weaknesses of the plaintiff's case. I provided this section as a start, but I also recognize that this is a sensitivity and that the final version will have to be something you are all comfortable with.

2. Most of this is self-explanatory, and you should regard everything as a draft, but there are two other "call outs": (i) The Company declaration is still a work in progress; (ii) there is one deviation from the Term Sheet, which called for the attorneys' fees to be escrowed at Mr. Weston's firm. I changed this to "U.S. Bank." If all counsel were to confirm to me that escrowing at Mr. Weston's firm is acceptable -- you do not need to tell me your internal division -- then we will change this back. But absent that joint instruction, we can't risk exposing ourselves and Unilever to liability.

3. By my calendar, this filing isn't due until September 3, so we have a lot of time. But I wanted to get these drafts to you early, recognizing they are a work in progress, and I want to build in time for us to reach a final we can all sign off on.

4. To the extent you can work together and aggregate your proposed changes into a single document and mark up these drafts, that would be appreciated. If I have omitted anyone on your side from the drafting team, please forward this on.

<<UNILEVERROSENRED Notice & MPA for Motion for Prelim Class Approval - 5.DOC>> <<UNILEVERROSENRED Settlement Agreement - 6.DOC>> <<UNILEVERROSENRED Decl. of J. Sahouria ISO Motion for Prelim. Class Approval - 2.DOC>> <<UNILEVERROSENRED Final Judgment - 2.DOC>> <<UNILEVERROSENRED Final Approval Order - 2.DOC>> <<UNILEVERROSENRED Declaration of Unilever ISO Motin for Prelim Class Approval - 2.DOC>> <<UNILEVERROSENRED [Proposed] Order Granted Prelim. Class Approval (Ex. A) - 2.DOC>> <<UNILEVERROSENRED Summary Notice of Prelim. Class Approval - 2.DOC>>

W

----------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
--------------------------------------------------------------------

Motion for Prelim. Class Approval - 2.DOC>> <<UNILEVERROSENRED Final Judgment - 2.DOC>>
<<UNILEVERROSENRED Final Approval Order - 2.DOC>> <<UNILEVERROSENRED Declaration of Unilever ISO
Motin for Prelim Class Approval - 2.DOC>> <<UNILEVERROSENRED [Proposed] Order Granted Prelim. Class
Approval (Ex. A) - 2.DOC>> <<UNILEVERROSENRED Summary Notice of Prelim. Class Approval - 2.DOC>>

W

------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you
that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication
(including any attachments), such advice is not intended or written to be used, and cannot be used, for
the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

=====================================================================================

This message contains information which may be confidential and privileged. Unless you are the
addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the
message or any information contained in the message. If you have received the message in error, please
advise the sender by reply e-mail @mofo.com, and delete the message.
------------------------------------------------------------------

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5298
(20100721) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT I

| From: | Elizabeth Lee Beck |
|-------|---------------------|
| To: | Jared H. Beck; "Jack Fitzgerald" |
| Cc: | "Gregory S. Weston" |
| Subject: | FW: Rosen and Red v. Unilever |
| Date: | Wednesday, July 21, 2010 12:49:34 PM |
| Attachments: | UNILEVERROSENRED Notice & MPA for Motion for Prelim Class Approval - 5.DOC |
| | UNILEVERROSENRED Settlement Agreement - 6.DOC |
| | UNILEVERROSENRED Decl. of J. Sahouria ISO Motion for Prelim. Class Approval - 2.DOC |
| | UNILEVERROSENRED Final Judgment - 2.DOC |
| | UNILEVERROSENRED Final Approval Order - 2.DOC |
| | UNILEVERROSENRED Declaration of Unilever ISO Motin for Prelim Class Approval - 2.DOC |
| | UNILEVERROSENRED [Proposed] Order Granted Prelim. Class Approval (Ex. A) - 2.DOC |
| | UNILEVERROSENRED Summary Notice of Prelim. Class Approval - 2.DOC |

Fyi.  We should hold off on dealing with him (deal w/him arms length).

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Wednesday, July 21, 2010 3:38 PM
**To:** Gregory S. Weston; Elizabeth Lee Beck
**Subject:** Fwd: Rosen and Red v. Unilever

Let's set up a time to discuss soon.  What is your availability over the next few days?

