MICHAEL R. REESE (CA SBN 206773)
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York, 10001
Telephone:    (212) 643-0500
Facsimile:    (212) 253-4272

GREGORY S. WESTON (CA SBN 239944)
greg@westonfirm.com
JACK FITZGERALD (CA SBN 257370)
jack@westonfirm.com
THE WESTON FIRM
888 Turquoise Street
San Diego, California 92109
Telephone:    (858) 488-1672
Facsimile:    (480) 247-4553

JARED H. BECK (CA SBN 233743)
jared@beckandlee.com
ELIZABETH LEE BECK (CA SBN 233742)
elizabeth@beckandlee.com
**BECK & LEE BUSINESS TRIAL
LAWYERS**
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, Florida 33130
Telephone:    (305) 789-0072
Facsimile:    (786) 664-3334

Attorneys for the Proposed Class
in the *Rosen* and *Red* actions

WILLIAM L. STERN (CA SBN 96105)
wstern@mofo.com
JANELLE J. SAHOURIA (CA SBN 253699)
jsahouria@mofo.com
**MORRISON & FOERSTER** LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

Attorneys for Defendant
CONOPCO, INC. (sued herein as
UNILEVER UNITED STATES, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| AMNON ROSEN, et al., | Case No.    C-09-02563 JW |
| _____ / | Case No.    C-10-00387 JW |
| EVANGELINE RED, et al.,                / | **CLASS ACTION** |
| Plaintiff, | **NOTICE OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| UNILEVER UNITED STATES, INC., | |
| Defendant. | Date:  November 1, 2010 |
| _____ / | Time:  9:00 a.m.<br>Location:  4th Floor, Courtroom 8<br>Judge:  Hon. James Ware |

**NOTICE OF JOINT MOTION AND JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

PLEASE TAKE NOTICE that on November 1, 2010 at 9:00 a.m., or as soon thereafter as the case may be heard, 4th Floor, Courtroom 8, located at 280 South First Street, San Jose, CA 95113-3099, the parties to the litigation will and hereby do jointly move this Court for an order granting preliminary approval of a class action settlement.

This motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure and is based on this Notice, the accompanying Memorandum of Points and Authorities, the attached the attached Declarations of David Burrows, Janelle J. Sahouria, Michael R. Reese, and Elizabeth Lee Beck, the [Proposed] Order, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: October 18, 2010

MICHAEL R. REESE
KIM E. RICHMAN
**REESE RICHMAN LLP**

By:     /s/ Michael R. Reese
         MICHAEL R. REESE

Dated: October 18, 2010

GREGORY S. WESTON
JACK FITZGERALD
**THE WESTON FIRM**

By:     /s/ Gregory S. Weston
         GREGORY S. WESTON

Dated:  October 18, 2010

JARED H. BECK
ELIZABETH LEE BECK
**BECK & LEE BUSINESS TRIAL LAWYERS**

By:     /s/ Elizabeth Lee Beck
         ELIZABETH LEE BECK

*Attorneys for the Proposed Class in the Rosen
and Red actions*

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

i

Dated: October 18, 2010

WILLIAM L. STERN
JANELLE J. SAHOURIA
**MORRISON & FOERSTER** LLP


By:    /s/ William L. Stern
           WILLIAM L. STERN

*Attorneys for Defendant CONOPCO, INC. (sued herein as Unilever UNITED STATES, INC.)*

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

ii

# **TABLE OF CONTENTS**

**Page**

NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY
    APPROVAL OF CLASS SETTLEMENT............................................................i

TABLE OF AUTHORITIES .................................................................................. v

MEMORANDUM OF POINTS & AUTHORITIES ............................................... 1

I.      INTRODUCTION ....................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................... 2

    A.    Unilever and the Vegetable Oil Spread/Margarine Industry.......... 2

    B.    Overview of *Rosen* and *Red*. ...................................................... 3

    C.    All of the Parties Support the Settlement Agreement. .................. 4

III.   TERMS OF SETTLEMENT ...................................................................... 4

    A.    The Settlement Class. .................................................................... 4

    B.    Benefit to the Class. ...................................................................... 4

    C.    Class Notice. .................................................................................. 5

    D.    Opportunity to Opt Out and Object. ............................................. 5

    E.    Incentive Award to Class Representatives. .................................... 6

    F.    Attorney's Fees and Costs. ............................................................ 6

IV.   ARGUMENT .............................................................................................. 6

    A.    A Rule 23(b)(2) Settlement Class Is Appropriate for this Case. ....... 6

    B.    Rule 23(a) Is Satisfied. ................................................................... 6

        1.    Numerosity. ........................................................................ 6

        2.    Commonality. ..................................................................... 7

        3.    Typicality........................................................................... 7

        4.    Adequacy of Representation. ............................................. 7

    C.    Rule 23(b)(2) Is Also Satisfied.......................................................11

    D.    The Settlement Meets the Standard for Preliminary Approval. ......... 13

        1.    Strength of Plaintiffs' Case. .............................................. 14

        2.    Risk, Expense, Complexity, and Likely Duration of
             Further Litigation. ............................................................. 15

        3.    The Risk of Maintaining Class Action Status Through
             the Trial. ............................................................................ 16

        4.    The Amount Offered in Settlement. ................................. 16

        5.    The Extent of Discovery Completed and the Stage of
             the Proceedings.................................................................. 16

        6.    The Experience and Views of Counsel. ............................ 16

        7.    The Presence of Governmental Participation. .................. 19

*Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement*
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036
    iii

8. The Reaction of the Class Members to the Proposed Settlement. ............................................................... 19

E. The Proposed Attorney's Fees and Incentive Compensation Are Fair and Reasonable. .................................................... 19

F. The Proposed Notice Program Is Constitutionally Sound. .................. 19

V. CONCLUSION ........................................................................... 20

ECF ATTESTATION ........................................................................... 22

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*Ackerman v. Coca-Cola Co. et al.*,
    No. CV-09-0395 (JG) (RML),
    2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ......................................................... 8

*Adachi et al. v. Carlyle/Galaxy San Pedro L.P. et al.*,
    No. 09-00793 (C.D. Cal.) ............................................................................................................ 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................................... 6

*Baby Neal for & by Kantor v. Casey Co.*,
    43 F.3d 48 (3d Cir. 1994) .......................................................................................................... 11

*Brown v. Ticor Title Ins. Co.*,
    982 F.2d 386 (9th Cir. 1992) ....................................................................................................... 5

*Chacanaca et al. v. The Quaker Oats Co.*,
    No. C 10-00502 RS (N.D. Cal. Oct. 14, 2010) .......................................................... 10, 15, 18

*Chin v. RCN Corp.*,
    No. 08 Civ. 7349 RJS(KNF),
    2010 U.S. Dist. LEXIS 31272,(S.D.N.Y. Mar. 12, 2010) ........................................................ 17