---------- Forwarded message ----------
From: **Stern, William L.** <WStern@mofo.com>
Date: Wed, Jul 21, 2010 at 3:31 PM
Subject: Rosen and Red v. Unilever
To: Elizabeth Lee Beck <elizabeth@beckandlee.com>, "Jared H. Beck" <jared@beckandlee.com>,
"Gregory S. Weston" <greg@westonfirm.com>, michael@reeserichman.com, kim@reeserichman.com
Cc: "Sahouria, Janelle J." <JSahouria@mofo.com>


All:

1.  Attached please find drafts of the motion papers for preliminary and final approval in this case.  We welcome
your input and suggestions, in particular, a draft of your supporting declarations and suggestions for improving the
section in the brief re strengths/weaknesses of the plaintiff's case.  I provided this section as a start, but I also
recognize that this is a sensitivity and that the final version will have to be something you are all comfortable with.

2.  Most of this is self-explanatory, and you should regard everything as a draft, but there are two other "call outs":
(i)  The Company declaration is still a work in progress; (ii) there is one deviation from the Term Sheet, which
called for the attorneys' fees to be escrowed at Mr. Weston's firm.  I changed this to "U.S. Bank."  If all counsel
were to confirm to me that escrowing at Mr. Weston's firm is acceptable -- you do not need to tell me your internal
division -- then we will change this back.  But absent that joint instruction, we can't risk exposing ourselves and
Unilever to liability.

3. By my calendar, this filing isn't due until September 3, so we have a lot of time. But I wanted to get these drafts to you early, recognizing they are a work in progress, and I want to build in time for us to reach a final we can all sign off on.

4. To the extent you can work together and aggregate your proposed changes into a single document and mark up these drafts, that would be appreciated. If I have omitted anyone on your side from the drafting team, please forward this on.

<<UNILEVERROSENRED Notice & MPA for Motion for Prelim Class Approval - 5.DOC>>
<<UNILEVERROSENRED Settlement Agreement - 6.DOC>> <<UNILEVERROSENRED Decl. of J. Sahouria ISO
Motion for Prelim. Class Approval - 2.DOC>> <<UNILEVERROSENRED Final Judgment - 2.DOC>>
<<UNILEVERROSENRED Final Approval Order - 2.DOC>> <<UNILEVERROSENRED Declaration of Unilever ISO
Motin for Prelim Class Approval - 2.DOC>> <<UNILEVERROSENRED [Proposed] Order Granted Prelim. Class
Approval (Ex. A) - 2.DOC>> <<UNILEVERROSENRED Summary Notice of Prelim. Class Approval - 2.DOC>>

W

-------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

====================================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
-------------------------------------------------------------------

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5298
(20100721) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT J

"a third-party account on which all the parties are signators"

I don't even know what that means. Do you mean a joint checking account? Why would we do that?!? Do our firms file taxes together or something, Michael? Planning on opening up a restaurant together with me? Why would the firms of Weston and Beck & Lee agree to a joint checking account with Reese Richman? Preposterous.


ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:26 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever

Elizabeth -

By your own logic, it certainly doesn't make sense for all the money to go into the Weston Firm account. And as you, and all parties, are aware, we (Reese Richman LLP and the Weston/Beck group) are to split these fees 50/50 pursuant to our signed agreement.

Nonetheless, if you won't agree now to 50% going to the Weston Firm esrow and 50% to the Reese Richman escrow account, I'll agree that the funds go to a third-party account on which all the parties are signators.

On Mon, Aug 9, 2010 at 12:19 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
Mike,

I have taken a preliminary look at your edits and find your changes to the fees section inaccurate and at the very least, very premature. As such, we will be sending in our own edits to defense counsel once finalized and cc you.

As you and I discussed on the phone some weeks back, I completely am at a loss as to why some $250,000 should go into your trust account without any determination by the court of appropriate fees. Have you done work to justify that? If so, I haven't seen hide nor hair of any proper evidence.

Obviously, your firm and the Weston/Beck firms disagree here, but this issue needs to be hashed out. We should get paid for the work we have done. I am cc'ing defense counsel, fyi

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be attorney privileged, and is intended only for the use of the individual(s) named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.
===============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:00 PM
**To:** Elizabeth Lee Beck; Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Elizabeth and Greg -

Do you all have any edits?

I am going to circulate my edits to the other side at close of business today and was hoping to include your edits as well.

On Thu, Aug 5, 2010 at 2:56 PM, Michael Reese <mreese@reeserichman.com> wrote:
Elizabeth and Greg -

My firm's edits are attached.

Do you all have any edits?


--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5484 (20100927) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT K

Consider this email putting the firm of Reese Richman on notice of adjustment.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers

Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

==================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
==================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:47 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever

Elizabeth -

You are completely wrong. So there is no mystery, our signed agreeement is attached hereto.