*Chin v. RCN Corp.*,
    08-cv-7349 RJS,
    2010 U.S. Dist. LEXIS 96302 (S.D.N.Y. Sept. 8, 2010) ..................................................... 8, 15

*Churchill Vill. L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..................................................................................................... 20

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 6, 13

*Connor v. Automated Accounts, Inc.*,
    No. CS-99-0270-EFS,
    2001 U.S. Dist. LEXIS 10458 (E.D. Wash. July 18, 2001) ................................................... 7, 8

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) ..................................................................................................... 11

*Ercoline v. Unilever United States, Inc.*,
    No. 2:10-CV-01747-SRC-MAS (D.N.J.) .................................................................................. 13

<span style="font-variant: small-caps">Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement</span>
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

v

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 6, 7, 9

*Henderson et al. v. Gruma Corp.*
  No. 2:10-cv-04173-AHM-AJW (C.D. Cal.).................................................. 11, 17

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................ 14

*In Re: Openwave Sec. Sys., Inc. Sec. Litig.*,
  No. 07-cv-1309 (S.D.N.Y.) ................................................................................... 10

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ................................................................................... 6

*Kreek v. Wells Fargo & Co. et al.*,
  No. C 08-01830 WHA (N.D Cal. Nov. 12, 2008) .......................................... 8, 17

*L'Ottavo Ristorante et al. v. Ingomar Packing Co.*,
  No. 09-cv-1945 MCE (E.D. Cal. Nov. 7, 2009)............................................... 8, 17

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................... 14, 16

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ................................................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 14, 16

*Peviani et al. v. Hostess Brands, Inc.*,
  No. CV 10-2303 CBM (VBKx) (C.D. Cal.) ..................................................... 10, 18

*Red et al. v. The Kroger Co.*,
  No. 2:10-CV-01025-DMG (MAN) (C.D. Cal. 2010) ...................................... 14, 18

*Red et al. v. Unilever United States, Inc. et al*,
  No. C-10-00387 JW (N.D. Cal.) ................................................................... *passim*

*Rivera v. Bio Engineered Supplements & Nutrition*,
  No. SACV 07-1306 JVS (RNBx),
  2008 U.S. Dist LEXIS 95083, at *1 (C.D. Cal. Nov. 13, 2008) ...................... 12, 19

*Rosen v. Unilever United States, Inc.*,
  No. C 09-02563 JW (N.D. Cal.) ................................................................... *passim*

*Yoo v. Wendy's Int'l, Inc.*,
  No. 2:07-CV-04515-FMC (C.D. Cal. 2007) ................................................. *passim*

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

vi

*Young v. Conopco, Inc.*,
    No. C 10-03772 CBA LB (E.D.N.Y.) ....................................................................... 3

*Yumul v. Smart Balance, Inc.*, __ F. Supp. 2d __ ,
    2010 WL 3359663 (C.D. Cal. May 24, 2010) ................................................. 10, 18


**STATUTES**

15 U.S.C.
    § 1125 ................................................................................................................ 1, 7

28 U.S.C.
    § 1715 .................................................................................................................... 17

Fed. R. Civ. P.
    23 .......................................................................................................................... 19
    23(a)(4) ................................................................................................................... 8
    23(b)(2) ................................................................................................................... 7
    23(e)(1) .................................................................................................................. 19

Cal. Bus. & Prof. Code
    § 17200 .............................................................................................................. 1, 7
    § 17500 .............................................................................................................. 1, 7

Cal. Civ. Code
    § 1750 *et seq.* ................................................................................................... 1, 7


**OTHER AUTHORITIES**

Marc Glanter, *The Federal Rules and the Quality of Settlements*,
    137 U.Pa.L.Rev. 1231 (1989) ............................................................................. 12

PublicCitizen, Consumer Law & Policy Blog, *"Truth: 1, vitaminwater: 0,"* available at
    http://pubcit.typepad.com/clpblog/2010/07/truth-1-vitaminwater-0.html ............... 8

Pew Internet & American Life Project Report, *available at*
    http://www.pewinternet.org/Trend-Data/Whos-Online.aspx ................................. 20

USA Today: Audience, *available at*
    http://www.usatoday.com/marketing/media_kit/usat/audience_circulation.html
    (July 18, 2010) ................................................................................................... 20

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

This is a joint motion seeking preliminary court approval of the class action settlement in two related cases, *Rosen* and *Red*.[1]  The two lawsuits challenge the advertising and labeling by Defendant Unilever[2] of its vegetable oil-based spread and stick products, including, but not limited to, "I Can't Believe It's Not Butter!"® (collectively, "Products"), that include partially hydrogenated vegetable oils ("PHVOs") containing trans fatty acids ("TFAs").[3]  Plaintiffs contend that Unilever falsely advertises its products as "healthy" and "nutritious," etc., when in fact they contain TFAs, a substance Plaintiffs variously contend is "dangerous," "unhealthy," and "non-nutritious."  The *Red* Plaintiffs seek a nationwide class and assert claims under the Lanham Act (15 U.S.C. § 1125), California's unfair competition law (Cal. Bus. & Prof. Code § 17200), California's false advertising law (*id.*, § 17500), and California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*).  The *Rosen* Plaintiff seeks a California class and asserts claims under the same causes of action with the exception of the Lanham Act.

The proposed settlement accomplishes the primary goal of the two lawsuits by (i) eliminating entirely, by December 31, 2011, Unilever's use of TFAs[4] in all soft spread products that Unilever manufacturers (both its own labels and private-label arrangements by which it manufactures products for others), and (ii) requiring Unilever to take concrete steps to reduce or eliminate PHVOs in its stick products that it manufactures (both its own labels and private labels).  The proposed settlement seeks to certify a nationwide class for settlement

---

[1] *Rosen v. Unilever United States, Inc.*, No. C 09-02563 JW (N.D. Cal.) ("*Rosen*"), and *Red et al. v. Unilever United States, Inc. et al*, No. C-10-00387 JW (N.D. Cal.) ("*Red*").

[2] The original Defendants in the *Red* action were Unilever United States, Inc. and Unilever PLC, but the Court dismissed Unilever PLC.  (Dkt. No. 69 [Order, June 22, 2010].)

[3] The challenged products at issue in the *Red* complaint, in addition to "I Can't Believe It's Not Butter!®", include Shedd's Spread Country Crock, Shedd's Spread Country Crock Spreadable Sticks, Brummel & Brown, and Imperial Margarine.  In addition, Unilever manufactures a number of vegetable oil-based soft spread and stick products for various retailers under private-branding arrangements.  Those private label products are also included in this settlement.

[4] For purposes of this Memorandum, the parties use the terms "TFAs" and "PHVO" interchangeably.