We all understand that not all money should go to the Weston Firm account, because that would in essence violate the terms of the agreement. I can understand that Will Stern does not want to be placed in such a position. Accordingly, the most sensible thing to do, if you will not agree to 50% going to the Weston escrow account and 50% going to the Reese Richman LLP account, is that it go to a third-party account. I believe that is what Will Stern intended when he included the language regarding a third-party account. We will agree that the money go into a third-party account as suggested by Will Stern if we can't get agreement that 50% goes to Reese Richman LLP escrow account now.

On Mon, Aug 9, 2010 at 12:29 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
No, I think you are completely and blindly misconstruing the document that you referring to. And we do not agree to a third-party account. That is a term that you made up recently. No one agreed to that. Proper apportionment of attorneys' fees should be determined by a court or agreed to by the plaintiffs' counsel before Unilever pays out a single penny in fees.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:26 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever

Elizabeth -

By your own logic, it certainly doesn't make sense for all the money to go into the Weston
Firm account.  And as you, and all parties, are  aware, we (Reese Richman LLP and the
Weston/Beck group) are to split these fees 50/50 pursuant to our signed agreement.

Nonetheless, if you won't agree now to 50% going to the Weston Firm esrow and 50% to the
Reese Richman escrow account, I'll agree that the funds go to a third-party account on which
all the parties are signators.

On Mon, Aug 9, 2010 at 12:19 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
Mike,

I have taken a preliminary look at your edits and find your changes to the fees section inaccurate
and at the very least, very premature.  As such, we will be sending in our own edits to defense
counsel once finalized and cc you.

As you and I discussed on the phone some weeks back, I completely am at a loss as to why some
$250,000 should go into your trust account without any determination by the court of appropriate
fees.  Have you done work to justify that?  If so, I haven't seen hide nor hair of any proper
evidence.

Obviously, your firm and the Weston/Beck firms disagree here, but this issue needs to be hashed
out.  We should get paid for the work we have done.  I am cc'ing defense counsel, fyi

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:00 PM
**To:** Elizabeth Lee Beck; Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Elizabeth and Greg -

Do you all have any edits?

I am going to circulate my edits to the other side at close of business today and was hoping
to include your edits as well.

On Thu, Aug 5, 2010 at 2:56 PM, Michael Reese <mreese@reeserichman.com> wrote:
Elizabeth and Greg -

My firm's edits are attached.

Do you all have any edits?


--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272



--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272



--

Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272


--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5352 (20100809) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT L

Will,

I respectfully suggest that you independently deal with Michael Reese (in order to settle out Rosen) and then with us.  Please do not lump us with him.

Also, I am not particularly sure what edits he will end up sending you, but please keep in mind the terms of our memorandum of settlement.  Although it is only 1 page long, the spirit of our terms should be honored.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

**From:** Elizabeth Lee Beck [mailto:elizabeth@beckandlee.com]
**Sent:** Monday, August 09, 2010 12:19 PM
**To:** 'Michael Reese'; 'Gregory S. Weston'; 'Kim Richman'
**Cc:** 'Jared H. Beck'; 'jack@westonfirm.com'; 'Stern, William L.'
**Subject:** RE: Unilever

Mike,

I have taken a preliminary look at your edits and find your changes to the fees section inaccurate and at the very least, very premature.  As such, we will be sending in our own edits to defense counsel once finalized and cc you.

As you and I discussed on the phone some weeks back, I completely am at a loss as to why some $250,000 should go into your trust account without any determination by the court of appropriate fees.  Have you done work to justify that?  If so, I haven't seen hide nor hair of any proper evidence.

Obviously, your firm and the Weston/Beck firms disagree here, but this issue needs to be hashed

out.  We should get paid for the work we have done.  I am cc'ing defense counsel, fyi

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

==============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
==============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:00 PM
**To:** Elizabeth Lee Beck; Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Elizabeth and Greg -

Do you all have any edits?

I am going to circulate my edits to the other side at close of business today and was hoping
to include your edits as well.

On Thu, Aug 5, 2010 at 2:56 PM, Michael Reese <mreese@reeserichman.com> wrote:
Elizabeth and Greg -

My firm's edits are attached.

Do you all have any edits?


--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272


--
Michael R. Reese
REESE RICHMAN LLP

875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272


_____ Information from ESET NOD32 Antivirus, version of virus signature database 5352 (20100809) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

| From: | Elizabeth Lee Beck |
|---|---|
| To: | "Stern, William L." |
| Cc: | jack@westonfirm.com; "Gregory S. Weston"; "Jared H. Beck" |
| Subject: | FW: Unilever |
| Date: | Monday, August 09, 2010 9:58:44 AM |
| Attachments: | Joint Prosecution Agreement.pdf |

Will:

It is in your client's interest to deal w/Michael Reese. I truly feel that he took a great case and basically ran it into the ground with his crappy advocacy (the extent of which my firm and Weston's were not aware until much later, when his case got dismissed with prejudice).