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

1

purposes pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. In exchange, Unilever will receive a General Release from each Settlement Class member of all claims, equitable and monetary, arising from the purchase of a Unilever soft spread or stick product, including private label products, that are or could have been asserted in this litigation, but excludes claims of personal injury. The Settlement Agreement is attached as Exhibit 1 to the Declaration of Janelle J. Sahouria and is discussed in further detail in this Memorandum.[5]

The parties respectfully ask this Court to find that the proposed classwide settlement is "fair, reasonable, and adequate" and is appropriate for preliminary approval under Rule 23(b)(2). With this motion, the parties request that the Court: (1) grant preliminary approval of the proposed settlement; (2) appoint Class Counsel; (3) certify the proposed settlement class pending final approval; (4) approve the proposed notice plan and forms of notice; and (5) schedule a formal fairness hearing on final settlement approval at the Court's convenience, one hundred days after the Preliminary Approval Date or the first date available thereafter to the Court.

## II.  STATEMENT OF FACTS

### A.  Unilever and the Vegetable Oil Spread/Margarine Industry.

Unilever is a leading manufacturer of soft spread vegetable oil and stick products. Its U.S. brands include (i) "I Can't Believe It's Not Butter!"® (Original, Light, Fat Free, Cooking & Baking Sticks, Calcium, Mediterranean Blend, Whipped Squeeze, Spray); (ii) Brummel & Brown®; (iii) Imperial®; (iv) Shedd's Spread Country Crock® (Original, Light, Churn Soft Spreads, Spreadable Sticks, Limited Edition products; and (v) Willow Run® Margarine. In addition, a division of Unilever develops soft spread and stick products that are sold under private labels to retailers or other customers. Those private label retailers include Supervalu, Albertson's, Kroger, Ralph's Grocery, Publix, Aldi, Target, Wal-Mart, and others.

---

[5] The private label products are listed in Appendix A of the Settlement Agreement and Release (Declaration of Janelle J. Sahouria in Support of Motion for Preliminary Approval of Class Settlement ("Sahouria Decl."), Ex. 1, Appendix A.), filed concurrently with this motion.

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

2

Plaintiffs allege that Unilever falsely advertises its Products as "healthy" and "nutritious," etc., when in fact they were not because they contain TFAs. The purpose of Plaintiffs' lawsuits was to reduce or eliminate TFAs from Defendant's Products.

This proposed settlement achieves that goal. Consequently, the parties will have conferred a substantial benefit on millions of American consumers who consume Defendant's products.

## B.     Overview of *Rosen* and *Red*.

With the filing of *Rosen* on June 9, 2009 and *Red* on October 28, 2009, the parties engaged in substantial law and motion practice. In *Red*, for example, Unilever first moved to stay the case or in the alternative dismiss, and filed a separate motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. (*Red* Dkt. 8, 11.) The *Red* Plaintiffs filed detailed oppositions to both motions. (*Red* Dkt. 20, 23.) The Honorable Margaret M. Morrow then *sua sponte* ordered the transfer of the action to this District in response to Unilever's motion to stay. (*Red* Dkt. 28.) After transfer, the *Red* Plaintiffs moved to "relate" the case to *Rosen*. (*Red* Dkt. 34.) The *Red* Plaintiffs further filed a motion to compel discovery, to which Unilever responded to directly and also by seeking a stay of discovery, which was granted. (*Red* Dkt. 47, 50, 56.)

Unilever filed a motion to dismiss in *Rosen*. (*Rosen* Dkt. 20.) On May 3, 2010, this Court granted Unilever's motion with prejudice and judgment was entered. (*Rosen* Dkt. 57, 58.) The *Rosen* plaintiff, in response, filed a notice of appeal on May 27, 2010. (*Rosen* Dkt. 60.)[6]

Unilever filed a nearly-identical motion to dismiss in *Red* (*Red* Dkt. 11) that was to have been heard June 21, 2010. Prior to the hearing, however, as a result of negotiations conducted throughout the course of this litigation, the parties signed a settlement term sheet that includes the settlement for which the parties now seek preliminary approval. (Sahouria Decl., ¶ 4, Ex. 2.) The motion to dismiss was vacated. (*Red* Dkt. 68.)

---

[6] On August, 16, 2010, in the Eastern District of New York, Reese Richman LLP filed *Young v. Conopco, Inc.*, No. C 10-03772 CBA LB (E.D.N.Y.). (Sahouria Decl., ¶ 7, Ex. 3.) This case sets forth the same claims as the Litigation. The Settlement Agreement would resolve the claims set forth in *Young v. Conopco*.

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

3

Since the filing of *Rosen* over a year ago, the parties have engaged in extensive arm's-length settlement discussions that finally resulted in the Settlement Agreement. (Sahouria Decl., ¶¶ 3-6.) These negotiations included the use of a court-appointed mediator who conducted an in-person mediation session with the parties in San Francisco, California on March 18, 2010. (*Id.*, ¶ 3.)

### C. All of the Parties Support the Settlement Agreement.

On September 14, 2010, this Court appointed Special Master George Fisher to assist with the settlement (Red Dkt. 103). Since then, Mr. Fisher has helped facilitate the completion of the Settlement Agreement. (Sahouria Decl., ¶ 5.) On October 13, 2010, during a conference call with Mr. Fisher, Reese Richman LLP, Beck & Lee Business Trial Lawyers ("Beck & Lee"), and the Weston Firm, the parties reached an agreement on the terms of the Settlement Agreement, attached as Exhibit 1 to the Sahouria Declaration. (Sahouria Decl., ¶ 6.)

### III. TERMS OF SETTLEMENT

The terms of the Settlement Agreement filed concurrently are summarized below.

### A. The Settlement Class.

The Settlement Class includes all persons (excluding officers, directors, and employees of Unilever) who purchased, on or after January 1, 2000 through the Preliminary Approval Date, one or more soft spread and stick products manufactured by or on behalf of Unilever, including private label products, containing PHVOs or artificial TFAs. (Sahouria Decl., Ex. 1, § 2.29.) The complete list of products is stated in Appendix A to the Settlement Agreement. (*Id*, Ex. 1, App. A.)

### B. Benefit to the Class.

The Settlement Agreement addresses the continuing use of TFAs in both soft spread and stick products.

In regards to soft spreads, the agreement requires Unilever to eliminate all TFAs by the end of 2011. (Sahouria Decl., Ex. 1, § 8.1.) The cost to Unilever from the elimination of TFAs from all of its soft spread products totals over $10 million. (Declaration of David Burrows in Support of Motion for Preliminary Approval of Class Settlement ("Burrows Decl.") ¶ 6.) From

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

4

the standpoint of members of the class, this is substantial as they now will be able to consume Defendant's Soft Spread Products without TFAs.