So, now, more people will continue to consume trans fat, a legal toxin the like of which our country has not seen since alcohol and tobacco (yes, you disagree with me here, but that is how I feel). No thanks to Michael Reese from the Class, I can tell you.

Neither case proceeded extensively, relatively speaking, so my goal as far as fees is concerned is to have the respective counsel for Red, and Rosen, paid fairly, with none of this "give me half" nonsense that Michael keeps harping about.

If you have any suggestions as to a resolution that makes sense and tidies up everything neatly please feel free to let me know.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:47 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever

Elizabeth -

You are completely wrong. So there is no mystery, our signed agreeement is attached hereto.

We all understand that not all money should go to the Weston Firm account, because that would in essence violate the terms of the agreement. I can understand that Will Stern does not want to be placed in such a position. Accordingly, the most sensible thing to do, if you will not agree to 50% going to the Weston escrow account and 50% going to the Reese Richman LLP account, is that it go to a third-party account. I believe that is what Will Stern intended when he included the language regarding a third-party account. We will agree that the money go into a third-party account as suggested by Will Stern if we can't get agreement that 50% goes to Reese Richman LLP escrow account now.

On Mon, Aug 9, 2010 at 12:29 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
No, I think you are completely and blindly misconstruing the document that you referring to. And we do not agree to a third-party account. That is a term that you made up recently. No one agreed to that. Proper apportionment of attorneys' fees should be determined by a court or agreed to by the plaintiffs' counsel before Unilever pays out a single penny in fees.

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

=================================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
=================================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:26 PM
**To:** Elizabeth Lee Beck
**Cc:** Gregory S. Weston; Kim Richman; Jared H. Beck; jack@westonfirm.com; Stern, William L.
**Subject:** Re: Unilever

Elizabeth -

By your own logic, it certainly doesn't make sense for all the money to go into the Weston Firm account. And as you, and all parties, are aware, we (Reese Richman LLP and the Weston/Beck group) are to split these fees 50/50 pursuant to our signed agreement.

Nonetheless, if you won't agree now to 50% going to the Weston Firm esrow and 50% to the Reese Richman escrow account, I'll agree that the funds go to a third-party account on which all the parties are signators.

On Mon, Aug 9, 2010 at 12:19 PM, Elizabeth Lee Beck <elizabeth@beckandlee.com> wrote:
Mike,

I have taken a preliminary look at your edits and find your changes to the fees section inaccurate and at the very least, very premature.  As such, we will be sending in our own edits to defense counsel once finalized and cc you.

As you and I discussed on the phone some weeks back, I completely am at a loss as to why some $250,000 should go into your trust account without any determination by the court of appropriate fees.  Have you done work to justify that?  If so, I haven't seen hide nor hair of any proper evidence.

Obviously, your firm and the Weston/Beck firms disagree here, but this issue needs to be hashed out.  We should get paid for the work we have done.  I am cc'ing defense counsel, fyi

ELIZABETH LEE BECK, ESQ. | Beck & Lee Business Trial Lawyers
Courthouse Plaza Building | 28 West Flagler Street Suite 555 | Miami, Florida 33130
305-789-0072 Phone | 305-968-3426 Cell | 786-206-2447 Fax
elizabeth@beckandlee.com | www.beckandlee.com

===============================================
The information contained in this e-mail message is confidential, may be
attorney privileged, and is intended only for the use of the individual(s)
named above.  If you are not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this communication in error, please contact
the sender by reply e-mail and destroy all copies of the original message.
===============================================

**From:** Michael Reese [mailto:mreese@reeserichman.com]
**Sent:** Monday, August 09, 2010 12:00 PM
**To:** Elizabeth Lee Beck; Gregory S. Weston; Kim Richman
**Subject:** Re: Unilever

Elizabeth and Greg -

Do you all have any edits?

I am going to circulate my edits to the other side at close of business today and was hoping to include your edits as well.

On Thu, Aug 5, 2010 at 2:56 PM, Michael Reese <mreese@reeserichman.com> wrote:
Elizabeth and Greg -

My firm's edits are attached.

Do you all have any edits?