In regards to the stick products, the science is more complicated. It is no simple matter to remove TFAs in a vegetable oil/margarine product that can remain firm (i.e., as a stick) at room temperature. (*Id*., ¶ 4.) Recognizing this, Unilever will also commit $500,000 for research and development for research in developing commercially acceptable alternatives to PHVOs for its Stick Products. (Sahouria Decl., Ex. 1, § 8.2.)

### C. Class Notice.

All costs of notice will be paid for by Unilever, up to $50,000. (Sahouria Decl., Ex. 1, § 9.4.) Summary notice will be published in two separate issues of *USA Today* within thirty days of Preliminary Approval. (*Id*. at § 9.2.) Unilever will publish the full notice on the Internet and make the text of the Full Notice available for downloading via the Internet at www.noticeclass.com/redandrosensettlements. (*Id*. at § 9.3.) The Full Notice shall be displayed by Unilever, for a period of forty-five days, commencing on the Notice Publication Deadline. (*Id*.)

### D. Opportunity to Opt Out and Object.

Although the parties request that the class be certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure, class members will be afforded the opportunity to opt out of the settlement. (*Id*. at § 10.1.) By giving the parties notice and the opportunity to opt out, class members will be precluded from bringing future actions for equitable relief and monetary damages arising out of the lawsuits. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (holding that "to bind an absent plaintiff concerning a claim for monetary damages, the court must provide minimal due process" which includes the opportunity to opt out of a class).

Also, class members will be given the opportunity to object to the settlement. (Sahouria Decl., Ex. 1, § 10.2.) Class members who object will be given the opportunity to appear at the fairness hearing.

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

5

### E. Incentive Award to Class Representatives.

The Settlement permits the Plaintiffs to apply for incentive compensation in the amount of $4,500 per Plaintiff, not to exceed a total of $18,000. (*Id.* at § 12.6.) Unilever agrees not to oppose such an application, provided the requests do not exceed the agreed amounts.

### F. Attorney's Fees and Costs.

The Settlement provides that Unilever will not contest Class Counsel's application to this Court for payment of up to $490,000 in attorney's fees and costs, so long as the Court does not award fees greater than that amount. (*Id.* at § 12.2.)

## IV. ARGUMENT

The Settlement Agreement meets the standard for preliminary class approval laid out in Rule 23. Federal courts strongly favor and encourage settlements, particularly in class action and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy ... favors settlements, particularly where complex class action litigation is concerned"). Here, preliminary approval of the settlement should be granted because the case is appropriate for certification of a Rule 23(b)(2) settlement class and the settlement agreement is "fair, reasonable, and adequate" as required by Rule 23(e)(2).

### A. A Rule 23(b)(2) Settlement Class Is Appropriate for this Case.

In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied, along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, the criteria for class certification have been met.

### B. Rule 23(a) Is Satisfied.

#### 1. Numerosity.

The prerequisite of numerosity is discharged if the class is so large that joinder of all members is impracticable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the proposed class consists of potentially hundreds of thousands of consumers who purchased

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

6

Unilever soft spread and stick brands, including the private label brands. Because the amount at stake for each debtor is small, each class member would be reluctant to sue individually. Therefore, the numerosity requirement of Rule 23(a)(1) has been met.

### 2. Commonality.

A class has sufficient commonality if there are questions of fact and law which are common to the class. *Hanlon*, 150 F.3d at 1019. All of the class members purchased Products manufactured by Unilever. The class members were all exposed to similar Product labels and marketing campaigns during the applicable time period that represented that the products contained zero grams of TFAs. These facts are common to all of the class members. The common question of law is whether the product labeling and marketing violated California's unfair competition law (Cal. Bus. & Prof. Code § 17200), false advertising law (*id.*, § 17500), and Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and the plaintiffs in *Red* also allege that Unilever has violated common law unfair competition and the Lanham Act (15 U.S.C. § 1125).

### 3. Typicality.

Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of the claims or defenses of the class. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* The claims made by the named Plaintiffs are typical of the class they seek to represent. The named Plaintiffs are all purchasers of Products manufactured by Unilever, as are all the class members.

### 4. Adequacy of Representation.

Rule 23(a)(4) requires the named Plaintiffs to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Plaintiff's counsel must be qualified, experienced and generally able to conduct the proposed litigation. *Connor v. Automated Accounts, Inc.*, No. CS-99-0270-EFS, 2001 U.S. Dist. LEXIS 10458, at *9 (E.D. Wash. July 18, 2001). Additionally, the named plaintiff must have no interests antagonistic to the class. *Id.*

The qualifications of counsel are set forth in the accompanying declarations.

Michael Reese, Elizabeth Lee Beck, and Gregory Weston are qualified, experienced, and very able to conduct the litigation.

Mr. Reese has specific experience in this type of litigation, having served as court appointed class counsel in a similar case against Wendy's International, Inc., regarding the marketing of foods that contained TFAs. *See Yoo v. Wendy's Int'l, Inc.*, No. 2:07-CV-04515-FMC (JCx) (C.D. Cal. 2007) ("*Wendy's*") (appointing Reese Richman LLP as class counsel)[7] (Reese Decl. Ex. A, p. 7). Additionally, Reese Richman LLP's service as class counsel in *Wendy's* resulted in a settlement approved by the court that is very similar to the one presented to Your Honor in the above-captioned action. *Id.* (stating that Reese Richman LLP "***has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy***").

Mr. Reese and his firm have been appointed class counsel in numerous other class actions, including consumer protection, antitrust and securities litigation. *See*, *e.g.*, *Chin v. RCN Corp.*, 08-cv-7349 RJS, 2010 U.S. Dist. LEXIS 96302, at *6 (S.D.N.Y. Sept. 8, 2010) (appointing Reese Richman LLP as class counsel in consumer fraud action, stating that "***class counsel is qualified, experienced, and able to conduct the litigation***"); *Kreek v. Wells Fargo & Co. et al.*, No. C 08-01830 WHA (N.D Cal. Nov. 12, 2008) (appointing Reese Richman LLP as lead counsel in securities fraud action) (Reese Decl., Ex. B, p. 1);[8] *L'Ottavo Ristorante et al. v. Ingomar Packing Co.*, No. 09-cv-1945 MCE (E.D. Cal. Nov. 7, 2009) (appointing Reese Richman LLP as class counsel in federal antitrust class action stating that Reese Richman LLP is "***well established and capable of providing quality representation to Plaintiffs in this matter***") (Reese Decl., Ex. C, p. 3).[9]

---

[7] A copy of the order appointing Reese Richman LLP as class counsel and granting final approval to the class action settlement in *Yoo v. Wendy's International, Inc.* is attached as Exhibit A to the Declaration of Michael R. Reese in Support of Motion for Preliminary Approval of Class Settlement ("Reese Decl.").