--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor

New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

--
Michael R. Reese
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5352 (20100809) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT M

| | |
|---|---|
| **From:** | Stern, William L. |
| **To:** | Michael Reese; Elizabeth Lee Beck; Jared H. Beck; Gregory S. Weston; jack@westonfirm.com; Kim Richman |
| **Cc:** | Sahouria, Janelle J. |
| **Subject:** | Rosen and Red v. Unilever |
| **Date:** | Monday, September 27, 2010 9:39:27 AM |

Counsel:

One of you should forward the recent filings to the Special Master. In addition, Unilever believes that we should jointly recommend that the scope of the Special Master's appointment be expanded to all matters relating to the proposed settlement in this case. Finally, if any of you believes that these filings will inhibit your ability to supply us with the comments/declarations we will need in order to timely file the motion, please advise.

W

--------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

====================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
--------------------------------------------------------------------


_____ Information from ESET NOD32 Antivirus, version of virus signature database 5484 (20100927) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

# EXHIBIT N

1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                     WESTERN DIVISION

4          THE HON. GEORGE H. WU, JUDGE PRESIDING

5

6   Evangeline Red, et al.,        )
                                   )
7                   Plaintiffs,    )
                                   )
8          vs.                     )  No. CV-10-01028-GW-AGR
                                   )
9   Kraft Foods Inc. et al.,       )
                                   )
10                  Defendants.    )
    _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              Los Angeles, California

16       Thursday, September 16, 2010; 10:46 A.M.

17

18

19

20

21

22              Wil S. Wilcox, CSR 9178
           Official U.S. District Court Reporter
23            312 North Spring Street, # 430
             Los Angeles, California 90012
24               Phone: (213) 290-2849

25


              WIL S. WILCOX, OFFICIAL FEDERAL REPORTER

1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFFS: BECK & LEE BUSINESS TRIAL LAWYERS
                        By:  Jared H. Beck
                        Attorney at Law
4                       28 West Flagler Street Suite 555
                        Miami, FL 33130
5                       305-789-0072
                        Fax: 786-664-3334
6                       Email: jared@beckandlee.com

7

8    FOR THE PLAINTIFFS: THE WESTON FIRM
                        By:  Gregory S. Weston
                        Attorney at Law
9                       888 Turquoise Street
                        San Diego, CA 92109
10                      858-488-1672
                        Fax: 480-247-4553
11                      Email: greg@westonfirm.com

12

13   FOR THE DEFENDANTS: JENNER & BLOCK LLP
                        By:  Dean N. Panos
                        Attorney at Law
14                      353 North Clark Street
                        Chicago, IL 60654
15                      312-923-2765
                        Fax: 312-840-7765
16                      Email: dpanos@jenner.com

17

18

19

20

21

22

23

24

25

```
 1      LOS ANGELES, CA.; THURSDAY, SEPTEMBER 16, 2010; 10:46 A.M.
 2                              -oOo-
 3              THE COURT:  All right.  Let me call the matter of
 4      Red v. Kraft Foods.
 5              THE CLERK:  Counsel on the phone, please state
 6      your appearance.
 7              MR. BECK:  Good morning, this is Jared Beck of
 8      Beck & Lee for plaintiffs.
 9              THE COURT:  All right.
10              MR. WESTON:  Gregory Weston, Your Honor, for
11      plaintiffs.
12              MR. PANOS:  Dean Panos from Kenneth Lee on behalf
13      of Kraft foods, Your Honor.
14              THE COURT:  Let me ask the counsel.  You saw the
15      Court's tentative?
16              MR. WESTON:  Yes, Your Honor.
17              MR. PANOS:  We did, Your Honor.  I was surprised
18      by it actually.
19              THE COURT:  What can I say.  Nothing is final
20      until it's final.
21              MR. PANOS:  Well, we were surprised in light of
22      the last hearing and what we thought Your Honor ruled and
23      made pretty clear.
24              THE COURT:  Well, I may go back there yet again,
25      but I think the problem really that is that I don't know if
```

1    I can do it in terms of the present status of the case.

2    That may ultimately be my decision, but at this point in

3    time I am of the mind that I would allow the case to go

4    forward at least a bit more on the way that it is.

5              MR. PANOS:  But what is that under?  Is that under

6    this new Second Amended Complaint?

7              THE COURT:  It would be under the new Second

8    Amended Complaint, but I would allow you to file.  You have

9    an opportunity to respond to the Second Amended Complaint.

10             MR. PANOS:  But let me address that --

11             THE COURT:  Sure.

12             MR. PANOS:  -- because your tentative suggests

13   that we can't reargue the issue related to our preemption

14   argument.

15             THE COURT:  Let's put it this way.  I will allow

16   you to reargue it if you have case law for it.  The problem

17   is that we have a couple of other cases from another judge.

18   Although, it may not have been raised in quite the same way,

19   but there was another judge.  Was it Judge Morrow?  I

20   thought Judge Morrow allowed it to go forward.