[8] A copy of the order in *Kreek v. Wells Fargo & Co. et al.* appointing Reese Richman LLP as lead counsel is attached as Exhibit B to the Reese Declaration.

[9] A copy of the order in *L'Ottavo Ristorante v. Ingomar Packing Co.* appointing Reese Richman LLP as class counsel is attached as Exhibit C to the Reese Declaration.

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

8

Reese Richman LLP is also currently litigating several other matters involving deceptively marketed food products. Included among these actions is *Ackerman v. The Coca-Cola Co. et al.*, No. 09-cv-0395 (JG) (RML) (E.D.N.Y.) in which the non-profit public interest group Center for Science in the Public Interest ("CSPI") selected Reese Richman LLP to team up with to challenge Coca-Cola's misleading marketing of its vitaminwater® line of beverages. Michael Reese of Reese Richman LLP recently argued the opposition at the hearing on the motion to dismiss in this matter, and achieved a significant victory for consumers when the court denied the motion to dismiss claims based upon California consumer protection laws. *See Ackerman v. Coca-Cola Co. et al.*, CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010); *see also* Gardner, S., Public Citizen, Consumer Law and Policy: *"Truth: 1, vitaminwater: 0," available at* http://pubcit.typepad.com/clpblog/2010/07/truth-1-vitaminwater-0.html ("***It's an incredibly good decision for the growing ranks of food and nutrition lawyers***").[10]

The Weston Firm is comprised of attorneys Gregory S. Weston and Jack Fitzgerald. On May 18, 2009 the firm was appointed Class Counsel by the Honorable Margaret M. Morrow to represent approximately 145 condominiums investors in the matter of *Adachi et al. v. Carlyle/Galaxy San Pedro L.P. et al.*, No. 09-00793 (C.D. Cal.), which settled on a class-wide all-cash basis for approximately $1.35 million. A copy of the order appointing The Weston Firm class counsel is attached hereto as Exhibit C to the Declaration of Gregory S. Weston in Support of Preliminary Approval of Class Action Settlement ("Weston Decl.") ("The Weston Firm is qualified to serve as Class Counsel … The Weston Firm is appointed Class Counsel for the Settlement Class.")

The firm filed the *Red* action against Unilever after over a year of investigation and preparation. This action was the first of what is now eight pending actions against manufacturers of food products the firm filed and continues to litigate that use TFAs and have labeling implying they are healthful.

---

[10] A copy of the firm resume of Reese Richman LLP further detailing the experience and achievements of Reese Richman LLP and its attorneys is attached as Exhibit D to the Reese Declaration.

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

9

Before joining the Weston Firm, Jack Fitzgerald was associated with the law firms of Baker & Hostetler, LLP, in New York City and Mayer Brown LLP in Palo Alto. While at Mayer Brown, he defended the class action *In Re: Openwave Securities Systems, Inc. Securities Litigation*, No. 07-cv-1309 (S.D.N.Y.).  At both firms his practice was always focused on complex litigation including, for example representing plaintiffs asserting antitrust and false advertising claims against multiple telephone calling card manufacturers.

Before founding his firm Mr. Weston was associated with the firm now known as Robbins, Geller, Rudman & Dowd ("RGR&D"), where 100% of his practice was representing plaintiffs in consumer and antitrust class actions.  The action he spent the most time on there was *The Apple iPod iTunes Antitrust Litigation*, where this Court appointed RGR&D class counsel. He also worked on consumer class actions involved price-fixing cartels in the airline, chemical, trucking, and recorded-music industries, and consumer law claims over deceptive auto insurance and lead paint in imported children's toys.

Elizabeth Lee Beck is a founding partner of the law firm Beck & Lee, P.A. ("Beck & Lee").  Beck & Lee is a business and commercial litigation law firm based in Miami, Florida with an active practice in California. The firm and its principals are experienced in commercial class action litigation, including on behalf of consumers.  Presently, approximately 90% of Beck & Lee's practice is devoted to representing plaintiffs.[11]

As part of its class action practice, Beck & Lee has developed a specialty representing consumers in products labeling litigation concerning dangerous amounts of TFAs in food. *See Yumul v. Smart Balance, Inc.*, __ F. Supp. 2d __ , 2010 WL 3359663 (C.D. Cal. May 24, 2010); *Chacanaca et al. v. The Quaker Oats Co.*, No. C 10-00502 RS (N.D. Cal. Oct. 14, 2010). Both of the foregoing decisions hold that health claims on food product labels were potentially deceiving to consumers, owing to the TFA content of the products.  Beck & Lee has also represented the plaintiffs in the following class action litigation involving deceptive levels of

---

[11]     The credentials of Beck & Lee and its attorneys are detailed in the Declaration of Elizabeth Lee Beck in Support of Joint Motion for Preliminary Approval of Class Settlement ("Beck Decl.")

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

10

TFAs in food products: *Peviani et al. v. Hostess Brands, Inc.*, No. CV 10-2303 CBM (VBKx) (C.D. Cal.); *Red et al. v. Kraft Foods Inc. et al.* (C.D. Cal.); and *Henderson et al. v. Gruma Corp.*, No. 2:10-cv-04173-AHM-AJW (C.D. Cal.).

After the *Rosen* action was dismissed, Ms. Beck engaged in settlement negotiations with Unilever on behalf of both the *Red* and *Rosen* Plaintiffs. Those negotiations resulted in a Preliminary Settlement Term Sheet signed by Ms. Beck, which is the basis for the instant settlement agreement. (Beck Decl. ¶ 13.)

Furthermore, the named Plaintiffs do not have any interests antagonistic to the class. The *Rosen* and *Red* Plaintiffs are all average persons who purchased Unilever products for their own personal and household use in typical settings, *e.g.*, grocery stores and supermarkets.

Accordingly, the requirements of Rule 23(a)(4) are satisfied.

**C.      Rule 23(b)(2) Is Also Satisfied.**

Furthermore, Rule 23(b)(2) is also satisfied, and the parties have even gone beyond the requirements of Rule 23(b)(2) by providing class members both notice and an opportunity to opt out of the class settlement. To qualify under Rule 23(b)(2), a class must satisfy two conditions in addition to the Rule 23(a) prerequisites. Rule 23(b)(2) requires that that first, "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and second, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The first requirement has been interpreted to mean that, to fall within Rule 23(b)(2), the defendant's conduct must be generally applicable to the class, meaning the defendant has adopted a pattern or policy that is likely to be the same as to all class members. *Baby Neal for & by Kantor v. Casey Co.*, 43 F.3d 48, 52, 63-64 (3d Cir. 1994). The second requirement has been interpreted to mean that a class can be certified under Rule 23(b)(2) even if a complaint requests equitable and legal relief, if the injunctive and declaratory relief predominates over monetary relief. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 615 (9th Cir. 2010); *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).