21             MR. PANOS:  But Judge Gee did not.

22             THE COURT:  Well, but she's newer.

23             MR. PANOS:  Your Honor, the problem with going

24   forward under that restriction is that the Second Amended

25   Complaint also includes the very same allegations, even the

1    ones that you agreed were preempted.  That's a problem.

2         THE COURT:  I agree.  That's one of the reasons

3    why I think that there is some problems with the Second

4    Amended Complaint.  It's going to be subject to another

5    motion.  I'm saying you can do a motion.  I'm also even

6    saying that in that new motion if you have new case law or

7    better case law or something that you haven't cited to me

8    previously that more supports the argument I will allow you

9    to argue the point again.

10        MR. PANOS:  All right.  I think I understand that,

11   but it really comes down to whether Your Honor is going to

12   allow them to go forward with pleading a case based on trans

13   fats or not.  I don't know what else to say other than the

14   fact that this is an end run around preemption.

15        Every claim is saying this is deceptive because it

16   contains trans fats and the plaintiffs didn't know it and

17   because defendant didn't disclose it.  So we are saying what

18   do you want us to disclose?  We are prohibited by federal

19   law.  I don't know how else to frame the issue.

20        THE COURT:  Well, I think what the issue is, is

21   the extent to which -- in other words, they are making the

22   pitch that any amount of trans fat will cause --

23        MR. PANOS:  Renders any statement misleading,

24   renders anything misleading.  That's their argument.

25        THE COURT:  No.  It doesn't render any statement

1   misleading, but it may render the statements contained in

2   the packages as being misleading.

3           MR. PANOS:  Because they relied on the fact that

4   there were no trans fats.  Their Second Amended Complaint,

5   like their First Amended Complaint, says we relied on the

6   0-gram trans fat and the injury in fact alleges that they

7   would not have purchased had Kraft disclosed that the

8   product contained certain amounts of trans fat.  That's the

9   injury in fact that they've claimed.

10          They've alleged it clearly in the First Amended

11  Complaint.  They've alleged it in the Second Amended

12  Complaint.  So I don't even know how we can sustain the

13  complaint when the thing that they are alleging their injury

14  in fact is the omission of something by federal law we are

15  prohibited from doing.

16          THE COURT:  Well, but then it's kind of the

17  distinction between implicit preemption and explicit

18  preemption.

19          MR. PANOS:  I don't believe so, Your Honor.

20          THE COURT:  Again, it's caused me to rethink, but

21  as I said I'm wavering back and forth.  So in the end I

22  might wind up agreeing with you.  At this point in time it's

23  kind of like the pendulum has swung, but it may swing back.

24          MR. PANOS:  Okay.

25          THE COURT:  So I don't want to give the plaintiffs

1    too much hope in this regard.

2          Let me ask this then.  I presume that the

3    defendants will be making -- unless you guys can stip to

4    some changes, that the defendants are going to be making

5    another motion to dismiss at some point.

6          MR. PANOS:  That's correct, Your Honor.

7          THE COURT:  This is the other thing we are here on

8    is the issue insofar as the attorneys who are going to be

9    the attorneys in this case.

10          Let me indicate that it's my understanding that

11    Judge Ware did not -- well, Judge Ware's case is different

12    than my case because in Judge Ware's case there was actually

13    a settlement reached, and there was just a question of at

14    that point in time effectuating the settlement and that the

15    issue came up.  My understanding is he kind of punted the

16    issue.

17          MR. BECK:  Your Honor, if I may address that.  I

18    don't know if the Court has had a chance to read Judge

19    Ware's order.  We would have filed it, but I don't think we

20    are allowed to file on ECF at this point, but it's a

21    six-page order that follows an evidentiary hearing that

22    Judge Ware held on Monday.  He found that there was no cause

23    to terminate either Beck & Lee or the other law firm that

24    the Weston firm attempted to terminate in that case.

25          He found that the termination notice itself was

1   motivated by circumstances extraneous to the case, and he

2   found that keeping Beck & Lee and the other firm on the case

3   was necessary to protect the interests of the proposed class

4   members in that case.

5           I would submit to the Court that our involvement

6   in this action is fairly comparable to the involvement that

7   we had in the Unilever action.  The law that Judge Ware

8   applied in Unilever is the same law that we would ask the

9   Court to apply in this case.

10          We'd certainly request a hearing on the

11  termination notice that Weston has filed in this case and an

12  opportunity to brief the issues.  Certainly, we would

13  request that the order be in front of the Court so that the

14  Court can consider what Judge Ware found.  We'd also request

15  an opportunity to file the transcript from that hearing.