The Ninth Circuit has ruled that "the predominance test turns on the primary goal and nature of the litigation." *Dukes*, 603 F.3d at 617-18. Factors bearing on this issue include

"whether the monetary relief sought determines the key procedures that will be used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearings, and whether its size and nature—as measured by recovery per class member—raise particular due process and manageability concerns." *Id.* at 617.  Applying that standard, the Ninth Circuit has affirmed certification under Rule 23(b)(2) on the grounds that "the importance of injunctive and declaratory relief" for each plaintiff was greater than the importance of monetary damages. *Id.* at 618.

Here, this case is appropriate for certification under Rule 23(b)(2).

<u>First</u>, Unilever is alleged to have labeled its Products in a false and misleading manner. All class members were subject to this pattern and practice, which satisfies the first requirement of Rule 23(b)(2).

<u>Second</u>, *Red* and *Rosen* are predominantly for injunctive relief.  Although the Plaintiffs in *Rosen* and *Red* pled claims seeking monetary relief, this is not a case of personal injury or defective product.

<u>Third</u>, Unilever contends that the class members all received full value for the Products they purchased.  The Products were not alleged to be defective or impure, and Plaintiffs do not allege that they could not use them for the purpose intended.

For settlement purposes, the parties have agreed that given the substantial forward-looking relief described above, a settlement involving no direct compensation to absent class members is reasonable under the circumstances of this case. And because there is to be no direct compensation to individual class members, a "(b)(2)" class is appropriate.

In a similar case, Judge Selna of the Central District of California found that class certification was proper under Rule 23(b)(2).  *See Rivera v. Bio Engineered Supplements & Nutrition*, No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist LEXIS 95083, at *1, *11 (C.D. Cal. Nov. 13, 2008).  In *Rivera*, the defendant was accused under California's unfair competition law of falsely labeling a nutrition supplement as having an ingredient that did not exist.  *Id.*, at *1. The court found that certification under Rule 23(b)(2) was proper given that the plaintiff's request for injunctive relief predominated over the request for monetary relief: "[g]iven that it is unlikely

that any named plaintiff or class member will recover more than a few hundred dollars, the Court presumes that the plaintiffs are primarily interested in injunctive relief." *Id*., at *11. Specifically, the court certified the Rule 23(b)(2) because it would be appropriate for injunctive relief that banned defendant from advertising and listing on its product label the allegedly nonexistent ingredient. *Id*., at *12. Furthermore, even thought the defendant had already began the process of changing its labels and reformulating its product, because there was still evidence that the retailers were still advertising the products as containing the nonexistent ingredient, the court determined that the class certification was still proper under Rule 23(b)(2). *Id*.

Likewise, in *Yoo v. Wendy's International, Inc.*, No. 2:07-CV-04515-FMC (JCx) (C.D. Cal. 2007)—a case in which Reese Richman LLP was lead class counsel—the plaintiff challenged a restaurant's disclosures of the amounts of TFAs in its french fries and fried chicken products. No monetary relief was available pursuant to the settlement; instead, recognizing that elimination of TFAs provided far greater value, the settlement required that Wendy's remove the TFAs from its food. The court in *Wendy's* commended this result and granted preliminary and final approval to the settlement. (Reese Decl., ¶¶ 4, 5, Ex. A.)

Additionally, in *Ercoline v. Unilever United States, Inc.*, No. 2:10-CV-01747-SRC-MAS (D.N.J.)—a case alleging that Unilever engaged in false and misleading labeling by indicating that one of its ice cream products had "1/3 fewer calories," the parties reached a settlement in which Unilever agreed to change its label. The settlement does not involve direct reimbursement to class members. (Sahouria Decl., ¶ 8, Ex. 4.) Preliminary approval of the classwide settlement was granted on October 5, 2010. (*Id*., ¶ 9, Ex. 5.)

Here, even if it would have been appropriate to give the class members the amount eligible for reimbursement, it would likely be a few dollars at most, and further settlement administration costs would consume a very large part of the settlement. The parties believe that the class consists of persons who are repeat purchasers of these products, hence, class members ultimately benefit directly from a reformulation of the Products without the TFAs.

### D. The Settlement Meets the Standard for Preliminary Approval.

The Ninth Circuit has stated the standard for approval of a class settlement as follows:

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

13

Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the "universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456(1983). *See generally* Marc Glanter, *The Federal Rules and the Quality of Settlements*, 137 U.Pa.L.Rev. 1231 (1989).

*Class Plaintiffs*, 955 F.2d at 1276. "Rule 23(e) has been interpreted to require the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Prior to final approval, to determine whether a proposed settlement is fair, reasonable and adequate, a court may consider "some or all" of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Indeed, one factor alone may prove determinative. *Id*. (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). Consideration of these factors lead to the conclusion that preliminary approval the Settlement should be granted.

### 1. Strength of Plaintiffs' Case.

This Court dismissed *Rosen* with prejudice on the grounds that Plaintiff would not be able to plead a plausible cause of action under the *Iqbal* and *Twombly* pleading standards. (*Rosen* Dkt. 57.)

In addition, one of the Private Label Brands covered by the Settlement Agreement—Kroger ChurnGold—was the subject of a separate lawsuit, *Red et al. v. The Kroger Co.*, No. 2:10-CV-01025-DMG (MAN) (C.D. Cal. 2010). *Kroger* was brought by the same class counsel and alleges product labels are false and misleading in light of the TFA content. The Honorable Dolly M. Gee dismissed the case with prejudice. (Sahouria Decl. ¶ 11, Ex. 7.)

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

14

Furthermore, in *Chacanaca et al. v. The Quaker Oats Co.*, No. C 10-00502 RS (N.D. Cal. Oct. 14, 2010), a case alleging that the Quaker Oats Company falsely and misleading labeled its Chewy Bars as having "0 grams trans fat" when in fact they contained less than 0.5 gram per serving of TFAs, the Honorable Richard Seeborg granted in part the defendant's motion for judgment on the pleadings, on the basis of preemption. He held that because the phrase "0 grams trans fat" is allowed for by FDA regulations if the product has less than 0.5 gram of TFAs, and therefore, the "claims relying on the use of this particular statement are preempted." (Beck Decl., Ex. B, p. 12.)

Because of the similarities to *Rosen*, *Kroger*, and *Quaker Oats*, the Plaintiffs in *Red* run the risk that, if this case is not settled, their claims will also be dismissed. If that were to happen, they (like *Rosen*) would have to resort to their chances on appeal. Even if they succeed in obtaining a reversal, that could take years, thereby delaying indefinitely the benefits to the class of the settlement that this proposal achieves.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). "It has been held proper to take a bird in hand instead of a prospective flock in the bush." *Id*. (citation omitted).