16          I would also like to point out that the plaintiffs

17  in this case are overlapping with the plaintiffs in the

18  Unilever case, so we would submit to the Court it's very

19  much the same, substantially the same circumstances in

20  Unilever as to here.

21          We would submit that the termination is not valid

22  and to do so at this stage after we've put substantial work

23  in on behalf of the class would simply be prejudicial to the

24  interests of the class members which is what the Court

25  should protect under Rule 23.

1        THE COURT:  Well, let me just indicate that

2   obviously what I was going to say was that since the issue

3   has been raised I cannot certify a class here unless I

4   conclude that the plaintiffs' counsel is or are adequate and

5   so I have to resolve the issue now.

6        MR. BECK:  Right.

7        THE COURT:  But when I say now I have to resolve

8   the issue before I certify the class.

9        MR. BECK:  Right.

10       THE COURT:  I don't think I need to resolve the

11  issue necessarily right now, now.  Although, probably I

12  should do it, but at this point in time we don't have I

13  don't think -- did I give you guys a deadline for the class

14  certification motion?

15       MR. PANOS:  Your Honor, there has been no class

16  certification motion deadline.  There has been no discovery,

17  nothing other than the briefing.

18       THE COURT:  This is what I need for the parties to

19  do and when I say the parties I will also include the Beck

20  firm at this point in time, not to say that I'm going to

21  override the named plaintiffs' decision to terminate Beck,

22  the Beck firm, but I will allow them to participate solely

23  for purposes of resolving this issue because frankly it is a

24  sort of squirrley situation that we have.  Although,

25  frankly, given my calendar today, I have a lot of squirrley

1    situations in my cases for some reason, although I don't
2    want to take all of the blame or credit.

3          This is what I want.  There will be I guess a
4    motion filed, a new motion to dismiss, and so I presume that
5    motion will be filed when?

6          MR. PANOS:  Well, Judge, I guess procedurally
7    first you would have to dismiss the First Amended Complaint.

8          THE COURT:  I am dismissing the First Amended
9    Complaint with leave to amend.

10          MR. PANOS:  With leave to amend the Second Amended
11    Complaint.

12          THE COURT:  Yes.

13          MR. PANOS:  So it's deemed filed today I guess.

14          THE COURT:  Yes.  It will be deemed filed today.

15          MR. PANOS:  15 days.

16          THE COURT:  All right.  So 15 days would put that
17    matter on October 1st would be the date of the motion to
18    dismiss.

19          I will put the matter for a hearing on October the
20    28th.  Also, what I want the parties to do is I want the
21    parties to talk about scheduling in terms of the class
22    certification motion and we will discuss the scheduling of
23    the class certification motion also on the 28th.

24          MR. PANOS:  I understand, Your Honor.  Although,
25    who am I speaking to?  Who represents the plaintiffs?

1          THE COURT:  At this point in time only the Weston
2    firm represents the plaintiffs.

3          MR. PANOS:  Okay.

4          THE COURT:  I'm allowing the Beck firm to stay on
5    to resolve this issue or to assist in resolving the issue,
6    but I am not going to overturn or strike the named
7    plaintiffs' decision at this point in time.

8          MR. BECK:  If I can make sure I understand that
9    completely, we are not terminated as class counsel, but in
10   terms of representing the named plaintiffs with respect to
11   the issues that Your Honor just set forth, that will be the
12   Weston firm's domain?

13         THE COURT:  Well, certainly representing the named
14   plaintiffs, you are not representing the named plaintiffs at
15   this point in time.

16         MR. BECK:  Right.

17         THE COURT:  That's why I'm saying it's kind of a
18   squirrley situation because I don't know how to characterize
19   you for purposes of your continued participation in this
20   matter.

21         What I might do is this.  What I had done is I
22   nunc pro tunced the prior decision relieving your firm.  At
23   this point in time I will eventually issue an order in that
24   regard.

25         MR. BECK:  Okay.

1        THE COURT:  But at this point in time technically

2  you still are plaintiffs' counsel.  Although, I will say

3  that I certainly recognize that you are not representing the

4  individual defendants in their individual capacities at this

5  point in time.  I'm sorry, the individual plaintiffs at this

6  point in time.

7        MR. BECK:  Okay.

8        MR. PANOS:  I guess, Your Honor, just so we

9  are clear, I think there maybe might be an issue of

10  scheduling because if we file our motion as soon as

11  October 1, I guess we've got to set a date.  I'm certain

12  they want to respond.

13        THE COURT:  Yes.

14        MR. PANOS:  Respond and reply all within the 28th?

15        THE COURT:  Yes.  As long as I get the reply

16  papers by the 22nd I don't care how you guys do it.