Here, the parties have engaged in aggressive, time-consuming, and costly pretrial litigation. Given the tenor and tenacity of the litigation to date, it is indisputable that further litigation—which would include an appeal in *Rosen* and a motion to dismiss hearing in *Red* and possible substantial discovery—would be hard-fought, lengthy, and tremendously expensive. Before any judgment, Plaintiffs would have to prevail four times: in defending the pleadings, class certification and summary judgment, and at trial.

Under those circumstances, there is a risk that following lengthy and expensive proceedings, little or no compensation would be recovered for the class. In the intervening time, Unilever would not be compelled to reformulate its soft spreads, at a cost of no less than

1     $10 million to Unilever, which is the priority for Plaintiffs. The settlement balances the

2     competing interests of the parties and maximizes the benefit to the class.

3             **3.**       **The Risk of Maintaining Class Action Status Through the Trial.**

4         No class has been certified in *Rosen* and *Red*. Plaintiffs would have argued that a class is

5     appropriate and Unilever would have challenged any motion for class certification.

6             **4.**       **The Amount Offered in Settlement.**

7         It is "well settled law that a proposed settlement may be acceptable even though it

8     amounts to only a fraction of the potential recovery." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D.

9     at 527.[12] Here, Unilever has agreed to invest a substantial amount of money to address the issues

10     raised by the lawsuit. Unilever has committed to eliminating all PHVOs from its soft spread

11     products by December 31, 2011, at a cost of over $10 million. (Burrows Decl. ¶ 6.)

12         Unilever will also spend no less than $500,000 on research and development to attempt to

13     reduce or eliminate PHVOs from its stick products. This would include, among other things,

14     updating factories and changing product packaging and advertisements. (*Id*. ¶ 7.) This

15     undertaking confers a substantial benefit on the class and accomplishes the goals of the litigation.

16             **5.**       **The Extent of Discovery Completed and the Stage of the Proceedings.**

17         In *Rosen*, the case was dismissed before Unilever was required to respond to Plaintiff's

18     written discovery. In *Red*, discovery was stayed pending resolution of the outstanding motion to

19     dismiss. (*Red* Dkt. 60.)

20             **6.**       **The Experience and Views of Counsel.**

21         Plaintiff Amnon Rosen of *Rosen* and Plaintiffs Evangeline Red, Jennifer Red, and Rachel

22     Whitt of *Red* are represented by (i) Reese Richman LLP, 875 Avenue of the Americas, 18th

23     Floor, New York, New York 10001; (ii) The Weston Firm, 888 Turquoise Street, San Diego,

24     California 92109; and (iii) Beck & Lee Business Trial Lawyers, Courthouse Plaza Building,

25     28 West Flagler Street, Suite 555, Miami, Florida 33130.

26

27         [12] *See Linney*, 151 F.3d at 1242 (internal citations omitted) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hope").

28

Michael Reese started his legal practice in 1996 as an Assistant District Attorney at the Manhattan District Attorney's Office, where he served as trial counsel prosecuting violent and white collar crime. Mr. Reese left government service in 2000 to join a large class action law firm where Mr. Reese worked as a partner for several years, serving as lead counsel on a number of large consumer, securities, and antitrust class actions. In 2006, Mr. Reese left the large class action firm to form what is now Reese Richman LLP. (Reese Decl., Ex. D.)

Reese Richman LLP has served as class counsel in numerous consumer protection, securities fraud, and antitrust class actions. *See*, *e.g.*, *Chin v. RCN Corp.*, No. 08-cv-7349 RJS, 2010 U.S. Dist. LEXIS 96302, at *6 (S.D.N.Y. Sept. 8, 2010) (appointing Reese Richman LLP as class counsel in consumer fraud action, stating that "***class counsel is qualified, experienced, and able to conduct the litigation***"); *Kreek v. Wells Fargo & Co. et al.*, No. C 08-01830 WHA (N.D Cal. Nov. 12, 2008 (appointing Reese Richman LLP as lead counsel in securities fraud action) (Reese Decl., Ex. B, p. 1); *L'Ottavo Ristorante et al. v. Ingomar Packing Co.*, No. 09-cv-1945 MCE (E.D. Cal. Nov. 7, 2009) (appointing Reese Richman LLP as class counsel in federal antitrust class action, stating that Reese Richman LLP is "***well established and capable of providing quality representation to Plaintiffs in this matter***") (Reese Decl., Ex. C, p. 3.)

Furthermore, Reese Richman LLP served as class counsel in the *Wendy's* matter discussed above that involved claims similar to those presented in the above-captioned actions—namely allegations of deceptive marketing of food containing TFAs. *Yoo v. Wendy's Int'l, Inc.*, No. 2:07-CV-04515-FMC (JCx) (C.D. Cal. 2007) (appointing Reese Richman LLP as class counsel in action regarding allegations of deceptive marketing of food containing TFAs and stating that Reese Richman LLP "***has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy***"). (Reese Decl., Ex. A, p. 7.)

Gregory Weston has devoted his practice to the representation of plaintiffs in consumer class actions for more than five years, and worked with Jack Fitzgerald side by side since January 2009 in prosecution of this and seven other class actions against packaged food companies that make products with artificial trans fat, as well as two other unrelated class actions in the Northern District of California. The Weston Firm, in achieving a cash settlement of approximately

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

17

$1.35 million for a group of defrauded real estate investors, was appointed class counsel and described by the Honorable Margaret M. Morrow as "qualified to serve as Class Counsel" having negotiated a settlement that is "fair, reasonable, and in the best interest of the class" and " offer a benefit to the class that will provide substantial relief in terms of what might have been gained if the case had proceeded to trial." (*See* Weston Decl., Ex. C.)

Founded in 2007, Beck & Lee is a business and commercial litigation law firm based in Miami, Florida with an active practice in California. The firm and its principals are experienced in commercial class action litigation, including on behalf of consumers. Presently, approximately 90% of Beck & Lee's practice is devoted to representing plaintiffs. Prior to founding their own firm, Beck & Lee's principals practiced at large defense firms in Los Angeles and Miami. (Beck Decl. ¶ 2.)

As part of its class action practice, Beck & Lee has developed a specialty representing consumers in products labeling litigation concerning dangerous amounts of TFAs in food. *See Yumul v. Smart Balance, Inc.*, __ F. Supp. 2d __ , 2010 WL 3359663 (C.D. Cal. May 24, 2010); *Chacanaca et al. v. The Quaker Oats Co.*, No. C 10-00502 RS (N.D. Cal. Oct. 14, 2010). Both of the foregoing decisions hold that health claims on food product labels were potentially deceiving to consumers, owing to the TFA content of the products. Beck & Lee has also represented the plaintiffs in the following class action litigation involving deceptive levels of TFAs in food products: *Peviani et al. v. Hostess Brands, Inc.*, No. CV 10-2303 CBM (VBKx) (C.D. Cal.); *Red et al. v. Kraft Foods Inc. et al.* (C.D. Cal.); *Henderson et al. v. Gruma Corporation*, No. 2:10-cv-04173-AHM-AJW (C.D. Cal.); and *Red et al. v. Kroger Co.*, No. 2:10-cv-01025-DMG-MAN. (Beck Decl. ¶ 4.)