17        MR. WESTON:  Your Honor.

18        MR. PANOS:  Then we'd request they respond by the

19  15th, Your Honor.

20        THE COURT:  Yes.

21        MR. WESTON:  Could we have just until maybe

22  Monday to make very small revisions to the proposed Second

23  Amended Complaint?  We want to minimize as many issues as

24  possible.

25        THE COURT:  Why don't you talk about it.  The

deadline that I've indicated is the deadline.  If you want

to do a modification, you can nunc pro tunc it I suppose or

do something of that sort.  Let's put it this way:  There

are certain things that he is going to be taking out because

I agree with you that there are certain things that are in

the Second Amended Complaint that shouldn't be in there.

MR. PANOS:  I don't believe he is taking that out,

Your Honor, because there is no case if he takes it out.

And if he puts it in, there is no case.

The point is this.  I can't agree to any delay

anymore.  This is now the third or fourth go round.  You are

going to give me a short period of window now to respond.

He's either got a Seconded Amended Complaint or he doesn't.

THE COURT:  Well, he has.  So why don't we just do

it this way.  It is what it is.  The schedule I've set is

the schedule I've set.

MR. WESTON:  Thank you, Your Honor.

MR. PANOS:  We are going to respond to the current

complaint that has been attached to the offer of proof of

the Second Amended Complaint.

MR. WESTON:  Your Honor, may I say something about

the attorney issue?

THE COURT:  About the attorney issue, what?

MR. WESTON:  I have a horrible working

relationship with the Beck firm.  They have cursed at me,

1   screamed at me and filed declarations --

2          THE COURT:  Let me stop.  Let me indicate to

3   both sides.  I do not accept as true the accusations by

4   one side or the other against each other.  All I'm simply

5   saying is that because the matter has been raised I have to

6   resolve the issue.  Again, I don't want squabbling in front

7   of me.

8          MR. WESTON:  Okay.

9          THE COURT:  You don't have to worry that I've

10  accepted everything they have said as being true because I

11  haven't.  All I'm indicating is that the nature of the

12  assertions are so serious that I have to resolve it before I

13  can resolve the issue of class certification because again

14  of the assertions.  All right.

15         MR. WESTON:  Yes, Your Honor.  It was just that I

16  would think that if they have evidence that something's gone

17  wrong that they should give it to the defendant who should

18  use it to oppose the class certification.  I'm having to

19  deal with them in case after case.  Judge Gee and Judge

20  Wilkin just signed the termination proposed orders we

21  submitted.

22         The situation before Judge Ware was very different

23  because we had a settlement agreement that was already.  The

24  issue here is very similar to the one or the posture here is

25  very similar to the one presented to Judges Gee and Wilkin

1  which is we are not even prepared to file for class

2  certification.

3           The case is still in the pleading stage and every

4  single one of the plaintiffs want to terminate one of their

5  attorneys.  They have an absolute right to do that with

6  cause or without cause under California law.

7           THE COURT:  They do insofar as themselves are

8  concerned, but they do not insofar as the class is concerned

9  because again it might very well be if they know that by

10 retaining one set of counsel if in fact the accusations turn

11 out to be true I will not be certifying the class.

12          MR. WESTON:  Your Honor, I understand that, but

13 they have never even retained the Beck firm.  They signed a

14 retention agreement with myself.  Then in March I signed a

15 joint prosecution agreement with the Becks.  That was a

16 horrible mistake on my part.

17          MR. BECK:  Your Honor, all of this was presented

18 to Judge Ware and rejected.

19          THE COURT:  Let me stop both sides.  Again, today

20 is not the day that I'm going to be hearing the issues.

21          MR. BECK:  I agree with that.

22          THE COURT:  Just keep it all in.  I'm going to be

23 giving you an opportunity to put all of these remarks on

24 paper and I will read the papers when you submit them to me.

25          MR. BECK:  Thank you, Your Honor.

1        THE COURT:  Okay.

2        MR. WESTON:  Thank you, Your Honor.

3        THE COURT:  Thank you.  Have a nice day.

4        MR. BECK:  Okay.

5

6        (At 11:15 a.m. proceedings were adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           --oOo--

2                        CERTIFICATE

3

4

5          I hereby certify that pursuant to Section 753,

6     Title 28, United States Code, the foregoing is a true and

7     correct transcript of the stenographically reported

8     proceedings held in the above-entitled matter and that the

9     transcript page format is in conformance with the

10    regulations of the Judicial Conference of the United States.

11

12    Date:  September 20, 2010

13

14

15                         _____

16                              WIL S. WILCOX
                              U.S. COURT REPORTER
17                              CSR NO. 9178

18

19

20

21

22

23

24

25