Defendant Unilever is represented by William L. Stern. He has been practicing since 1980 and has substantial experience in the defense of consumer class action litigation.

Both counsel for Plaintiff and the proposed class and counsel for the Defendants believe that under the circumstances the proposed settlement is fair, reasonable, and adequate and recommend that the Court approve the settlement of this litigation. (Reese Decl. ¶¶ 9-19; Beck Decl. ¶¶ 9-19.)

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

18

### 7. The Presence of Governmental Participation.

No governmental entity is participating in this litigation. However, this settlement is subject to the Class Action Fairness Act and, consequently, notice will be sent to the 50 state Attorneys General as required by 28 U.S.C. § 1715.

### 8. The Reaction of the Class Members to the Proposed Settlement.

Notice has not yet been sent to any of the class members. Therefore, there is no known reaction to the proposed settlement.

### E. The Proposed Attorney's Fees and Incentive Compensation Are Fair and Reasonable.

The Settlement provides that Unilever will not contest Class Counsel's application to this Court for payment of up to $490,000 in attorney's fees and costs.

This is a reasonable amount in light of similar cases. For example, in *Yoo v. Wendy's International, Inc.*, No. 2:07-CV-04515-FMC (JCx) (C.D. Cal. 2007), a case challenging Wendy's disclosures of the amounts of TFAs in its french fries and fried chicken products, the attorney's fees were $1,090,000. (Reese Decl., Ex. A.) The plaintiff in that case, however, overcame a motion to dismiss and, unlike this case, the Wendy's case was litigated for two years. Similarly, in *Rivera*, the case involving a falsely-labeled nutritional supplement, class counsel received attorney's fees and expenses in the amount of $4,172,692.15. (Sahouria Decl., Ex. 6.) *Rivera*, however, involved contested class certification motions in addition to a motion for preliminary injunction. Also, *Rivera*, was litigated for two years before it settled.

In addition, this Settlement proposes an incentive award of $4,500 per each named Plaintiff, for a total of $18,000, which is in line with similar incentive awards. *See, e.g.*, *Rivera* (award of $12,500 to one class representative and $6,250 to another). (Sahouria Decl., Ex. 6.)

### F. The Proposed Notice Program Is Constitutionally Sound.

Federal statutory and case law vests the Court with broad discretion in fashioning an appropriate notice program. Fed. R. Civ. P. 23. The Court "must direct notice in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1).

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

19

Here, individual notice is not practicable because Defendants are wholesale manufacturers who sell to retailer customers, and there is no ready or reasonable means to determine the names and places of residence of class members, who are consumer purchasers. Therefore, the most appropriate form of notice is by publication.

The parties propose that summary notice be published in two issues of *USA Today*. (Sahouria Decl., Ex. 1, § 9.2.) This is the exact same type of notice approved of by the court in the *Yoo v. Wendy's International, Inc.* action discussed above that also resulted in the elimination of TFAs pursuant to the settlement reached in that matter. (Reese Decl., Ex. A.)

As *USA Today* is the largest newspaper in the United States, with a circulation of over 3.7 million readers daily, notice by publication is appropriate. *See* USA Today: Audience, *available at* http://www.usatoday.com/marketing/media_kit/usat/audience_circulation.html (July 18, 2010). Additionally, full notice of the settlement will be available on a webpage dedicated to the settlement. (Sahouria Decl., Ex. 1, § 9.3.) Recent studies have shown that the vast majority of Americans log on the Internet on a daily basis, and obtain news and other information from the Internet. *See*, *e.g.*, Pew Internet & American Life Project Report, *available at* http://www.pewinternet.org/Trend-Data/Whos-Online.aspx (July 18, 2010) (report stating that 93% of adults between 18-29 use the Internet). Combined, the *USA Today* and Internet sources of notices are calculated to reach the largest number of class members possible.

Furthermore, the settlement notices will provide information on the meaning and nature of the proposed Settlement Class, the terms and provisions of the proposed Settlement, the relief the Settlement will provide, the date, time, and place of the final approval hearing, and the procedure and deadlines for objecting to or opting out of the proposed Settlement. *See*, *e.g.*, *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted).

## V. CONCLUSION

Upon consideration of the foregoing eight factors, the proposed settlement of this litigation is fair, reasonable, and adequate. The parties request the Court to approve the

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

20

settlement of *Rosen* and *Red* on a classwide basis and appoint Class Counsel. The parties also request the Court schedule a final approval hearing one hundred days after the Preliminary Approval Date or the first date available thereafter to the Court.

Dated: October 18, 2010

MICHAEL R. REESE
KIM E. RICHMAN
**REESE RICHMAN LLP**

By:   /s/ Michael R. Reese
        MICHAEL R. REESE

Dated: October 18, 2010

JARED H. BECK
ELIZABETH LEE BECK
**BECK & LEE BUSINESS TRIAL LAWYERS**

By:   /s/ Elizabeth Lee Beck
        ELIZABETH LEE BECK

*Attorneys for the Proposed Class in the Rosen and Red actions*

Dated: October 18, 2010

GREGORY S. WESTON
JACK FITZGERALD
**THE WESTON FIRM**

By:   /s/ Gregory S. Weston
        GREGORY S. WESTON

Dated: October 18, 2010

WILLIAM L. STERN
JANELLE J. SAHOURIA
**MORRISON & FOERSTER LLP**

By:   /s/ William L. Stern
        WILLIAM L. STERN
        JANELLE J. SAHOURIA

*Attorneys for Defendant CONOPCO, INC. (sued herein as UNILEVER UNITED STATES, INC.)*

NOTICE AND MEMORANDUM ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

21

**ECF ATTESTATION**

I, JANELLE J. SAHOURIA, am the ECF User whose ID and password are being used to file the following document: **NOTICE OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**  In compliance with General Order 45, X.B., I hereby attest that Michael R. Reese, Gregory S. Weston, Elizabeth Lee Beck, and William L. Stern have concurred in this filing.


Dated: October 18, 2010               JANELLE J. SAHOURIA
                                      **MORRISON & FOERSTER** LLP


                               By:    /s/ Janelle J. Sahouria
                                      JANELLE J. SAHOURIA

Notice and Memorandum ISO Joint Motion for Preliminary Approval of Class Settlement
Case Nos. C-09-02563 JW, C-10-00387 JW
sf-2868036

22